# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TEVA PHARMACEUTICALS USA, Inc.<br>1090 Horsham Road<br>North Wales, PA 19454<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT, in his official capacity<br>as Secretary of Health and Human Services,<br>200 Independence Ave., S.W.<br>Washington, DC 20204;<br><br>ANDREW C. VON ESCHENBACH, M.D., in<br>his official capacity as Commissioner of Food and Drugs,<br>200 C Street, S.W.<br>Washington, DC 20204;<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br>5600 Fishers Lane<br>Rockville, MD 20857,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

## TEVA PHARMACEUTICAL USA, INC.'S COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Teva Pharmaceuticals USA, Inc. ("Teva") brings this complaint for declaratory and injunctive relief against Defendants Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services, Andrew C. von Eschenbach, in his official capacity as Commissioner of Food and Drugs, and the United States Food and Drug Administration (collectively "FDA"). In support thereof, Teva states the following:

## NATURE OF THE ACTION

1.      Teva brings this suit in response to FDA's refusal to relist U.S. Patent No. 5,158,952 ("the '952 patent") in the Agency's official register of drug-related patents, *Approved Drug Products with Therapeutic Equivalence Evaluations* (known as the "Orange Book"), and award Teva the 180-day period of marketing exclusivity to which it is entitled under the Hatch-Waxman amendments to the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355 *et seq.* ("Hatch-Waxman").

2.      Teva was the first manufacturer to submit an abbreviated new drug application ("ANDA") containing a "Paragraph IV" certification for a generic version of Janssen Pharmaceutica's brand-name drug Risperdal® in tablet form.    Risperidone is the active ingredient in Risperdal® tablets.

3.      At the time Teva filed its ANDA, FDA's official Orange Book (and the then-current official monthly supplement to the Orange Book) listed two patents as claiming Risperdal® tablets: the '952 patent and U.S. Patent No. 4,804,663 ("the '663 patent").  As the first ANDA filer to make a Paragraph IV certification to the '952 patent, Teva earned the right to market its generic risperidone tablets for 180 days prior to any other generic competitor. *See* 21 U.S.C. § 355(j)(5)(B)(iv).  Congress instituted this 180-day marketing exclusivity period in order to encourage generic manufacturers to challenge drug patents and thereby increase competition in the pharmaceutical industry.

4.      Despite the fact that Teva invested significant resources to identify a vulnerable patent and develop a non-infringing generic risperidone product, and then subjected itself to a patent infringement claim by filing its Paragraph IV certification to the '952 patent, *see* 35 U.S.C. § 271(e); despite the fact that the '952 patent continued to appear in FDA's 2001 Orange

Book; and despite the fact that FDA's then-current Cumulative Supplement to the Orange Book did not reflect any change to the official patent-listing information for Risperdal® at the time Teva submitted its ANDA to FDA, FDA asserted Teva that it had "delisted" the '952 patent prior to the submission of Teva's ANDA and informed Teva that it thus would not accept Teva's ANDA for filing unless Teva removed its Paragraph IV certification to the '952 patent from its ANDA.

5.    As it has with several other improperly delisted patents, Teva petitioned FDA to restore the '952 patent to the Orange Book, honor Teva's Paragraph IV certification to that patent, and award Teva 180-day exclusivity. *See* Citizen Petition No. 2007P-0316 (filed Aug. 8, 2007).(attached as Ex.1).    FDA has refused to do so, effectively nullifying Teva's 180-day exclusivity period.

6.    FDA's refusal to relist the '952 patent and award Teva its 180-day exclusivity period violates the plain language of the Hatch-Waxman Act and flouts the D.C. Circuit's binding decision in *Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120 (D.C. Cir. 2006), which held that FDA may not effectuate the delisting of a patent and thereby deny the first generic Paragraph IV applicant 180-day marketing exclusivity after the generic manufacturer relies on the Orange Book's official patent listings to challenge a listed patent.    In addition, FDA's refusal to restore the '952 patent to the Orange Book and award Teva 180-day exclusivity conflicts with the Agency's own regulations and the Orange Book itself.    As such, FDA's actions here contravene the Administrative Procedure Act ("APA"), because they fail to embody principles of reasoned agency decision-making and are contrary to settled agency practice, arbitrary, capricious, and otherwise contrary to law. *See* 5 U.S.C. § 706.

7.      As a result, Teva seeks immediate declaratory and injunctive relief from this Court to (1) set aside FDA's decision as contrary to law, an abuse of discretion, and arbitrary and capricious; (2) declare unlawful the delisting of the '952 patent prior to the expiration of Teva's exclusivity; (3) restore Teva's Paragraph IV certification to the '952 patent *nunc pro tunc*; and (4) enjoin FDA from approving any ANDA for generic risperidone tablets filed after Teva's ANDA for generic risperidone tablets pending the conclusion of Teva's exclusivity period for generic risperidone tablets.

## PARTIES

8.      Plaintiff Teva is a Delaware corporation with its principal place of business in North Wales, Pennsylvania. Teva is a wholly-owned, indirect subsidiary of Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), a global pharmaceutical company organized under the laws of Israel with its principal place of business in Israel. Teva distributes the finished pharmaceutical products of Teva Ltd. in the United States and is an industry leader in the development, manufacture, and marketing of generic pharmaceutical in the United States.

9.      Defendant Michael O. Leavitt is the Secretary of Health and Human Services ("HHS") and is the official charged by law with administering the Hatch-Waxman Act. Secretary Leavitt is sued in his official capacity. He maintains offices at 200 Independence Ave., S.W., Washington, DC 20204.

10.      Defendant Andrew C. von Eschenbach, the Commissioner of the FDA, has the delegated authority to administer the drug approval provisions of the Hatch-Waxman Act. Commissioner von Eschenbach is sued in his official capacity. He maintains offices at 200 C St., S.W., Washington, DC 20204, and 5600 Fishers Lane, Rockville, MD 20857.

4

11.     Defendant FDA is the agency within HHS charged with overseeing, *inter alia,* the human drug approval process, including the portions of that process controlled by the Hatch-Waxman Act.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. This action arises under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.,* as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), *codified at, inter alia,* 21 U.S.C. § 355; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 702, and 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### The Relevant Statutory Framework

14.     The approval of generic drugs is governed by the Hatch-Waxman Act. Although the Act has subsequently been amended by the Medicare Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173 § 1101(c)(1), and the Food and Drug Administration Amendments Act of 2007 ("FDAAA"), Pub. L. 110-85, 121 Stat. 823 (2007), the substantive aspects of this case relating to the listing and delisting of Orange Book patents and Teva's entitlement to 180-day exclusivity are governed by the pre-2003 version of the FDCA. *See* 21 U.S.C. §§ 301, *et seq.* (2002).[1]

---

[1]     Unless otherwise noted, all references to the FDCA and FDA's implementing regulations are to the pre-2003 version of the statute.

15.    Generic drugs contain the same active ingredients, and provide the same therapeutic value, as branded drugs.  They are, however, generally sold at a lower price to consumers, private insurers, and public insurers.  Congress enacted the Hatch-Waxman Act to increase the availability of generic drugs by expediting the process of bringing them to market, and thereby significantly reduce the cost that the public pays for pharmaceuticals.  *See* 21 U.S.C. § 355.

16.    In order to expedite the approval process for generic drugs, the Hatch-Waxman Act permits generic companies to obtain approval of their generic products so long as they can show them to be bioequivalent to products that the FDA has already deemed safe and effective. Before marketing a generic drug, the manufacturer must submit an abbreviated new drug application, or ANDA, to the FDA.   21 U.S.C. § 355(j).   The ANDA establishes the bioequivalence and therapeutic value of the generic product as compared with the branded product. 21 U.S.C. § 355(j)(2)(A).  So long as bioequivalence can be established, a generic drug manufacturer need not repeat the safety and efficacy studies that were conducted on the branded version of the drug and included as part of the brand manufacturer's new drug application ("NDA").  *Id.*

17.    In the ANDA, the generic manufacturer also must address, and provide a certification concerning, each patent listed in the official Orange Book by the NDA-holder as claiming the drug.  The Orange Book, which FDA printed annually during the relevant time period and updated monthly with printed Cumulative Supplements, is intended to reflect the most current information regarding which patents claim a particular branded drug.  A generic applicant must certify as to each patent listed in the most recent official Orange Book as claiming

the branded drug. *See Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1350 (Fed. Cir. 2003); *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 31 (D.D.C. 2006).

18.    Among other things, generic applicants are allowed certify that a listed patent is invalid and/or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted. Such a certification is known as a Paragraph IV certification. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV). A Paragraph IV certification signals the generic manufacturer's intent to market its product prior to the expiration of one or more patents listed as claiming the branded drug.

19.    By design, the Hatch-Waxman Act encourages generic drug companies to challenge pharmaceutical patents by filing Paragraph IV certifications in order to bring generic products to market faster. The first generic drug company to file a Paragraph IV certification, and thereby challenge a patent, generally bears costs of research and development, legal costs to identify potentially vulnerable patents, as well as the litigation costs that may come from protracted patent infringement litigation. If this generic drug company succeeds in being the first to successfully file a Paragraph IV ANDA, however, the benefits of those investments may ultimately be shared with other generic drug companies, who can benefit from the substantial investments that the first filer has made.

20.    Therefore, in order to encourage generic drug companies to bear the costs and litigation risks associated with being the first filer of a Paragraph IV ANDA certification, the Hatch-Waxman Act provides that the first filer will receive the exclusive right to market the pertinent generic product for 180 days following the challenge. 21 U.S.C. § 355(j)(5)(B)(iv). The Act prohibits the FDA from approving the ANDAs of the subsequent filers until the first applicant's 180-day exclusivity period has elapsed.

21.    The 180-day exclusivity period runs from the earlier of the date on which the first-filing generic drug company first commercially markets the generic drug or "the date of a decision of a court in an action … holding the patent which is the subject of the certification to be invalid or not infringed." 21 U.S.C. § 355(j)(5)(B)(iv)(II).

22.    The FDA may not approve the applications of subsequent ANDA filers until the 180-day exclusivity period expires.  Once the 180 day exclusivity period ends, however, other generic manufacturers may be approved to enter the product market.

23.    Depriving the first filer of the benefits of exclusivity therefore undermines the incentive system that Congress carefully constructed in the Hatch-Waxman Act to ensure that generic drugs are brought to market as early as possible for the benefit of consumers.

## Risperidone Proceedings

24.    Risperidone is an atypical antipsychotic medication.  Janssen holds the approved NDA for risperidone tablets, No. 20-272, which it commercially markets under the brand name Risperdal®.

25.    At the time it filed its NDA for Risperdal® tablets, Janssen caused FDA to list the '663 and '952 patents in the official Orange Book.  *See* Orange Book (21st ed. 2001) ("2001 Orange Book"), at ADA 57 (attached as Ex. 2).  The '952 patent is set to expire on October 27, 2009.  The '663 patent expired on December 29, 2007, but Janssen received an additional six months of exclusivity for studying the effectiveness of Risperdal® in pediatric populations.  *See* 21 U.S.C. § 355a.  Janssen's period of "pediatric exclusivity" expires June 29, 2008.

26.    As of August 2001, both the official Orange Book and the then-current Cumulative Supplement to the Orange Book listed both the '663 and '952 patents as claiming

8

Risperdal®, *see* 2001 Orange Book at ADA 57; Orange Book 21st ed. Cumulative Supplement 8 (Aug. 2001) at A-14 (attached as Ex. 3).

27.    On August 28, 2001, Teva submitted an original ANDA, No. 76-228, seeking approval to market generic risperidone tablets in 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg strengths.   In accordance with 21 U.S.C. § 355(j)(2)(A)(vii), Teva's ANDA contained a certification as to each patent listed in the official Orange Book as claiming Risperdal® tablets. Teva thus filed a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(III) ("Paragraph III certification") as to the '663 patent, asserting that Teva would not seek to market its generic risperidone tablets until that patent expired, and a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") as to the '952 patent, asserting that the patent was invalid or would not be infringed by Teva's generic risperidone tablets.

28.    Teva was the first generic manufacturer to file a Paragraph IV certification as to the '952 patent.  Under the plain terms of the FDCA, Teva was thus entitled to 180 days of market exclusivity to commence upon the first commercial marketing of its generic risperidone products, or a court decision declaring that the '952 patent was invalid or not infringed by Teva's generic risperidone products.

29.    On October 12, 2001, FDA for the first time notified Teva that it had "delisted" the '952 patent from the Orange Book.  FDA made this statement despite the fact that the official Orange Book continued to list the '952 patent as claiming Risperdal®, *see* 2001 Orange Book at ADA 57, and despite the fact that the then-current Cumulative Supplement reflected no changes to the official patent-listing information for Risperdal®.  *See* Orange Book 21st ed. Cumulative Supplement 10 (Oct. 2001) at A-19 (attached as Ex. 4).

30. FDA nevertheless informed Teva that it would not accept Teva's ANDA for filing unless Teva modified its patent certification to reflect FDA's assertion that the '952 patent was no longer listed as claiming Risperdal®. *See* FDA Letter Decision (dated Feb. 26, 2008) at 5 (attached as Ex. 5). Thus, despite the fact that the official Orange Book, and then-current Cumulative Supplements, continued to indicate that the '952 patent claimed Risperdal®, Teva was forced to follow the agency's directive and amend its ANDA.

31. In November 2001 and December 2001, FDA's official monthly supplements to the Orange Book continued to reflect that no changes had been made to the Risperdal® patent-listing information, and thus that the '952 patent continued to be listed as claiming Risperdal® tablets. *See* Orange Book 21st ed. Cumulative Supplement 11 (Nov. 2001) at A-21 (attached as Ex. 6). Orange Book 21st ed. Cumulative Supplement 12 (Dec. 2001) at XA-24 (attached as Ex. 7).

32. In January 2002, FDA released a revised version of the Orange Book, which for the first time indicated the delisting of the '952 patent. *See* Orange Book (22nd ed. 2002), at ADA 64-65 (attached as Ex.8).

33. In November 2006, the D.C. Circuit ruled that the plain text of the FDCA prevented FDA from effectuating the delisting of a patent following the submission of a paragraph IV certification as to that patent. *Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120 (D.C. Cir. 2006). The court struck down FDA's practice because it "change[d] the incentive structure adopted by Congress," by "depriv[ing] the generic applicant of a period of marketing exclusivity" after the generic manufacturer had expended significant resources in developing a non-infringing generic substitute and undertaken the risk of infringing the patent by filing a Paragraph IV certification. *Id.* at 126. The D.C. Circuit thus held that FDA's approach to

delisting contravened the plain meaning of the FDCA, and invalidated FDA's practice under *Chevron* step one. *Id.*

34.    Following the D.C. Circuit's decision, Teva undertook a comprehensive review of its portfolio of pending ANDAs to determine whether FDA's unlawful delisting practices had deprived Teva of its entitlement to 180-day generic exclusivity for any other product. Teva then sought to regain its exclusivity on each of the drug products affected by FDA's unlawful delisting.

35.    On August 3, 2007, Teva submitted Citizen Petition No. 2007P-0316 (the "Petition") requesting that FDA relist the '952 patent in the Orange Book for Risperdal® tablets; confirm that Teva's right to 180-day exclusivity with regard to its ANDA had not been affected by FDA's erroneous delisting of the '952 patent; and refrain from granting final approval to any other ANDAs for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg risperidone tablets until Teva's 180-day exclusivity period expires. *See* Citizen Petition.

36.    FDA denied the Citizen Petition on February 26, 2008.

37.    Janssen's pediatric exclusivity for Risperdal® is set to expire on June 29, 2008. Unless this Court grants the relief sought by Teva, FDA will on that date be free to grant final approval to any ANDA for generic risperidone tablets, thus permitting other generic manufacturers to market their generic risperidone products and depriving Teva of the 180-day exclusivity period to which it is entitled under the Hatch-Waxman Act.

### FIRST CAUSE OF ACTION
### (Violation of the FDCA and the APA)

38.    FDA's refusal to relist the '952 patent and grant Teva 180-day exclusivity for its generic risperidone tablets violates the plain language of the Hatch-Waxman Act, the D.C. Circuit's decision in *Ranbaxy*, FDA's own regulations, and the Orange Book itself. FDA's

11

decision is thus in excess of its statutory authority, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, in violation of 5 U.S.C. § 706.

39.    FDA's refusal to relist the '952 patent and grant Teva 180-day exclusivity for generic risperidone tablets constitutes final agency action that is subject to judicial review. Teva has exhausted every available administrative avenue and has no adequate remedy at law.

40.    Neither Defendants nor any other entity will suffer cognizable harm if the relief requested herein is granted, and the public interest will be served by such relief.

41.    Teva will suffer substantial and irreparable harm absent the granting of the requested relief, in the form of lost sales and decreased market share that can never be recovered.

42.    FDA's unlawful conduct has caused, is causing, and will continue to cause substantial harm to Teva unless and until the FDA's actions are declared unlawful pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Hatch-Waxman Act; this Court requires FDA to relist the '952 patent in the Orange Book; and this Court orders FDA to award Teva its 180-day exclusivity period for generic risperidone tablets.

### PRAYER FOR RELIEF

WHEREFORE, Teva prays that this Court:

A.    Vacate FDA's action as contrary to law, an abuse of discretion, and arbitrary and capricious;

B.    Enter an injunction compelling FDA to relist the '952 patent as claiming Risperdal® tablets in the official Orange Book and restore Teva's Paragraph IV certification to the '952 patent *nunc pro tunc*;

C.    Declare that Teva is entitled to 180-day exclusivity on its ANDA No. 76-228 for generic risperidone tablets in 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg strengths;

D.      Enjoin FDA from granting final approval to any other ANDA for generic risperidone tablets until the expiration of Teva's 180-day exclusivity period; and

E.      Provide such further relief as the Court may deem just and proper.

Dated: March 4, 2008

Respectfully submitted,

By: _____

Jay P. Lefkowitz, P.C. (D.C. Bar No. 449280)
Michael D. Shumsky (D.C. Bar No. 495078)
Gregory L. Skidmore (D.C. Bar No. 974024)
KIRKLAND & ELLIS LLP
655 15th Street N.W., Suite 1200
Washington, D.C.  20005
(202) 879-5000
(202) 879-5200  fax

*Counsel for Teva Pharmaceuticals USA, Inc.*



Administrative Offices:
TEVA PHARMACEUTICALS USA
1090 Horsham Road, PO Box 1090
North Wales, PA 19454-1090

Deborah A. Jaskot, M.S., RAC
Vice President, Regulatory Affairs

Direct Dial: (215) 591 3142
Direct FAX: (215) 591 8812
deborah.jaskot@tevausa.com

August 3, 2007

Division of Dockets Management
Food and Drug Management
5630 Fishers Lane
Room 1061 (HFA-305)
Rockville, MD 28057

## CITIZEN PETITION

### ACTION REQUESTED

Teva Pharmaceuticals USA, Inc. ("Teva") respectfully submits this Citizen Petition pursuant to section 505 of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355, and section 10.30 of the Agency's implementing regulations, 21 C.F.R. § 10.30. This petition requests that the Agency:

(1)     Relist U.S. Patent No. 5,158,952 ("the '952 patent") in *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg Risperdal® (risperidone) tablets, all approved products of Janssen Pharmaceutica Inc. as the holder of NDA No. 20-272;

(2)     Confirm that Teva's right to 180-day exclusivity with regard to ANDA No. 76-228 has not been affected by FDA's erroneous delisting of the '952 patent from the Orange Book; and

(3)     Refrain from approving any Abbreviated New Drug Application ("ANDA") for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg risperidone tablets until Teva's 180-day exclusivity period expires.

### STATEMENT OF GROUNDS

### INTRODUCTION

The plain text, structure, and history of 21 U.S.C. § 355(j)(5)(B)(iv) establish that Teva is entitled to 180 days of marketing exclusivity for its generic risperidone tablets as a result of Teva's August 28, 2001 paragraph IV certification to the '952 patent. That is so because the '952 patent appeared in the official Orange Book on the day Teva submitted its paragraph IV certification; because Teva thus was required to submit a certification to that patent at the time it



08 0395

FILED
MAR - 4 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

submitted its ANDA for generic risperidone drug products, and because Teva then became the first company to submit a paragraph IV certification to any of the listed patents claiming Risperdal®. FDA's purported "delisting" of the '952 patent in no way undermines Teva's entitlement to 180-day exclusivity, because the Agency failed to provide official notice of the "delisting" for several months following the submission of Teva's ANDA. As the D.C. Circuit recently recognized in the *Ranbaxy* (simvastatin) case, the adoption of a rule that would divest the first generic applicant of its exclusivity after that applicant has assumed the very risks 180-day exclusivity is designed to reward— the expense of formulating a non-infringing product and preparing a legal defense to a potential action for patent infringement, and then the submission of an infringing paragraph IV certification to the Agency—would fundamentally "change the incentive structure adopted by Congress," in clear violation of the plain text and structure of the Hatch-Waxman Act. *Ranbaxy Laboratories Ltd. v. Leavitt*, 469 F.3d 120, 125-26 (D.C. Cir. 2006).

At bottom, given that the '952 patent remained listed in the official Orange Book on the date Teva submitted its paragraph IV certification to the Agency, and in view of the plain language of section 355(j)(5)(B)(iv), court precedent compelling FDA to preserve Teva's exclusivity by relisting the '952 patent, and the Agency's own practice regarding patent relisting, Teva thus petitions FDA to relist the '952 patent for Risperdal®, maintain Teva's exclusivity against subsequently filed ANDAs, and confirm Teva's right to its 180-day exclusivity period.

## BACKGROUND

Risperidone is an atypical antipsychotic medication sold by Janssen Pharmaceutica ("Janssen") under the trade-name Risperdal®. Janssen holds NDA No. 20-272, for risperidone tablets. As of August 2001, FDA's official *Approved Drug Products with Therapeutic Equivalence Evaluations* (known as the "Orange Book") listed two patents as claiming Risperdal® tablets: U.S. Patent No. 4,804,663 ("the '663 patent"), which is set to expire on December 29, 2007, and U.S. Patent No. 5,158,952 ("the '952 patent"), which will expire on October 27, 2009. *See* Orange Book (2001 ed.), at ADA 57 (Exhibit 1).

On August 28, 2001, Teva submitted an original Abbreviated New Drug Application ("ANDA"), No. 76-228, seeking approval to market generic risperidone tablets in 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg strengths. *See* Patent Certification for Risperdal® ANDA ("Original Patent Certification") (Exhibit 2). In accordance with 21 U.S.C. § 355(j)(2)(A)(vii), Teva's ANDA contained a certification with respect to each patent listed as claiming Risperdal® tablets. *Id.* Because the official Orange Book listed both the '663 and '952 patents for Risperdal® tablets, Teva was required to certify as to both patents, and it did so. *See* 21 C.F.R. 314.53(f). Teva filed a certification under § 355(j)(2)(A)(vii)(III) ("Paragraph III certification") as to the '663 patent, which is set to expire on December 29, 2007, and a certification under § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") as to the '952 patent, asserting that the patent was invalid or would not be infringed by Teva's generic risperidone tablets. *See* Original Patent Certification.

On October 12, 2001, FDA notified Teva that it had "delisted" the '952 patent from the Orange Book (even though it continued to appear in the official Orange Book at that time). *See* Letter from Deborah Jaskot to Gary Buehler (Oct. 22, 2001) ("Jaskot Letter") (Exhibit 3). It also informed Teva that it would not accept Teva's ANDA for filing unless Teva modified its patent certification to reflect that the '952 patent was no longer listed as claiming the reference drug product. *Id.* Thus, even though FDA had not informed Teva of the putative delisting prior to the submission of Teva's paragraph IV certification; even though the official Orange Book continued to list the '952 patent as claiming Risperdal® tablets; and even though Teva had assumed the very risks 180-day exclusivity is designed to reward, Teva was forced to follow the agency's directive and amend its ANDA.

In January 2002, FDA released a revised Orange Book, which for the first time noted the official delisting of the '952 patent, and listed only the '663 patent as claiming Risperdal® tablets. *See* Orange Book (2002 ed.), at ADA 65 (Exhibit 4).

In November 2006, the D.C. Circuit ruled that the plain text of the FDCA prevented FDA from effectuating the delisting of a patent following the submission of a paragraph IV certification as to that patent. *Ranbaxy Laboratories Ltd. v. Leavitt*, 469 F.3d 120, 125-26 (D.C. Cir. 2006). The court struck down FDA's practice because it "change[d] the incentive structure adopted by Congress," by "depriv[ing] the generic applicant of a period of marketing exclusivity" after the generic manufacturer had expended significant resources in developing a non-infringing generic substitute and undertaken the risk of infringing the patent by filing a paragraph IV certification. *Id.* at 126. The D.C. Circuit thus held that FDA's approach to delisting contravened the plain meaning of the FDCA, and invalidated FDA's practice under *Chevron* step one. *Id.*

Following the D.C. Circuit's decision, Teva began reviewing its portfolio of pending ANDAs to determine whether FDA's unlawful delisting practices had deprived Teva of its entitlement to 180-day exclusivity for any other generic product. As with respect to Ivax's ANDA for olanzapine drug products, this case presents such a situation.

## ARGUMENT

The plain language of the FDCA entitles Teva to a 180-day period of first-filer exclusivity for generic Risperdal® tablets. Teva was the first generic manufacturer to file an ANDA for generic risperidone tablets containing a paragraph IV certification as to the '952 patent. Under 21 U.S.C. § 355(j)(5)(B)(iv) (2002), the earliest any subsequently-filed paragraph IV ANDA can be approved is "one hundred and eighty days after" Teva first commercially markets its generic risperidone tablets or the date of a court decision holding the '952 patent to be invalid or not infringed. *Id.*[1] To date, neither of these events has occurred—there has been no

---

[1]   Because Teva filed its ANDA in August 2001, its claims are governed by the version of the FDCA that existed prior to the amendments made in the Medicare Modernization Act of 2003 ("MMA"). *See* MMA, Pub. L. No. 108-173, 117 Stat. 2006, § 1102(b)(1) (Dec. 8, 2003). All citations in this petition are to the pre-MMA version of the statute.

litigation concerning the '952 patent, and Teva will not begin commercial marketing of its generic risperidone products until the patent term of (and any subsequent period of pediatric exclusivity with respect to) the '663 patent expires. At that time Teva will be entitled to 180 days of sole marketing exclusivity under the plain terms of § 355(j)(5)(B)(iv).[2]

Teva's entitlement to generic exclusivity may not be denied on the basis of FDA's putative "delisting" of the '952 patent prior to the submission of Teva's paragraph IV certification to the Agency. At the time Teva submitted its original ANDA for generic risperidone products (which contained a paragraph IV certification to the '952 patent), it had no choice but to certify as to the '952 patent. After all, the official Orange Book continued to list the '952 patent as claiming Risperdal® tablets. Both FDA regulations and longstanding case law make clear that the agency does not adjudicate questions of patent law; instead, it plays only a ministerial role in maintaining the Orange Book. *See, e.g., Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1349-50 (Fed. Cir. 2003); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp. 2d 1, 7 (D.D.C. 2004); *see also* 21 C.F.R. § 314.53(f). As a result, where a patent remains listed for a particular drug in the official Orange Book, a generic applicant has no choice but to believe that the NDA holder is continuing to assert that patent as claiming the listed drug. In that situation, both the statute and agency regulations require the generic applicant to submit a certification with respect to the disputed patent. *Apotex*, 347 F.3d at 1350 ("The statutory language shows a clear congressional intention to require certification whenever an ANDA applicant seeks approval of a drug that is claimed by a patent *that is listed in the Orange Book*.") (emphasis added); *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 31 (D.D.C. 2006) (same); 21 C.F.R. § 314.53(f).

Thus, at the time of its ANDA submission in August 2001, Teva was required to submit a certification to the '952 patent. FDA's putative delisting of the '952 patent did not become effective until January 2002, when the official Orange Book reflected the delisting of that patent. Absent any change in the Orange Book listings that reasonably would have put Teva on notice of the '952 delisting, it had no choice but to certify to the '952 patent on the date that it submitted its paragraph IV certification to the Agency. *See Apotex*, 347 F.3d at 1350 (noting that certification is "require[d]" for any patent listed in the Orange Book as claiming a drug). Teva thus did precisely what it was obligated to do under the plain text of the governing statute and Agency regulations, and it therefore earned its exclusivity as the first applicant to file a paragraph IV certification to a patent listed as claiming the reference listed drug.

Divesting Teva of its 180-day exclusivity under these circumstances would fundamentally undermine the incentive scheme established by the Hatch-Waxman Act, and expose the exclusivity reward to manipulation by brand manufacturers. Courts, including the D.C. Circuit in its recent *Ranbaxy* decision, routinely reject such an approach to the statutory

---

[2]  Because the Federal Circuit recently held that the '663 patent is valid and enforceable, *see Janssen Pharmaceutica v. Mylan Pharms.*, No. 07-1021 (Fed. Cir. May 11, 2007), no manufacturer is entitled to exclusivity based on its first-to-file status with respect to that patent. Thus, under FDA's pre-MMA, patent-by-patent approach to exclusivity, Teva's exclusivity based on its first-filer status with respect to the '952 patent will not be shared with the first applicant that filed a paragraph IV certification with respect to the '663 patent. Teva alone is entitled to exclusivity for these drug products.

scheme. Thus, a brand manufacturer may not delist a patent in order to eliminate generic exclusivity after an ANDA applicant wins its paragraph IV litigation on a patent. *See, e.g.*, 21 CFR § 314.94(a)(12)(viii)(B); *Torpharm v. Thompson*, 260 F. Supp. 69, 83 n.15 (D.D.C. 2003). By the same token, as the *Ranbaxy* Court recognized, FDA may not effectuate the delisting of a patent for a referenced drug after a generic manufacturer submits a paragraph IV certification. 469 F.3d at 125-26.

The reasoning behind these decisions is straightforward. The primary purpose of the Hatch-Waxman Act is to promote generic competition in the pharmaceutical market and prevent brand manufacturers from using inapplicable patents to block generic applicants from entering the market. A policy that permits a brand manufacturer to effectuate the delisting of a patent after the submission of a paragraph IV certification and without notice to the pharmaceutical community allows brand manufacturers to manipulate the generic approval process by forcing generic manufacturers to invest significant resources and assume the risk of patent litigation without any guarantee of the 180-day exclusivity reward. By thereby decreasing the incentives for generic manufacturers to develop competing products for listed drugs, such an approach is fundamentally inconsistent with the Hatch-Waxman Act. *Id.*

That is precisely the case here. On the date Teva filed its ANDA for generic risperidone drug products, Teva was obligated to rely on the official Orange Book's indication that its generic risperidone product would have to be designed so as not to infringe the '952 patent, or that Teva otherwise would have to invest significant sums in preparing a legal challenge to the validity or enforceability of the '952 patent. As a result, Teva invested substantial resources to engineer a non-infringing drug product and prepare a legal challenge to the '952 patent. Most important, Teva then assumed the very risk 180-day exclusivity is designed to reward, by deliberately exposing itself to patent litigation with the submission of a paragraph IV certification to the '952 patent in its original ANDA. *See* 35 U.S.C. § 271(e)(2); *see also Purepac Pharmaceutical Co. v. Thompson*, 354 F.3d 877, 889 (D.C. Cir. 2004); Brief of the Federal Defendants, *Purepac Pharmaceutical Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004) ("An original ANDA which includes a paragraph IV certification is considered effectively submitted on the date it is received by FDA, provided that FDA finds, after conducting a threshold review, that the application is substantially complete.").

Thus, even though Teva did precisely what the statute is designed to reward, FDA's putative "delisting" of the patent—despite the fact that the '952 continued to appear in the official Orange Book—has deprived Teva of the reward Congress guaranteed in the Hatch-Waxman Act.

At bottom, FDA's decision to effectuate the delisting of the '952 patent without prior notice rendered Teva's substantial investment in generic risperidone a nullity. Just as in *Ranbaxy*, the adoption of such a policy clearly "diminishes the incentive for a manufacturer of generic drugs to challenge a patent listed in the Orange Book." *Ranbaxy*, 469 F.3d at 126. Ultimately, such a rule will act as an overall disincentive for companies to even attempt to produce generic drug alternatives, lest their significant investment in the design of a non-infringing product and preparation of a legal defense to an infringement action turn out to have been wasted. Such a policy directly contradicts the policies behind the Hatch-Waxman Act, and cannot be sustained. *See Ranbaxy*, 469 F.3d at 125-26.

Indeed, FDA itself has acknowledged as much. On May 15, 2007, the Agency relisted eight patents for Zyprexa® (olanzapine) that had been delisted several years earlier at the request of the brand manufacturer. That decision only underscores FDA's understanding that *Ranbaxy* requires not only a prospective change in agency practice, but also remedial action to restore to generic manufacturers any statutory rights wrongly denied by previous delistings. Patents that have been wrongly removed from the Orange Book must be relisted, and any exclusivity owed generic companies on those patents must be restored--even if several years have passed since the original delisting. As it did with the olanzapine patents, FDA must relist the '952 patent to protect the policies behind the Hatch-Waxman Act.

The fact that FDA never accepted Teva's paragraph IV ANDA for filing thus has no bearing on the fact that FDA must relist the '952 patent. FDA's refusal to file Teva's paragraph IV certification as to the '952 patent was based on its since-overturned delisting policy. At that time, the Agency gave Teva no choice but to amend its patent certification for its risperidone ANDA. And as in the olanzapine case, FDA now has no choice but to relist the '952 patent and restore Teva's exclusivity.

## CONCLUSION

This case rises and falls on one fact: on the date Teva submitted its original ANDA containing a paragraph IV certification in August 2001, the '952 patent continued to appear in the official Orange Book. Teva thus did everything it was required to do under the plain text of the statutes and governing regulations in order to secure the statutory reward of 180-day exclusivity: it had engineered a non-infringing pathway around the '952 patent, it had prepared a legal challenge to that patent, and most critically, it filed the very first paragraph IV certification to the '952 patent. As the first filer, Teva thus earned its 180-day period of exclusivity under the Hatch-Waxman Act, and FDA may not lawfully deprive Teva of this right.

Teva thus respectfully requests that FDA relist the '952 patent, confirm Teva's status as the first generic applicant to file a paragraph IV certification as to that patent, and acknowledge Teva's entitlement to a 180-day period of exclusivity on generic risperidone tablets.

## ENVIRONMENTAL IMPACT

The relief requested by this petition would result in the recognition of a 180-day period of exclusivity for an ANDA applicant. Because the grant of the petition would not have an effect on the environment, no environmental assessment is required. *See* 21 C.F.R. § 25.31(a).

## ECONOMIC IMPACT

Information on the economic impact of the action will be submitted if requested by the Commissioner.

## CERTIFICATION

The undersigned certifies that, to the best of his knowledge and belief, this petition includes all information and views on which the petition relies, and includes representative data and information known to him that are unfavorable to the petition.


Sincerely,


Deborah Gardot

DAJ

Kirkland & Ellis Library

5  0628  01084303  2

# APPROVED DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

THE PRODUCTS IN THIS LIST HAVE BEEN APPROVED UNDER
SECTION 505 OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
PUBLIC HEALTH SERVICE
FOOD AND DRUG ADMINISTRATION
CENTER FOR DRUG EVALUATION AND RESEARCH
OFFICE OF INFORMATION TECHNOLOGY
DIVISION OF DATA MANAGEMENT AND SERVICES

2001





08 0395

FILED
MAR - 4 ??

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# PATENT AND EXCLUSIVITY INFORMATION ADDENDUM

This *Addendum* identifies drugs that qualify under the Drug Price Competition and Patent Term Restoration Act (1984 Amendments) for periods of exclusivity, during which abbreviated new drug applications (ANDAs) and applications described in Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (the Act) for those drug products may, in some instances, not be submitted or made effective as described below, and provides patent information concerning the listed drug products. Those drugs that have qualified for Orphan Drug Exclusivity pursuant to Section 527 of the Act and those drugs that have qualified for Pediatric Exclusivity pursuant to Section 505A are also included in this *Addendum*. This section is arranged in alphabetical order by active ingredient name. For those drug products with multiple active ingredients, only the first active ingredient (in alphabetical order) will appear. For an explanation of the codes used in the *Addendum*, see the *Patent and Exclusivity Terms* page. Exclusivity prevents the submission or effective approval of ANDAs or applications described in Section 505(b)(2) of the Act. It does not prevent the submission or approval of a second full NDA. Applications qualifying for periods of exclusivity are:

(1) A new drug application approved after September 24, 1984, for a drug product all active ingredients (including any ester or salt of the active ingredient) of which had never been approved in any other new drug application under Section 505 (b) (2) of the Act. No subsequent ANDA or application described in Section 505(b)(2) of the Act for the same drug may be *submitted* for a period of *five years* from the date of approval of the original application, except that such an application may be *submitted* after *four years* if it contains a certification that a patent claiming the drug is invalid or will not be infringed by the product for which approval is sought.

(2) A new drug application approved after September 24, 1984, for a drug product containing an active ingredient (including any ester or salt of that active ingredient) that has been approved in an earlier new drug application and that includes reports of new clinical investigations (other than bioavailability studies). Such investigations must have been conducted or sponsored by the applicant and must have been essential to approval of the application. If these requirements are met, the approval of a subsequent ANDA or an application described in Section 505(b)(2) of the Act may not be *made effective* for the same drug or use, if for a new indication, before the expiration of *three years* from the date of approval of the original application. If an applicant has exclusivity for a new use or indication, this does not preclude the approval of an ANDA application or 505(b)(2) application for the drug product with indications not covered by the exclusivity.

(3) A supplement to a new drug application for a drug containing a previously approved active ingredient (including any ester or salt of the active ingredient) approved after September 24, 1984, that contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the supplement and conducted or sponsored by the applicant. The approval of a subsequent application for a change approved in the supplement may not be *made effective* for *three years* from the date of approval of the original supplement.

The Act requires that patent information must now be filed with all newly submitted Section 505 drug applications, and that no NDA may be approved after September 24, 1984, without the submission of pertinent patent information to the Agency. The patent numbers and the expiration dates of appropriate patents claiming drug products that are the subject of approved applications will be published in this *Addendum* or in the monthly Cumulative Supplement to this publication. Patent information on unapproved applications or on patents beyond the scope of the Act (i.e., process or manufacturing patents) will not be published.

The patents that FDA regards as covered by the statutory provisions for submission of patent information are: patents that claim the active ingredient or ingredients; drug product patents, which include formulation/composition patents; and use patents for a particular approved indication or method of using the product. NDA holders or applicants amending or supplementing applications with formulation/composition patent information are asked to declare that the patent(s) is appropriate for publication and refers to an approved product or one for which approval is being sought. The Agency asks all applicants or application holders with use patents to provide information as to the approved indications or uses covered by such patents. This information will be included in the Cumulative Supplement to the List as it becomes available.

Since all parts of this publication are subject to changes, additions, or deletions, the *Addendum* must be used in conjunction with the most current Cumulative Supplement.

ADA57

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020741 003 | REPAGLINIDE;PRANDIN | 5216167 | OCT 10, 2006 | | NCE | DEC 22, 2002 |
| | | 5312924 | OCT 10, 2006 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 4873080 | JAN 23, 2006 | U-214 | I-249 | DEC 09, 2001 |
| | | 5767097 | DEC 22, 2017 | U-235 | NP | JUN 03, 2001 |
| 021024 001 | RIPAPENTINE;PRIFTIN | 5914128 | DEC 22, 2017 | | | |
| | | 6051252 | DEC 22, 2018 | | | |
| 020599 001 | RILUZOLE;RILUTEK | | | | NCE | JUN 22, 2003 |
| 020474 001 | RIMEXOLONE;VEXOL | | | | ODE | DEC 15, 2005 |
| 020835 001 | RISEDRONATE SODIUM;ACTONEL | 4687768 | JUN 22, 2008 | U-100 | ODE | DEC 12, 2002 |
| | | 5583122 | MAR 12, 2013 | U-222 | | |
| | | 6096342 | MAR 12, 2017 | | | |
| | | 6165513 | JUN 10, 2018 | | | |
| 020835 002 | RISEDRONATE SODIUM;ACTONEL | 5583122 | DEC 10, 2013 | U-222 | | |
| | | 6096342 | MAR 12, 2017 | | | |
| | | 6165513 | JUN 10, 2018 | | | |
| 020272 001 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | D-90 | | |
| | | 5158952 | DEC 29, 2009 | D-90 | | |
| 020272 002 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | D-90 | | |
| | | 5158952 | DEC 29, 2009 | D-90 | | |
| 020272 003 | RISPERIDONE;RISPERDAL | 5158952 | DEC 29, 2009 | D-90 | | |
| | | 4804663 | DEC 29, 2007 | D-90 | | |
| 020272 004 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | D-90 | | |
| | | 5158952 | DEC 29, 2009 | D-90 | | |
| 020272 005 | RISPERIDONE;RISPERDAL | 5158952 | DEC 29, 2009 | D-90 | | |
| | | 4804663 | DEC 29, 2007 | D-90 | | |
| 020272 007 | RISPERIDONE;RISPERDAL | 5158952 | DEC 29, 2009 | D-90 | | |
| | | 4804663 | DEC 29, 2007 | D-90 | | |
| 020272 008 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | D-90 | | |
| | | 5158952 | DEC 29, 2009 | D-90 | | |
| 020588 001 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | D-90 | | |
| | | 5453425 | JUL 11, 2014 | D-90 | | |
| 020659 001 | RITONAVIR;NORVIR | 5635523 | JAN 28, 2013 | U-190 | NCE | MAR 01, 2001 |
| | | 5541206 | JAN 28, 2014 | D-140 | | |
| | | 5648497 | DEC 25, 2014 | U-190 | | |
| | | 5846987 | JUN 30, 2016 | | | |
| | | 6037157 | OCT 07, 2014 | | | |
| 020680 001 | RITONAVIR;NORVIR | 5674882 | JUN 03, 2013 | U-190 | NCE | MAR 01, 2001 |
| | | 5635523 | JAN 28, 2013 | D-140 | | |
| | | 5541206 | JUL 30, 2013 | U-190 | | |
| | | 5648497 | DEC 25, 2014 | | | |
| | | 5846987 | JUN 30, 2016 | | | |
| | | 5948436 | SEP 13, 2013 | | | |


Kirkland & Ellis Library
5 0628 01112581 9

# CUMULATIVE
## SUPPLEMENT 8
### AUGUST 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

**Department of Health and Human Services**
Public Health Service
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

2001

RM
301.45
.A66
21ST
Supp. 8
Aug.
2001

08 0395

FILED
MAR - 4 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**APPROVED DRUG PRODUCTS**
with
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 8**
**AUGUST 2001**

**1.0  INTRODUCTION**

1.1   HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

iii

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.

## 1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved  when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name.  Therefore, the cumulation of these transfers and name changes will be identified in this section only.  Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards  (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme  or Zenith Labs [New Abbreviated

Names]). When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name. Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor will the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC (BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |
| CAMALL CO INC (CAMALL) | ABC HOLDING CORPORATION (ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO (CIBA) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| CIBA VISION OPHTHALMICS (CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| KNOLL PHARMACEUTICAL COMPANY (KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS (ABBOTT) |
| MARSAM PHARMACEUTICALS INC (MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC (MARSAM PHARMS) |
| MEDEVA AMERICAS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC (MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC (CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC (MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC (CELLTECH MFG) |
| NOVOPHARM LTD (NOVOPHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM PHARMACEUTICAL CO (NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM NC INC (NOVOPHARM NC) | TEVA PHARMACEUTICALS USA (TEVA) |
| OHMEDA PHARMACEUTICAL PRODUCTS DIV (OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |

APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| ROBERTS LABORATORIES INC (ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ROBERTS PHARMACEUTICAL CORP (ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |

## 1.3 AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800.  The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number.  Product search categories are: prescription, over-the-counter, discontinued drugs.  There are links to patent and exclusivity information that may be applicable to each product.  The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at
http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm.  Changes to the annual edition are listed separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm.  The drug product text files are zipped into zipobtxt.exe.
The files are updated concurrently with the publication of the annual edition or monthly cumulative supplements.  Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.   It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.   To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-13

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXCL EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 019810 003 | OMEPRAZOLE;PRILOSEC | 6150380 | NOV 10, 2018 | | I-229 | JUN 29, 2001 |
| | | 6147103 | OCT 09, 2018 | | PED | DEC 29, 2001 |
| | | 6166223 | NOV 10, 2018 | | | |
| | | 6191148 | OCT 09, 2018 | U-108 | | |
| | | 4255431*PED | OCT 05, 2001 | | | |
| | | 4636449*PED | JAN 20, 2006 | U-108 | | |
| | | 4786505*PED | OCT 20, 2007 | U-108 | | |
| | | 4853230*PED | OCT 20, 2007 | U-108 | | |
| | | 5093342*PED | AUG 20, 2010 | U-166 | | |
| | | 5599794*PED | AUG 04, 2014 | U-166 | | |
| | | 5629305*PED | AUG 04, 2014 | U-188 | | |
| | | 6143771*PED | APR 09, 2019 | | | |
| | | 6150380*PED | NOV 10, 2018 | | | |
| | | 6166223*PED | NOV 10, 2018 | | | |
| | | 6191148*PED | APR 09, 2019 | | | |
| 021246 001 | OSELTAMIVIR PHOSPHATE;TAMIFLU | 4503905 | APR 02, 2002 | | I-317 | NOV 17, 2003 |
| | | 5763483 | DEC 27, 2016 | U-376 | NDF | DEC 14, 2003 |
| | | 5866601 | FEB 02, 2016 | | NCE | OCT 27, 2004 |
| | | 5952375 | MAY 22, 2015 | | | |
| 020897 001 | OXYBUTYNIN CHLORIDE;DITROPAN XL | 6124355 | MAY 22, 2015 | U-378 | | |
| | | 6262115 | MAY 22, 2015 | U-393 | | |
| 020897 002 | OXYBUTYNIN CHLORIDE;DITROPAN XL | 6124355 | MAY 22, 2015 | U-378 | | |
| | | 6262115 | MAY 22, 2015 | U-378 | | |
| 020897 003 | OXYBUTYNIN CHLORIDE;DITROPAN XL | 6124355 | MAY 22, 2015 | U-378 | | |
| 020553 004 | OXYCODONE HYDROCHLORIDE;OXYCONTIN | 4861598 | AUG 29, 2007 | U-378 | | |
| | | 4861598 | AUG 29, 2007 | U-393 | | |
| | | 4970075 | NOV 13, 2007 | | | |
| | | 5266331 | FEB 05, 2008 | | | |
| | | 5549912 | FEB 05, 2008 | | | |
| | | 5549912 | AUG 29, 2006 | | | |
| 020553 005 | OXYCODONE HYDROCHLORIDE;OXYCONTIN | 4861598 | NOV 13, 2007 | | | |
| | | 4970075 | FEB 05, 2008 | | | |
| | | 5266331 | FEB 05, 2008 | | | |
| | | 5549912 | APR 16, 2008 | | | |
| | | 5549912 | FEB 05, 2013 | | | |
| | | 5508042 | FEB 22, 2013 | | | |
| | | 5656295 | MAY 08, 2011 | | | |
| | | 6096131 | | | | |
| | | 6150398 | | | | |
| 020262 001 | PACLITAXEL;TAXOL | 4758579 | JUL 19, 2005 | U-380 | | |
| 020036 001 | PAMIDRONATE DISODIUM;AREDIA | | | | D-68 | AUG 20, 2004 |
| 020036 003 | PAMIDRONATE DISODIUM;AREDIA | | | | D-68 | AUG 20, 2004 |
| 020036 004 | PAMIDRONATE DISODIUM;AREDIA | | | | | AUG 20, 2004 |
| 020987 001 | PANTOPRAZOLE SODIUM;PROTONIX | | | | I-330 | JUN 18, 2004 |
| | | | | | NDF | MAR 22, 2004 |
| 020988 001 | PANTOPRAZOLE SODIUM;PROTONIX IV | | | | NCE | FEB 02, 2005 |
| | | | | | I-337 | OCT 19, 2004 |

>ADD>

A-14

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | PED EXCL | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|---|
| 020031 001 | PAROXETINE HYDROCHLORIDE;PAXIL | 4721723 | DEC 29, 2006 | | | I-326 | APR 13, 2004 |
| 020031 002 | PAROXETINE HYDROCHLORIDE;PAXIL | 4839177 | JUN 13, 2006 | | | I-326 | APR 13, 2004 |
| 020031 003 | PAROXETINE HYDROCHLORIDE;PAXIL | 5872132 | JUN 06, 2012 | | | I-326 | APR 13, 2004 |
| 020031 004 | PAROXETINE HYDROCHLORIDE;PAXIL | 5872133 | JAN 19, 2009 | | | I-326 | APR 13, 2004 |
| 020031 005 | PAROXETINE HYDROCHLORIDE;PAXIL | 5900423 | MAY 19, 2015 | | | I-326 | APR 13, 2004 |
| 020936 003 | PAROXETINE HYDROCHLORIDE;PAXIL CR | 6063927 | APR 23, 2019 | | | | |
| | | 6080759 | MAY 19, 2015 | | U-286 | | |
| | | 6113291 | MAR 17, 2017 | | U-286 | | |
| | | 6113920 | MAR 17, 2015 | | | | |
| | | 6113289 | JAN 15, 2018 | | U-286 | | |
| 021064 001 | PERFLUTREN;DEFINITY | 5527521 | APR 05, 2011 | | | NCE | JUL 31, 2006 |
| | | 5547656 | APR 05, 2011 | | | | |
| | | 5769080 | JUL 20, 2010 | | | | |
| | | 4886812 | MAR 25, 2011 | | | | |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 5045552 | SEP 03, 2008 | | U-385 | | |
| 019627 002 | PROPOFOL;DIPRIVAN | 5015899 | APR 04, 2009 | | U-385 | | |
| 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 4110068 | APR 03, 2002 | | | I-122 | FEB 20, 2004 |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 5061722 | OCT 19, 2008 | | | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5147669 | MAR 24, 2009 | | | | |
| 019901 004 | RAMIPRIL;ALTACE | 6143769 | MAR 14, 2009 | | | | |
| 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | U-235 | | |
| 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | | |
| 020741 003 | REPAGLINIDE;PRANDIN | 5914128 | JAN 23, 2016 | | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | DEC 22, 2017 | | | | |
| | | 6053252 | DEC 22, 2016 | | | | |
| | | 6172046 | JAN 21, 2017 | | U-375 | | |
| | | 5767097*PED | SEP 21, 2016 | *PED | U-377 | | |
| | | 5914128*PED | JUL 23, 2018 | *PED | U-235 | | |
| | | 6051252*PED | JUN 22, 2016 | *PED | | PED | JUN 09, 2002 |
| | | 6063772*PED | JUN 22, 2018 | *PED | | PED | DEC 03, 2001 |
| | | 6172046*PED | JUL 23, 2016 | *PED | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6127340*PED | MAR 21, 2018 | *PED | U-375 | | |
| 020945 001 | RITONAVIR;NORVIR | 6232313 | NOV 07, 2017 | | U-377 | | |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | NOV 24, 2013 | | U-400 | | |
| | | 5691374 | JUN 25, 2017 | | | | |
| | | 6239173 | JUN 24, 2013 | | U-266 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and FED represent Pediatric Exclusivity

A-15

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 021042 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-256 | | |
| 021042 003 | ROFECOXIB;VIOXX | 5321074 | NOV 25, 2017 | | | |
|  |  | 6239173 | JUN 24, 2013 | | | |
|  |  | 6239173 | JUN 24, 2013 | | | |
|  |  | 5474995 | JUN 24, 2013 | U-256 | | |
| 021052 001 | ROFECOXIB;VIOXX | 5691374 | NOV 25, 2017 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | | | |
|  |  | 6239173 | JUN 24, 2013 | | | |
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | 5298515 | MAR 01, 2011 | | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5196438 | NOV 19, 2010 | U-386 | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020478 001 | SEVOFLURANE;ULTANE | | | | M-11 | AUG 06, 2004 |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | 6288127 | JAN 27, 2017 | | D-65 | FEB 16, 2004 |
|  |  | | | | M-9 | FEB 16, 2004 |
| >ADD> 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
|  |  | | | | M-9 | FEB 16, 2004 |
| >ADD> 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
|  |  | | | | M-9 | FEB 16, 2004 |
| >ADD> 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5616346 | MAY 18, 2013 | U-359 | | |
| 020280 006 | SOMATROPIN RECOMBINANT;GENOTROPIN | | | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN | | | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 001 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
|  |  | | | | ODE | JUL 25, 2008 |



Kirkland & Ellis Library

5 0628 01112928 2

# CUMULATIVE
# SUPPLEMENT 10
### OCTOBER 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

**Department of Health and Human Services**
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

2001

RM
301.45
.A66
21ST
Supp. 10
Oct.
2001

08 0395

FILED
MAR - 4 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**APPROVED DRUG PRODUCTS**
with
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 10**
**OCTOBER 2001**

**1.0 INTRODUCTION**

1.1  HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.

1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name. Therefore, the cumulation of these transfers and name changes will be identified in this section only. Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]). When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name. Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor will the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC (BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |
| CAMALL CO INC (CAMALL) | ABC HOLDING CORPORATION (ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO (CIBA) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| CIBA VISION OPHTHALMICS (CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| DEY LABORATORIES INC (DEY) | DEY LP (DEY) |
| KNOLL PHARMACEUTICAL COMPANY (KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS (ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION (LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC (NEW RIVER) |
| MARSAM PHARMACEUTICALS INC (MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC (MARSAM PHARMS) |
| MEDEVA AMERICAS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC (MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC (CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC (MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC (CELLTECH MFG) |
| NOVOPHARM LTD (NOVOPHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM PHARMACEUTICAL CO (NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM NC INC (NOVOPHARM NC) | TEVA PHARMACEUTICALS USA (TEVA) |

APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| OHMEDA PHARMACEUTICAL PRODUCTS DIV (OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HI THCARE CORP) |
| ROBERTS LABORATORIES INC (ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ROBERTS PHARMACEUTICAL CORP (ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ZENITH GOLDLINE (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |
| ZENITH GOLDLINE PHARMACEUTICALS INC (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |

## 1.3 AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800.  The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number. Product search categories are: prescription, over-the-counter, discontinued drugs. There are links to patent and exclusivity information that may be applicable to each product.  The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm.  Changes to the annual edition are listed
separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm.  The drug product text files are zipped into zipobtxt.exe.
The files are updated concurrently with the publication of the annual edition or monthly cumulative
supplements.  Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.  It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.  To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-18

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 075290 003 | PAMIDRONATE DISODIUM;PAMIDRONATE DISODIUM | | | | | |
| 020987 001 | PANTOPRAZOLE SODIUM;PROTONIX | | | | PC | MAY 05, 2002 |
| 020988 001 | PANTOPRAZOLE SODIUM;PROTONIX IV | 4758579 | JUL 19, 2005 | | I-330 | JUN 12, 2004 |
| | | | | | NDF | MAR 22, 2004 |
| | | | | | | FEB 02, 2005 |
| | | | | | I-337 | OCT 19, 2004 |
| 020819 001 | PARICALCITOL;ZEMPLAR | | | | | |
| 020031 001 | PAROXETINE HYDROCHLORIDE;PAXIL | 5246925 | APR 17, 2012 | U-314 | I-326 | APR 13, 2004 |
| 020031 002 | PAROXETINE HYDROCHLORIDE;PAXIL | | | | I-326 | APR 13, 2004 |
| 020031 003 | PAROXETINE HYDROCHLORIDE;PAXIL | | | | I-326 | APR 13, 2004 |
| 020031 004 | PAROXETINE HYDROCHLORIDE;PAXIL | | | | I-326 | APR 13, 2004 |
| 020031 005 | PAROXETINE HYDROCHLORIDE;PAXIL | | | | I-326 | APR 13, 2004 |
| 020936 003 | PAROXETINE HYDROCHLORIDE;PAXIL CR | 4721723 | DEC 29, 2006 | | | |
| | | 4839177 | JUN 13, 2006 | | | |
| | | 5422123 | JUN 06, 2012 | | | |
| | | 5994449 | MAY 19, 2009 | | | |
| | | 5872132 | MAY 19, 2015 | | | |
| | | 5900423 | MAY 19, 2015 | | | |
| | | 6063927 | APR 21, 2019 | | | |
| | | 6080759 | MAY 19, 2015 | | | |
| | | 6121291 | MAY 19, 2017 | | | |
| | | 6113933 | MAR 17, 2018 | | | |
| | | 6113209 | JAN 15, 2018 | | | |
| | | 6172233 | APR 05, 2011 | U-286 | | |
| | | 5527531 | APR 05, 2011 | | | |
| | | 5547756 | JUL 20, 2010 | | | |
| | | 5760080 | APR 05, 2011 | | | |
| 021064 001 | PERFLUTREN;DEFINITY | | | | NCE | JUL 31, 2006 |
| 021073 001 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | U-419 | | |
| 021073 002 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | U-419 | | |
| 021073 003 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | U-418 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-19

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| >ADD> 074726 001 | POTASSIUM CHLORIDE;KLOR-CON M20 | 4886812 | MAR 25, 2011 | | PC | FEB 26, 2002 |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | | | | I-322 | FEB 20, 2004 |
| 019627 002 | PROPOFOL;DIPRIVAN | | | | PED | AUG 20, 2004 |
| >ADD> 020639 001 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 005 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 003 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 004 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 006 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 5045552 | SEP 03, 2008 | | | |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 5035899 | APR 04, 2009 | U-385 | | |
| | | 4418068 | APR 08, 2002 | U-385 | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 24, 2009 | | | |
| 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | |
| 020741 003 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | JAN 23, 2016 | U-235 | PED | JUN 09, 2002 |
| | | 5914128 | DEC 22, 2017 | | PED | DEC 03, 2001 |
| | | 6051252 | DEC 22, 2016 | | | |
| | | 6063772 | JAN 23, 2017 | U-375 | | |
| | | 6172094**PED | SEP 22, 2016 | U-377 | | |
| | | 5914128**PED | JUL 21, 2016 | U-235 | | |
| | | 6051252**PED | JUN 22, 2018 | | | |
| | | 6063772**PED | JUN 22, 2018 | | | |
| | | 6172046**PED | JUL 23, 2018 | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6150337 | MAR 21, 2018 | U-375 | | |
| 019945 001 | RITONAVIR;NORVIR | 6239173 | NOV 01, 2017 | U-377 | | |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | NOV 07, 2017 | U-400 | | |
| | | 5691374 | JUN 24, 2013 | U-266 | | |
| | | 6239173 | NOV 25, 2017 | | | |
| 021042 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-266 | | |
| | | 5691374 | JUN 24, 2013 | | | |
| 021042 003 | ROFECOXIB;VIOXX | 6239173 | NOV 25, 2017 | U-266 | | |
| | | 6239173 | NOV 25, 2013 | | | |
| | | 5691374 | JUN 24, 2013 | | | |
| 021052 001 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 6239173 | NOV 25, 2013 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | 5290015 | MAR 01, 2011 | U-386 | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5196438 | NOV 19, 2010 | | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020478 001 | SEVOFLURANE;ULTANE | 6288127 | JAN 27, 2017 | | | |
| | | 6288127*PED | JUL 27, 2018 | | | |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5616346 | MAY 18, 2013 | U-359 | | |
| 021097 006 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5633352 | MAY 27, 2014 | | | |
| 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| 020280 001 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| 020280 012 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| 020280 013 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| 021151 001 | SOTALOL HYDROCHLORIDE;BETAPACE AF | | | | ODE | FEB 22, 2008 |
| | | | | | NP | FEB 22, 2003 |
| | | | | | PED | AUG 22, 2003 |



DEPARTMENT OF HEALTH & HUMAN SERVICES

Public Health Service

_____

Food and Drug Administration
Rockville MD 20857

FEB 26 2008

Deborah A. Jaskot, M.S., R.A.C.
Vice President, Regulatory Affairs
Teva Pharmaceuticals USA
1090 Horsham Road, P.O. Box 1090
North Wales, PA 19454-1090

Re:    Docket No. 2007P-0316/CP1 and CR1

Dear Ms. Jaskot:

This responds to your citizen petition dated August 3, 2007 (Petition), and the revised certification to your Petition dated January 4, 2008 (Correction).[1]  Your Petition requests that the Food and Drug Administration (FDA or the Agency) relist U. S. Patent Number 5,158,952 (the '952 patent) for the 0.25-milligram (mg), 0.5-mg, 1-mg, 2-mg, 3-mg, and 4-mg strengths of Risperdal (risperidone) tablets (new drug application (NDA) 20-272) in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the Orange Book).  You also request that FDA confirm that Teva Pharmaceutical USA's (Teva) eligibility for 180-day exclusivity in connection with its abbreviated new drug application (ANDA) 76-228 for risperidone tablets in these strengths has not been affected by FDA's delisting of the '952 patent from the Orange Book.  Your request is based on the contention that the '952 patent appeared in the printed annual edition of the Orange Book on the day that Teva submitted ANDA 76-228, which contained a certification pursuant to section 505(j)(2)(A)(vii)(IV) of the Act (paragraph IV certification) to the '952 patent, and a certification pursuant to section 505(j)(2)(A)(vii)(III) of the Act (paragraph III certification) to U. S. Patent Number 4,804,663 (the '663 patent).

We have carefully reviewed your Petition and have concluded that the '952 patent was delisted before Teva submitted ANDA 76-228 to FDA.  For the reasons described in further detail in this Response, we deny your request that FDA relist the '952 patent.  As Teva's ANDA did not contain a paragraph IV certification for a listed patent, and Teva did not provide the required

---

[1] See Docket No. 2007P-0316/CP1 and CR1.  On January 4, 2008, you submitted a "revised certification pursuant to 21 U.S.C. 355(q)(1)(H)" relating to your pending citizen petition. Section 505(q) of the Federal Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 355(q)) was added by the Food and Drug Administration Amendments Act of 2007 (Public Law 110-85) (FDAAA) on September 27, 2007.  You have alleged that your Petition, received by FDA on August 6, 2007, is subject to section 505(q)(1)(F) of the Act. It is FDA's view that the requirements, prohibitions, and benefits described in section 505(q) of the Act do not apply to requests submitted to FDA before September 27, 2007. Were it otherwise, FDA would be barred from considering your Petition, as it did not contain the required certification described in section 505(q)(1)(H) without which the Secretary "shall not consider a petition for review." A certification submitted after the petition does not make the original petition "contain" the certification. Moreover, we note that section 505(q) of the Act does not apply to a petition that relates solely to the timing of the approval of an application pursuant to current section 505(j)(5)(B)(iv) of the Act, which describes the 180-day exclusivity period accorded to certain applications (505(q)(4)(A) of the Act). As described further in this Response, although framed as a patent delisting matter, your Petition relates solely to Teva's eligibility for exclusivity and thus to the timing of the approval of ANDAs for risperidone tablets pursuant to section 505(j)(5)(B)(iv) of the Act. Because FDAAA does not apply to your Petition, we are responding to your Petition in accordance with our regulations on citizen petitions at 21 CFR 10.30.

08
0295

FILED

MAR - 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

notice of such certification to the holder of the NDA for the reference listed drug and each owner of the listed patent, Teva would not be eligible for 180-day exclusivity pursuant to section 505(j)(5)(B)(iv) of the Act for its pending ANDA 76-228.

I.      BACKGROUND

        A.      ANDAs and Eligibility for 180-day Exclusivity

The Drug Price Competition and Patent Term Restoration Act of 1984 (Public Law 98-417) (the Hatch-Waxman Amendments) created section 505(j) of the Act (21 U.S.C. 355(j)). The Hatch-Waxman Amendments reflect Congress' efforts to balance the need to "make available more low cost generic drugs by establishing a generic drug approval procedure for pioneer drugs first approved after 1962" with new incentives for drug development in the form of marketing exclusivity and patent term extensions.[2] Section 505(j) of the Act established an abbreviated approval pathway for a drug product that is the same as a previously approved drug (the reference listed drug) with respect to active ingredient, dosage form, route of administration, strength, labeling, and conditions of use, among other characteristics. An ANDA applicant also must demonstrate that its proposed product is bioequivalent to the reference listed drug. An applicant that can meet the requirements under section 505(j) for approval may rely upon the Agency's finding of safety and effectiveness for the reference listed drug, and need not repeat the extensive nonclinical and clinical investigations required for approval of a full NDA submitted under section 505(b)(1) of the Act. The timing of approval for an ANDA is subject to the patent and marketing exclusivity protections accorded the reference listed drug.

Section 505(b)(1) of the Act requires the sponsor of an NDA to "file with the application the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture[,] use, or sale of the drug." Upon approval of an application under section 505(c) of the Act, FDA publishes the patent information provided by the drug product's sponsor in the Orange Book, which is made available to the public in several formats. FDA's role in patent listing is ministerial. As discussed in the preamble to the June 2003 final rule, FDA "will not evaluate a patent to assess whether the declaration is accurate or whether the patent has been appropriately submitted for listing. We will, however, review the declaration for completeness and to determine that the information given by the NDA applicant or holder or patent owner indicates that the patent is eligible for listing."[3]

---

[2] See House Report No. 98-857, part 1, at 14 (1984), reprinted in 1984 U.S.C.C.A.N. 2647 at 2647-2648.

[3] "Applications for FDA Approval to Market a New Drug: Patent Submission and Listing Requirements and Application of 30-Month Stays on Approval of Abbreviated New Drug Applications Certifying That a Patent Claiming a Drug Is Invalid or Will Not Be Infringed; Final Rule" (68 FR 36676 at 36687; June 18, 2003). It should be noted that certain sections of this final rule regarding the application of 30-month stays on approval of certain ANDAs and applications submitted under section 505(b)(2) of the Act were superseded by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) (Public Law 108-173) and revoked by technical amendment (69 FR 11309; March 10, 2004).

The Orange Book is published annually and updated monthly in print. During the time period
relevant to this petition, the information in the Orange Book was updated approximately on a
monthly basis on the Orange Book Web page (the electronic Orange Book), which is linked from
the FDA Web site. Beginning in 1998, current patent listings for approved drug products could
be obtained from the electronic Orange Book in a search by *active ingredient*, *proprietary name*,
*application holder*, or *application number*.

An ANDA applicant must include a patent certification described in section 505(j)(2)(A)(vii) of
the Act for each patent that claims the reference listed drug or a method of using the drug for
which the applicant is seeking approval and for which information is required to be filed under
subsection 505(b) or 505(c) of the Act. For each patent listed in the Orange Book, the ANDA
applicant must submit either a paragraph III certification (delaying approval until the date on
which such patent will expire), a paragraph IV certification (certifying that such patent is invalid
or will not be infringed by the manufacture, use, or sale of the drug product for which the ANDA
is submitted), or, with respect to a method of use patent, a statement that the patent does not
claim a use for which the ANDA applicant is seeking approval (section 505(j)(2)(A)(viii) of the
Act). Submission of an ANDA for a drug product or the use of a drug product claimed in a
patent is an act of patent infringement if the ANDA product is intended to be marketed before
patent expiration (see 35 U.S.C. 271(e)(2)).

An applicant submitting a paragraph IV certification is required to give notice of the patent
challenge to the holder of the NDA for the reference listed drug and each owner of the patent that
is the subject of the certification. For an original ANDA, notice must be provided after receipt of
an acknowledgment letter from the Office of Generic Drugs (OGD) advising that the application
is sufficiently complete to permit a substantive review and has been received by OGD (21 CFR
314.95(b)).[4] Notice of a paragraph IV certification includes, among other things, "a detailed
statement of the factual and legal basis of the applicant's opinion that the patent is not valid or
will not be infringed" (section 505(j)(2)(B)(iii) of the Act) and it subjects the ANDA applicant to
the risk that it will be sued for patent infringement. In addition, if the NDA holder or patent
owner initiates a patent infringement action within 45 days after receiving notice of the
paragraph IV certification, there will be a statutory 30-month stay of approval of the ANDA
while the patent infringement litigation is pending (section 505(j)(5)(B)(ii) of the Act).

The 180-day exclusivity period described in section 505(j)(5)(B)(iv) of the Act provides an
incentive for ANDA applicants to challenge listed patents that may be invalid, unenforceable, or
not infringed by the drug product described in the ANDA. This patent challenge involves the
filing of a paragraph IV certification to a listed patent, notification to the NDA holder and patent
owner, and the opportunity for the NDA holder and patent owner to sue the ANDA applicant for
patent infringement. The first applicant to submit a substantially complete ANDA containing a
paragraph IV certification may be eligible for a 180-day period of marketing exclusivity during
which approval of subsequent ANDAs for the same drug product that also contain a paragraph
IV certification to the patent will not be granted. Any exclusivity period would run for 180 days
from either the first commercial marketing of the first applicant's drug product or from a court

---

[4] With respect to ANDAs, FDA uses the terms *received* or *received for substantive review* to refer to the action
described in the Act as filing, and these terms are used in this Response (see 21 CFR 314.101(b)).

decision finding that the patent that is the subject of the paragraph IV certification is invalid or not infringed, whichever is earlier (see section 505(j)(5)(B)(iv) of the Act), during the unexpired term of the patent.[5]

B.    Patents Listed in the Orange Book for Risperdal (risperidone) Tablets

The reference listed drug for Teva's ANDA is Janssen Pharmaceutica's (Janssen) Risperdal (risperidone) tablets (NDA 20-272). The 1-mg, 2-mg, 3-mg, 4-mg, and 5-mg Risperdal tablets were approved in 1993.[6] The 0.25-mg and 0.5-mg strengths were approved in 1999. After approval, the sponsor submitted information to FDA on the '663 patent and the '952 patent for listing in the Orange Book entry for Risperdal tablets. The '663 patent expired on December 29, 2007, and pediatric exclusivity attached to that patent will expire on June 29, 2008.[7] The '952 patent will expire on October 27, 2009.

On April 4, 2001, Janssen's parent company, Johnson & Johnson, sent correspondence to the Division of Neuropharmacological Drug Products in FDA's Center for Drug Evaluation and Research (CDER) requesting removal of the '952 patent from the Orange Book listing for 1-mg, 2-mg, 3-mg, and 4-mg Risperdal tablets. On June 11, 2001, Johnson & Johnson sent correspondence via facsimile to the Division of Database Management stating that its April 4, 2001, correspondence also should have requested delisting of the '952 patent for 0.25-mg, 0.5-mg, and 5-mg Risperdal tablets, and requesting removal of the '952 patent from the Orange Book listing for these strengths. In accordance with these instructions, FDA modified its patent listing database on June 11, 2001, to remove the '952 patent from the entries for Risperdal tablets in the above-referenced strengths in response to Johnson & Johnson's requests on April 4, 2001, and June 11, 2001. The delisting of the '952 patent was reflected in the publicly available, electronic Orange Book shortly after June 29, 2001, and no later than July 20, 2001, the date of the next database update.[8] An applicant searching the publicly available, electronic Orange

---

[5] The version of section 505(j)(5)(B)(iv) of the Act in effect at the time of Teva's ANDA submission predates enactment of the MMA, which amended this and other provisions of the Act. Unless otherwise noted (as in footnote 1), all statutory references reflect the pre-MMA version of the Act.

[6] The 5-mg strength of Risperdal (risperidone) tablets (NDA 20-272) has been discontinued from marketing.

[7] The New Jersey federal district court's finding that the '663 patent was valid and enforceable was affirmed by the Federal Circuit on May 11, 2007 (see *Janssen Pharmaceutica N.V. v. Mylan Pharms., Inc.*, 2006 U.S. Dist LEXIS 74582 (D.N.J. 2006), *aff'd*, 2007 U.S. App. LEXIS 11686 (Fed. Cir. 2007)). The Federal Circuit's mandate issued on June 26, 2007, following denial of a petition for panel rehearing and rehearing en banc (see 2007 U.S. App. LEXIS 16041 (Fed. Cir. 2007)). Accordingly, Teva's ANDA for risperidone tablets, which contains a paragraph III certifications to the '663 patent, will not be eligible for approval prior to June 29, 2008.

[8] The Division of Database Management was responsible for updating the Orange Book. In 2001, the Division of Database Management maintained the patent information submitted by NDA holders pursuant to section 505(b) and (c) of the Act in CDER's Oracle database from which it created patent.txt files on a regular basis. Each patent database .txt file contained the public patent information available at the time of creation of the file, and was released through the electronic Orange Book shortly after it was created. The patent database .txt file created June 4, 2001, showed that the '952 patent and the '663 patent were listed for Risperdal tablets. The patent database .txt file created June 29, 2001, showed that only the '663 patent was listed for Risperdal tablets, reflecting the removal of the' 952 patent on June 11, 2001, at Johnson & Johnson's request. Although we are unable to provide the exact date on which the patent information in the June 29, 2001, .txt file became publicly available in the electronic Orange Book, FDA has determined that it was available by the time the next patent .txt file was created on July 20, 2001.

Book after July 20, 2001, would have found that only the '663 patent was listed for Risperdal tablets (see section II.A of this Response for further discussion of the availability of patent information in printed and electronic versions of the Orange Book).

C.    Teva's ANDA 76-228 for Risperidone Tablets

On August 28, 2001, Teva submitted an ANDA for risperidone tablets. The Teva ANDA contained a paragraph III certification to the '663 patent and a paragraph IV certification to the '952 patent. During a filing review of the ANDA to determine whether it was sufficiently complete to permit a substantive review, OGD evaluated the ANDA in accordance with its usual practice to determine whether the ANDA contained an appropriate patent certification for each patent listed for the reference listed drug identified in the ANDA. When reviewing Teva's ANDA, the OGD project manager relied on the publicly available, electronic Orange Book for the most current patent listing information (see September 25, 2001, printout for risperidone from the electronic Orange Book, attached as Exhibit 1). In light of the absence of the '952 patent from the electronic Orange Book, an OGD project manager also contacted the Orange Book staff to clarify the discrepancy between the patent certifications provided in Teva's ANDA and the patent currently listed for Risperdal tablets. The Orange Book staff confirmed that the '952 patent had been delisted for Risperdal tablets.

OGD concluded that Teva had submitted a patent certification for a patent (the '952 patent) that was no longer listed for the reference listed drug, Risperdal tablets. On October 12, 2001, an OGD project manager contacted Philip Erickson, R.Ph., Director of Regulatory Affairs, Solid Oral Dosage Forms, for Teva Pharmaceuticals USA, and requested, among other things, that Teva submit a revised patent certification because the '952 patent had been delisted from the Orange Book. On October 22, 2001, Teva submitted a letter via facsimile withdrawing its patent certification to the '952 patent. Teva's letter stated, with reference to the revised patent certification: "U.S. Patent 5,158,952 with an expiration of October 27, 2009 *has been officially delisted* from the Approved Drug Products with Therapeutic Equivalence Evaluations (Orange Book), therefore only U.S. Patent 4,804,663 with an expiration of December 29, 2007 remains. Please find enclosed a patent certification revised accordingly" (emphasis added).[9] The revised patent certification, signed by D. Jaskot, Executive Director of Regulatory Affairs, Teva Pharmaceuticals USA stated: "Paragraph III Certification: The undersigned hereby certifies that to the best of our knowledge and in TEVA Pharmaceuticals USA's opinion there is one listed patent which claims the reference drug Risperdal® Tablets, 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg and 4 mg. U.S. Patent No. 4804663 Expiration December 29, 2007..."[10]

On October 24, 2001, OGD issued a standard acknowledgement letter[11] to Teva indicating that Teva's ANDA for risperidone tablets had been received for substantive review. The Teva

---

[9] See Exhibit 3 to Petition: Correspondence dated October 22, 2001, from D. Jaskot (Teva) to G. Buehler (OGD) regarding ANDA 76-228 (Teva's October 22, 2001, Correspondence). A paper copy of Teva's October 22, 2001, Correspondence was received by OGD on October 23, 2001.

[10] See Attachment 2 to Teva's October 22, 2001, Correspondence.

[11] When an ANDA containing a paragraph IV certification is received for substantive review by OGD, OGD will issue a paragraph IV acknowledgment letter which describes, among other things, an ANDA applicant's obligations

5

ANDA, as received by OGD, did not contain a paragraph IV certification to any listed patent for Risperdal tablets, and thus there was no paragraph IV certification for which Teva would have been required to provide notice to the NDA holder for Risperdal and the owner of the '952 patent.

## II.    ANALYSIS

You contend that Teva is entitled to 180 days of marketing exclusivity for its pending ANDA for risperidone tablets because the '952 patent appeared in the annual edition of the Orange Book (which you describe as the "official" Orange Book) on the day that Teva submitted its ANDA containing a paragraph IV certification to the '952 patent. You also assert that FDA's delisting of the '952 patent does not affect Teva's "entitlement" to 180-day exclusivity, because FDA "failed to provide official notice of the 'delisting' for several months following the submission of Teva's ANDA" (Petition at 2). We address these arguments below.

### A.    Public Availability of Information Regarding Delisting of '952 Patent

As described in section I.A. of this Response, FDA makes patent information for listed drugs available to the public in several formats. In 2001, we published a printed annual edition of the Orange Book with cumulative monthly supplements, and maintained a public docket (1995S-0117) for patent term extensions and new patents listed for human drugs. We also provided an electronic Orange Book updated approximately on a monthly basis. The '952 patent was listed for Risperdal tablets in the Patent and Exclusivity Information Addendum (the Addendum) to the printed 21st annual edition of the Orange Book, which is described on the title page as current through December 31, 2000. The Addendum states that "[s]ince all parts of this publication are subject to changes, additions, or deletions, the *Addendum* must be used in conjunction with the most current Cumulative Supplement" (Orange Book, 21st ed., at AD-2). In turn, Section 1.3 of each Cumulative Supplement to the 21st annual edition of the Orange Book describes the availability of the electronic Orange Book. The Cumulative Supplements state, among other things, that

> [t]here is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder, or applicant number. Product search categories are: prescription, over-the-counter, discontinued drugs. There are links to patent and exclusivity information that may be applicable to each product. The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.[12]

---

to provide the required notice to the NDA holder and each patent owner of its paragraph IV certification to a patent listed for the reference listed drug. OGD did not issue a paragraph IV acknowledgement letter to Teva because its ANDA did not contain a paragraph IV certification to a listed patent when received for substantive review by OGD.

[12] See, e.g., Orange Book Cumulative Supplement 1, January 2001, at v. Although the printed cumulative supplements to the Orange Book do not include information on patent delistings, the caveat regarding possible "changes, additions, or deletions" encourages the public to seek the most currently available information. The electronic Orange Book contained the most current information regarding patents listed for Risperdal tablets.

Moreover, the publishing history of the Orange Book, prominently displayed on the inside front cover of the printed 21st annual edition of the Orange Book, also indicates, among other things, that the Orange Book is "Updated by monthly cumulative supplements. Updated on the Internet. Address: http://www.fda.gov/cder/drug.htm."

An applicant searching the electronic Orange Book shortly after June 29, 2001, and no later than July 20, 2001, would have found that only the '663 patent was listed for Risperdal tablets. To illustrate this fact, we have loaded the June 29, 2001, patent database .txt file described in footnote 8 and the database *scripts* (the set of computer instructions to ask the database for certain data) for the electronic Orange Book that were in use in 2001.[13]  The electronic Orange Book Query by active ingredient for risperidone, and the information available from each link from the search results page are attached to this Response as Exhibit 2.  An applicant searching the electronic Orange Book for risperidone would have found that there was only one listed patent for NDA 20-272 for Risperdal tablets: the '663 patent.  Indeed, we note that we have a printout supplied by a different ANDA applicant and dated October 30, 2001, of the electronic Orange Book entry for Risperdal tablets (NDA 20-272), which shows that the only patent listed was the '663 patent (Exhibit 3).  This is the same patent information that would have been available to an applicant searching the electronic Orange Book any time after July 20, 2001.  As with Teva's ANDA, OGD received for substantive review the November 2001 ANDA referencing Risperdal tablets with a patent certification only to the '663 patent.

In summary, at the time Teva submitted its ANDA, the electronic Orange Book contained the most current information regarding patents listed for Risperdal tablets.  Your assertion that the delisting of the '952 patent did not become effective until publication of the 2002 annual edition of the Orange Book is without merit.

B.    Patent Certification Obligations for Receipt of ANDAs

You contend that Teva was required to provide a certification to the '952 patent in its submission of an ANDA for risperidone tablets on August 28, 2001, because "where a patent remains listed for a particular drug in the official Orange Book, a generic applicant has no choice but to believe that the NDA holder is continuing to assert that patent as claiming the listed drug" (Petition at 1 to 2, and 4).  However, by July 20, 2001, it was publicly known from the electronic Orange Book that the NDA holder was not continuing to assert the '952 patent as claiming Risperdal tablets.  As the '952 patent was no longer listed for the reference listed drug when Teva's ANDA 76-228 was submitted, a certification to the '952 patent was neither necessary nor permitted.

The Agency's regulations at 21 CFR 314.94(a)(12)(i), implementing section 505(j)(2)(A)(vii) of the Act, require that an ANDA contain a certification with respect to each patent that "claims the reference listed drug or that claims a use of such listed drug for which the applicant is seeking approval under section 505(j) of the act and for which information is required to be filed under section 505(b) and (c) of the act and [21 CFR] 314.53."  Patent information for approved drug products changes with some frequency as a result of requests by NDA holders to list newly issued patents or delist patents for their products in accordance with their statutory obligations

---

[13] FDA's database protocols and scripts have changed over time.

under section 505(b) and (c) of the Act. As a result, OGD's filing review of ANDAs routinely includes a determination of whether the patent certifications contained in the ANDA correspond to the patents actually listed for the reference listed drug, as assessed by the most current patent information the Agency has received. OGD does not rely solely on the applicant's representation that the ANDA contains the required patent certifications; OGD conducts an independent review of the patent information for the reference listed drug that FDA has received from the NDA holder.[14] The '952 patent was delisted for Risperdal tablets before any applicant, including Teva, submitted an ANDA referencing that drug. Accordingly, Teva was required to remove its certification to the '952 patent before its ANDA would be formally received by the Agency.

### C.    Hatch-Waxman Incentives for Developing Generic Drugs

With reference to the decision by the Circuit Court of Appeals for the District of Columbia in *Ranbaxy Laboratories Ltd. v. Leavitt*,[15] you assert that "adoption of a rule that would divest the first generic applicant of its exclusivity after that applicant has assumed the very risks 180-day exclusivity is designed to reward – the expense of formulating a non-infringing product and preparing a legal defense to a potential action for patent infringement, and then the submission of an infringing paragraph IV certification to the Agency – would fundamentally 'change the incentive structure adopted by Congress,' in clear violation of the plain text and structure of the Hatch-Waxman Act" (Petition at 2, citing 469 F.3d at 125-26). We recognize that, based on the *Ranbaxy* decision, once an ANDA applicant has submitted a paragraph IV certification to a listed patent, FDA may not remove the patent from the Orange Book until that applicant's 180-day exclusivity has expired (or the patent has expired). However, the factual predicate upon which the *Ranbaxy* decision was based is absent from Teva's risperidone ANDA. In *Ranbaxy*, the patents had been listed for Zocor (simvastatin) at the time Ranbaxy and Ivax Pharmaceuticals, Inc. (Ivax) (subsequently acquired by Teva) submitted their paragraph IV certifications and, after OGD had received their ANDAs, Ranbaxy and Ivax each provided the required notice of their paragraph IV certifications to Merck & Co., Inc., the NDA holder and patent owner, thereby subjecting themselves to the risk of patent infringement litigation. The NDA holder's request to delist the patents for simvastatin came almost 2 years *after* the Ranbaxy ANDA was submitted and almost 3 years *after* the Ivax ANDA was submitted.[16] In contrast, Johnson & Johnson requested that the '952 patent for Risperdal be delisted 2 to 4 months *before* Teva's ANDA for risperidone was submitted. Moreover, the fact of patent delisting was available in the electronic Orange Book at least 1 month before Teva submitted its application.

---

[14] Section 505(j)(2)(c)(vii) requires that an ANDA contain a certification with respect to each patent claiming the drug or use of the listed drug for which the applicant seeks approval "and for which information is required to be filed under [505(b) or (c)]." Therefore, to determine what certifications an ANDA must contain, FDA will refer to the most recent patent information submitted by the NDA holder. For example, if a new patent has been timely submitted to FDA for the reference listed drug and an ANDA does not contain a certification to the patent, OGD will contact the ANDA applicant and require that the applicant submit an appropriate patent certification. It is FDA's long-standing practice to require a certification to a patent recently submitted to FDA (if submitted within the time frame established by section 505(c) of the Act) even if the patent has not yet appeared in the Orange Book in any format.

[15] 469 F.3d 120 (D.C. Cir. 2006).

[16] See *Ranbaxy Laboratories Ltd. v. Leavitt*, 459 F.Supp.2d 1 (D.D.C. 2006).

Given that an NDA holder's request to delist a patent is implicitly an acknowledgment that the standard for patent listing set forth in section 505(b) and (c) of the Act – that a "claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture[,] use, or sale of the drug" – could no longer be met, Teva's purported paragraph IV certification to a delisted patent assumed none of the risks that 180-day exclusivity is designed to reward. By the time Teva submitted its ANDA, Johnson & Johnson had effectively informed FDA (and, with publication in the electronic Orange Book, the generic drug industry) that a claim of infringement of the '952 patent could not reasonably be brought against an ANDA applicant referencing Risperdal tablets. Because Teva withdrew its paragraph IV certification and never notified the NDA holder and patent owner that it believed the '952 patent to be invalid, unenforceable, or not infringed, Teva has not been subject to any risk of patent infringement litigation.[17]

The "reward Congress guaranteed in the Hatch-Waxman Act" (Petition at 5) is the opportunity for an ANDA applicant to compete with other ANDA applicants for the first substantially complete ANDA containing a paragraph IV certification to a listed patent for the reference listed drug. The uncertainties associated with this "guarantee" are encountered by all ANDA applicants – i.e., another applicant may be the "first applicant," thereby blocking a competitor from marketing for 180 days following its approval; the patent may be held to be valid and enforceable (as was the '663 patent listed for Risperdal); the patent that is the subject of a paragraph IV certification may expire before the applicant can obtain approval of its ANDA; or a patent may be delisted before submission of an ANDA (as was the '952 patent).

III.    CONCLUSION

We have concluded that the '952 patent was delisted before Teva submitted to FDA ANDA 76-228 with a paragraph IV certification to the patent. Accordingly, we deny your request that FDA relist the '952 patent. Because the '952 patent was properly delisted and Teva's ANDA could not contain a paragraph IV certification for that patent, Teva is not eligible for 180-day exclusivity for ANDA 76-228.

Sincerely,

Janet Woodcock, M.D.
Acting Director
Center for Drug Evaluation and Research

---

[17] To the extent that Teva complains that it has gone to the expense of formulating a non-infringing product, this expense is borne by any ANDA applicant that seeks to market its proposed generic product before expiration of a valid and enforceable patent, irrespective of whether the patent is listed in the Orange Book. Indeed, in the preamble to our 1994 final rule on patent and exclusivity provisions, we noted: "FDA, however, believes it would be prudent for [ANDA] applicants to conduct patent searches if possible. A patent search could reveal the existence of an unlisted, but valid, patent and thus prevent an unnecessary expenditure of resources by applicants and FDA on a product that might not be marketable" (see "Abbreviated New Drug Application Regulations; Patent and Exclusivity Provisions, Part II; Final Rule" (59 FR 50338 at 50346; October 3, 1994).

1

Patent and Exclusivity Search Results from query on 020272 001.

## Patent Data

| Appl Prod Patent | Patent | Use |
| No No No | Expiration | Code |
| 020272 001  4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

There is no unexpired exclusivity for this product.

Thank you for searching the Electronic Orange Book

**Patent and Exclusivity Terms**

**Return to Electronic Orange Book Home Page**

2

# Electronic Orange Book Query

---

**Query by Active Ingredient:**

| risperidone | (Type in part or all of name)

Select the list you would like to search:

- ⦿ Rx (Prescription Drug Products)
- ○ OTC (Over-the-Counter Drug Products)
- ○ Disc (Discontinued Drug Products)



---

Return to the Electronic Orange Book Home Page

Active Ingredient Search

**Active Ingredient Search Results from "Rx" table for query on "risperidone."**

| Appl No | TE Code | RLD | Active Ingredient | Dosage Form; Route | Strength | Proprietary Name | Applicant |
|---------|---------|-----|-------------------|--------------------|----------|------------------|-----------|
| 020588 |  | Yes | RISPERIDONE | Solution; Oral | 1MG/ML | RISPERDAL | JANSSEN |
| 020272 |  | No | RISPERIDONE | Tablet; Oral | 0.25MG | RISPERDAL | JANSSEN |
| 020272 |  | No | RISPERIDONE | Tablet; Oral | 0.5MG | RISPERDAL | JANSSEN |
| 020272 |  | Yes | RISPERIDONE | Tablet; Oral | 1MG | RISPERDAL | JANSSEN |
| 020272 |  | No | RISPERIDONE | Tablet; Oral | 2MG | RISPERDAL | JANSSEN |
| 020272 |  | No | RISPERIDONE | Tablet; Oral | 3MG | RISPERDAL | JANSSEN |
| 020272 |  | No | RISPERIDONE | Tablet; Oral | 4MG | RISPERDAL | JANSSEN |

Thank you for searching the Electronic Orange Book

**Return to Electronic Orange Book Home Page**

Orange Book: Active Ingredient Detail Record Search                                    Page 1 of 2

**Search results from the "Rx" table for query on "020272."**

---

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 1MG |
| Application Number: | 020272 |
| Product Number: | 001 |
| Approval Date: | Dec 29, 1993 |
| Reference Listed Drug | Yes |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

---

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 2MG |
| Application Number: | 020272 |
| Product Number: | 002 |
| Approval Date: | Dec 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

---

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 3MG |
| Application Number: | 020272 |
| Product Number: | 003 |
| Approval Date: | Dec 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

---

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |

Orange Book: Active Ingredient Detail Record Search

Strength:                                   4MG
Application Number:                         020272
Product Number:                             004
Approval Date:                              Dec 29, 1993
Reference Listed Drug                       No
RX/OTC/DISCN:                               RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:                          RISPERIDONE
Dosage Form;Route:                          Tablet; Oral
Proprietary Name:                           RISPERDAL
Applicant:                                  JANSSEN
Strength:                                   0.5MG
Application Number:                         020272
Product Number:                             007
Approval Date:                              Jan 27, 1999
Reference Listed Drug                       No
RX/OTC/DISCN:                               RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:                          RISPERIDONE
Dosage Form;Route:                          Tablet; Oral
Proprietary Name:                           RISPERDAL
Applicant:                                  JANSSEN
Strength:                                   0.25MG
Application Number:                         020272
Product Number:                             008
Approval Date:                              May 10, 1999
Reference Listed Drug                       No
RX/OTC/DISCN:                               RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

**Thank you for searching the Electronic Orange Book!**

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results

Patent and Exclusivity Search Results from query on 020272 001.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 001 | | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results

**Patent and Exclusivity Search Results from query on 020272 002.**

---

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 002     | 4804663   | DEC 29,2007       | U-90     |

---

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results

Patent and Exclusivity Search Results from query on 020272 003.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 | 003 | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

Thank you for searching the Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results

Patent and Exclusivity Search Results from query on 020272 004.

---

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 004     | 4804663   | DEC 29,2007       | U-90     |

---

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

**Patent and Exclusivity** Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results

**Patent and Exclusivity Search Results from query on 020272 007.**

---

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 007     | 4804663   | DEC 29,2007       | U-90     |

---

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results

Patent and Exclusivity Search Results from query on 020272 008.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 | 008 | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

Thank you for searching the Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

**3**

Electronic Orange Book Home Page

# Electronic Orange Book

## Approved Drug Products
### with
### Therapeutic Equivalence Evaluations

Current through July 2001

Preface

FAQ

Search by Active Ingredient     Search by Applicant Holder

Search by Proprietary Name     Search by Application Number

The products in this list have been approved under section 505 of the Federal Food, Drug, and Cosmetic Act.

Drug questions email: DRUGINFO@CDER.FDA.GOV

U.S Department of Health and Human Services
Public Health Service
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

Updated: October 19, 2001

Active Ingredient Detail Record Search

**Search results from the "Rx" table for query on "020272."**

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 1MG |
| Application Number: | 020272 |
| Product Number: | 001 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | Yes |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 2MG |
| Application Number: | 020272 |
| Product Number: | 002 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 3MG |
| Application Number: | 020272 |
| Product Number: | 003 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

http://www.accessdata.fda.gov/scripts/cder/ob/docs/tempaidet.cfm?Appl_No=020272&TAB... 10/30/01

Active Ingredient Detail Record Search

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 4MG |
| Application Number: | 020272 |
| Product Number: | 004 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 0.5MG |
| Application Number: | 020272 |
| Product Number: | 007 |
| Approval Date: | JAN 27, 1999 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 0.25MG |
| Application Number: | 020272 |
| Product Number: | 008 |
| Approval Date: | MAY 10, 1999 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

Patent and Exclusivity Search Results

Page 1 of 1

Patent and Exclusivity Search Results from query on 020272 001.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 | 001 | 4804663 | DEC | U-90 |

## Exclusivity Data

There is no unexpired exclusivity for this product.

Thank you for searching the Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page


Kirkland & Ellis Library
5 0628 01116527 8

CUMULATIVE
SUPPLEMENT 11
NOVEMBER 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

Department of Health and Human Services
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

2001

*08 0395*

RM
301.45
.A66
21ST
Supp. 11
Nov.
2001

FILED

MAR

NANCY MAYER WHITTINGTON, CLER
U.S. DISTRICT COURT

**APPROVED DRUG PRODUCTS**
with
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 11**
**NOVEMBER 2001**

**1.0 INTRODUCTION**

1.1  HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.


## 1.2   APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name. Therefore, the cumulation of these transfers and name changes will be identified in this section only. Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]). When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name. Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor will the cumulation of these name changes appear in this section.

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC<br>(BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| CAMALL CO INC<br>(CAMALL) | ABC HOLDING CORPORATION<br>(ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO<br>(CIBA) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| CIBA VISION OPHTHALMICS<br>(CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| DEY LABORATORIES INC<br>(DEY) | DEY LP<br>(DEY) |
| KNOLL PHARMACEUTICAL COMPANY<br>(KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS<br>(ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION<br>(LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC<br>(NEW RIVER) |
| MARSAM PHARMACEUTICALS INC<br>(MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC<br>(MARSAM PHARMS) |
| MEDEVA AMERICAS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC<br>(MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC<br>(CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC<br>(MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC<br>(CELLTECH MFG) |
| NOVOPHARM LTD<br>(NOVOPHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM PHARMACEUTICAL CO<br>(NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM NC INC<br>(NOVOPHARM NC) | TEVA PHARMACEUTICALS USA<br>(TEVA) |

APPLICANT NAME CHANGES

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| OHMEDA PHARMACEUTICAL PRODUCTS DIV<br>(OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| ROBERTS LABORATORIES INC<br>(ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC<br>(SHIRE PHARM) |
| ROBERTS PHARMACEUTICAL CORP<br>(ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC<br>(SHIRE PHARM) |
| ZENITH GOLDLINE<br>(ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC<br>(IVAX PHARMS) |
| ZENITH GOLDLINE PHARMACEUTICALS INC<br>(ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC<br>(IVAX PHARMS) |

## 1.3 AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800. The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number. Product search categories are: prescription, over-the-counter, discontinued drugs. There are links to patent and exclusivity information that may be applicable to each product. The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at
http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm. Changes to the annual edition are listed
separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm. The drug product text files are zipped into zipobtxt.exe.
The files are updated concurrently with the publication of the annual edition or monthly cumulative
supplements. Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.  It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.  To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 021073 003 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6329404 | JUN 19, 2016 | U-430 | | |
| | | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6313140 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | | PC | FEB 28, 2002 |
| 074726 001 | POTASSIUM CHLORIDE;KLOR-CON M20 | | | | | |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | | | | | |
| 019998 001 | PRAVASTATIN SODIUM;PRAVACHOL | 4886812 | MAR 25, 2011 | | D-70 | DEC 18, 2004 |
| 019998 002 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| 019998 003 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| 019998 004 | PRAVASTATIN SODIUM;PRAVACHOL | | | | NS | DEC 18, 2004 |
| 019998 008 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | FEB 18, 2004 |
| | | | | | I-122 | FEB 20, 2004 |
| | | | | | PED | AUG 20, 2004 |
| 019627 002 | PROPOFOL;DIPRIVAN | | | | | |
| 020639 001 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 002 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 003 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 004 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 005 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 5045552 | SEP 03, 2011 | | NCE | SEP 26, 2002 |
| | | 5035899 | SEP 04, 2008 | | | |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 4418068 | APR 03, 2002 | U-385 | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | U-385 | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019090 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 019955 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 019675 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 018703 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020095 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020251 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020251 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020095 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020251 003 | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | | | | PED | APR 29, 2003 |
| 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 24, 2009 | | | |
| 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | |
| 020741 003 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020903 001 | RIBAVIRIN;REBETOL | 6335032 | DEC 22, 2017 | | PED | JUN 09, 2002 |
| | | 6335032*PED | JUN 22, 2018 | | PED | DEC 03, 2001 |
| | | 6317090*PED | JUN 22, 2018 | | | |
| | | 6317090 | DEC 22, 2017 | U-235 | | |
| | | 5767097 | JAN 21, 2016 | | | |
| | | 5914128 | DEC 22, 2016 | | | |
| | | 6051252 | DEC 22, 2017 | | | |
| | | 6063772 | JAN 21, 2016 | | | |
| | | 6172046 | SEP 21, 2017 | | | |
| | | 5767097*PED | JUL 21, 2016 | U-375 | | |
| | | 5914128*PED | JUN 22, 2017 | U-377 | | |
| | | 6051252*PED | JUN 22, 2018 | U-235 | | |
| | | 6063772*PED | JUL 21, 2016 | | | |
| | | 6172046*PED | MAR 21, 2018 | | | |
| 020903 002 | RIBAVIRIN;REBETOL | 6335032 | DEC 22, 2017 | U-375 | | |
| | | 6335032*PED | JUN 22, 2018 | U-377 | | |
| | | 5767097 | JAN 21, 2016 | | | |
| | | 5767097*PED | JUL 21, 2016 | U-225 | | |
| | | 5914128 | DEC 22, 2016 | U-235 | | |
| | | 5914128*PED | JUN 22, 2017 | | | |
| | | 6051252 | DEC 22, 2017 | | | |
| | | 6051252*PED | JUN 22, 2018 | U-375 | | |
| | | 6063772 | JAN 21, 2016 | | | |
| | | 6063772*PED | JUL 21, 2016 | U-377 | | |
| | | 6172046 | SEP 21, 2017 | U-377 | | |
| | | 6172046*PED | MAR 21, 2018 | | | |
| | | 6317090 | DEC 22, 2017 | | | |
| | | 6317090*PED | JUN 22, 2018 | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6150337 | NOV 07, 2017 | U-400 | | |
| 020945 001 | RITONAVIR;NORVIR | 6232333 | NOV 24, 2015 | U-266 | | |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | NOV 24, 2013 | | | |
| | | 5691374 | NOV 25, 2017 | | | |
| 021042 002 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | U-266 | | |
| | | 5474995 | JUN 24, 2013 | | | |
| | | 5691374 | NOV 25, 2017 | | | |
| 021042 003 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | U-266 | | |
| | | 6239173 | JUN 24, 2013 | | | |
| | | 5691374 | NOV 25, 2017 | | | |
| 021052 001 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6280095 | FEB 11, 2017 | U-420 | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6280095 | FEB 11, 2017 | U-420 | | |
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6280095 | FEB 11, 2017 | U-420 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-22

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | | | | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5290815 | MAR 01, 2011 | U-386 | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5196438 | NOV 19, 2010 | | M-11 | AUG 06, 2004 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020090 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020478 001 | SEVOFLURANE;ULTANE | | | | M-11 | AUG 06, 2004 |
| >ADD> | | | | | | |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | 6288127*PED<br>6288127 | JUL 27, 2017<br>JAN 27, 2017 | | D-65<br>M-9 | FEB 16, 2004<br>FEB 16, 2004 |
| 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65<br>M-9 | FEB 16, 2004<br>FEB 16, 2004 |
| 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65<br>M-9 | FEB 16, 2004<br>FEB 16, 2004 |
| 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | | | U-359 | | |
| 020280 006 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5616346<br>5633352 | MAY 18, 2013<br>MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897<br>5633352 | JUN 11, 2018<br>MAY 27, 2014 | | ODE<br>I-334 | JUL 25, 2008<br>JUL 25, 2004 |
| 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897<br>5633352 | JUN 11, 2018<br>MAY 27, 2014 | | ODE<br>I-334 | JUL 25, 2008<br>JUL 25, 2004 |
| 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897<br>5633352 | JUN 11, 2018<br>MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897<br>5633352 | JUN 11, 2018<br>MAY 27, 2014 | | ODE<br>I-334 | JUL 25, 2008<br>JUL 25, 2004 |
| 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897<br>5633352 | JUN 11, 2018<br>MAY 27, 2014 | | ODE<br>I-334 | JUL 25, 2008<br>JUL 25, 2004 |
| 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 012 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334<br>ODE | JUL 25, 2004<br>JUL 25, 2008 |
| 020280 013 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| 019865 001 | SOTALOL HYDROCHLORIDE;BETAPACE | | | | PED<br>PED | APR 01, 2005<br>OCT 01, 2004 |
| 019865 002 | SOTALOL HYDROCHLORIDE;BETAPACE | | | | PED<br>M-13 | APR 01, 2005<br>OCT 01, 2004 |
| >ADD> | | | | | | |
| >ADD> | | | | | | |
| >ADD> | | | | | | |
| >ADD> | | | | | | |


Kirkland & Ellis Library
5 0628 01116654 0

**CUMULATIVE
SUPPLEMENT 12
DECEMBER 2001**



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

**Department of Health and Human Services**
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

**2001**

08 0395

FILED
MAR - 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RM
301.45
.A66
21ST
Supp. 12
Dec.
2001

**APPROVED DRUG PRODUCTS**
**with**
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 12**
**DECEMBER 2001**

**1.0 INTRODUCTION**

1.1   HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug
Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is
composed of four parts: approved prescription drug products with therapeutic equivalence
evaluations, over-the-counter (OTC) drug products that require approved applications as a
condition of marketing, drug products with approval under Section 505 of the Act
administered by the Center for Biologics Evaluation and Research and products that have
never been marketed, have been discontinued from marketing or that have had their
approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly
approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated
patent and exclusivity data. The Addendum contains appropriate drug patent and
exclusivity information required of the Agency by the "Drug Price Competition and Patent
Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with
Approval under Section 505 of the Act Administered by the Center for Biologics
Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List
must be used in conjunction with the most current Cumulative Supplement. Users may
wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that
changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to
assist in locating the proper place in the List for the revision. [Strength(s) which already
exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is
multisource; the deletion of a therapeutic equivalence code indicates that the drug product
has become single source. (An infrequent exception exists when a therapeutic equivalence
code is revised. In that case the deletion of the therapeutic equivalence code is followed
immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.


1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name. Therefore, the cumulation of these transfers and name changes will be identified in this section only. Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

iv

Names]).   When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name. Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor will the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| AMERSHAM HEALTH INC<br>(AMERSHAM HLTH) | AMERSHAM HEALTH<br>(AMERSHAM HLTH) |
| BAXTER PHARMACEUTICAL PRODUCTS INC<br>(BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA<br>& CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| CAMALL CO INC<br>(CAMALL) | ABC HOLDING CORPORATION<br>(ABC HOLDING) |
| CHELSEA LABORATORIES INC<br>(CHELSEA LABS) | WATSON LABORATORES INC<br>(WATSON LAB) |
| CIBA VISION CORP DIV NOVARTIS CO<br>(CIBA) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| CIBA VISION OPHTHALMICS<br>(CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| DEY LABORATORIES INC<br>(DEY) | DEY LP<br>(DEY) |
| DUPONT MERCK PHARMACEUTICAL CO<br>(DUPONT MERCK) | BRISTOL MYERS SQUIBB PHARMA COMPANY<br>(BRISTOL MYERS SQUIBB) |
| DUPONT PHARMACEUTICALS CO<br>(DUPONT PHARMA) | BRISTOL MYERS SQUIBB PHARMA COMPANY<br>(BRISTOL MYERS SQUIBB) |
| DUPONT PHARMACEUTICALS CO PR<br>(DUPONT PHARMA) | BRISTOL MYERS SQUIBB PHARMA COMPANY<br>(BRISTOL MYERS SQUIBB) |
| GD SEARLE AND CO<br>(SEARLE) | GD SEARLE LLC<br>(GD SEALE LLC) |
| KNOLL PHARMACEUTICAL COMPANY<br>(KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL<br>PRODUCTS<br>(ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION<br>(LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC<br>(NEW RIVER) |

APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| MARSAM PHARMACEUTICALS INC (MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC (MARSAM PHARMS) |
| MEDEVA AMERICAS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC (MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC (CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC (MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC (CELLTECH MFG) |
| MEDI PHYSICS AMERSHAM IMAGING (MEDI PHYSICS) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| MEDI PHYSICS INC (MEDI PHYSICS) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| NOVOPHARM LTD (NOVOPHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM PHARMACEUTICAL CO (NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM NC INC (NOVOPHARM NC) | TEVA PHARMACEUTICALS USA (TEVA) |
| NYCOMED AMERSHAM (NYCOMED AMERSHAM) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| NYCOMED AMERSHAM PLC (NYCOMED AMERSHAM) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| NYCOMED INC (NYCOMED) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| OHMEDA PHARMACEUTICAL PRODUCTS DIV ANESTHESIA &  CRITICAL CARE (OHMEDA) | BAXTER HEATHCARE CORPORATION (BAXTER HLTHCARE CORP) |
| ROBERTS LABORATORIES INC (ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |

APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| ROBERTS PHARMACEUTICAL CORP (ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ROSEMONT PHARMACEUTICAL COR (ROSEMONT) | USL PHARMA INC (USL PHARMA) |
| SEARLE PHARMACEUTICALS INC (SEARLE) | GD SEARLE LLC (GD SEARLE LLC) |
| ZENITH GOLDLINE (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |
| ZENITH GOLDLINE PHARMACEUTICALS INC (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |

A-23

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXCL EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| >ADD> 074726 001 | POTASSIUM CHLORIDE;KLOR-CON M20 | 4843086 | NOV 23, 2007 | U-231 | PC | FEB 28, 2002 |
| >ADD> 020667 001 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| >ADD> 020667 002 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| >ADD> 020667 004 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| >ADD> 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| >ADD> 020667 006 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4866812 | MAR 25, 2011 | | | |
| | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2011 | U-231 | | |
| >ADD> 019898 002 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| 019898 003 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| 019898 008 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| 019898 008 | PRAVASTATIN SODIUM;PRAVACHOL | | | | NS | DEC 18, 2004 |
| | PRAVASTATIN SODIUM;PRAVACHOL | | | U-231 | D-70 | DEC 18, 2004 |
| | PRAVASTATIN SODIUM;PRAVACHOL | | | | I-322 | FEB 20, 2004 |
| | PRAVASTATIN SODIUM;PRAVACHOL | | | | PED | AUG 20, 2004 |
| 019627 002 | PROPOFOL;DIPRIVAN | | | | | |
| 020639 001 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 002 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 003 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 004 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 005 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| | QUETIAPINE FUMARATE;SEROQUEL | 5045552 | SEP 03, 2008 | | | |
| >ADD> 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 5035899 | APR 04, 2009 | U-385 | NCE | SEP 26, 2002 |
| | RABEPRAZOLE SODIUM;ACIPHEX | | | U-385 | I-346 | FEB 12, 2005 |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 4418068 | APR 03, 2012 | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019090 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | 6143769 | MAR 24, 2009 | | PED | APR 29, 2003 |
| 019533 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | 6143769 | MAR 14, 2009 | | PED | APR 29, 2003 |
| 019533 002 | RANITIDINE HYDROCHLORIDE;ZANTAC | 6143769 | MAR 14, 2009 | | PED | APR 29, 2003 |
| 019533 002 | RANITIDINE HYDROCHLORIDE;ZANTAC | 5767097 | JAN 23, 2016 | U-235 | PED | APR 29, 2003 |
| 018703 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 5934128 | DEC 22, 2017 | | PED | APR 29, 2003 |
| 020095 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 6051272 | DEC 22, 2016 | | PED | APR 29, 2003 |
| 020251 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 6051272 | JAN 23, 2016 | | PED | APR 29, 2003 |
| 020251 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 6172046 | SEP 21, 2017 | | PED | APR 29, 2003 |
| 018703 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 5767097**PED | JUL 21, 2016 | U-375 | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 5914128**PED | JUN 22, 2018 | U-377 | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 6051252**PED | JUN 22, 2016 | U-235 | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | 6063772**PED | JUL 23, 2016 | | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | 6214386**PED | JUN 22, 2018 | | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | 6335032 | MAR 22, 2016 | U-375 | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | 6335032*PED | JUN 22, 2018 | | | |
| | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | 6337090 | DEC 22, 2017 | U-377 | | |
| 020741 002 | REPAGLINIDE;PRANDIN | | | | PED | JUN 09, 2002 |
| 020741 002 | REPAGLINIDE;PRANDIN | | | | PED | DEC 03, 2001 |
| 020741 003 | REPAGLINIDE;PRANDIN | | | | | |
| 020741 001 | REPAGLINIDE;PRANDIN | | | | | |
| 020903 001 | RIBAVIRIN;REBETOL | | | | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-24

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | PATENT/PED EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020903 002 | RIBAVIRIN;REBETOL | 637090*PED | JUN 22, 2018 | | | |
| | | 6355032 | DEC 22, 2017 | | | |
| | | 6153032*PED | JUN 22, 2018 | U-235 | | |
| | | 5767097 | JUL 22, 2016 | U-235 | | |
| | | 5767097*PED | JAN 23, 2017 | | | |
| | | 5914128 | DEC 22, 2017 | | | |
| | | 5914128*PED | JUN 22, 2018 | | | |
| | | 6051252 | DEC 22, 2017 | | | |
| | | 6051252*PED | JUN 22, 2018 | | | |
| | | 6063772 | JAN 23, 2018 | U-375 | | |
| | | 6063772*PED | JUL 23, 2018 | | | |
| | | 6172046 | SEP 21, 2017 | U-377 | | |
| | | 6172046*PED | MAR 21, 2018 | U-377 | | |
| | | 637090 | DEC 22, 2017 | | | |
| | | 6150090*PED | JUN 21, 2018 | U-400 | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6232333 | NOV 07, 2013 | U-266 | | |
| 020945 001 | RITONAVIR;NORVIR | 5474995 | NOV 25, 2017 | | | |
| 021042 001 | ROFECOXIB;VIOXX | 5691374 | NOV 25, 2017 | | | |
| 021042 002 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | U-266 | | |
| | | 5474995 | NOV 25, 2017 | | | |
| | | 5913774 | JUN 24, 2013 | | | |
| 021042 003 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | U-266 | | |
| | | 5474995 | NOV 25, 2017 | | | |
| | | 5691374 | NOV 25, 2017 | | | |
| 021052 001 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | 5590815 | MAR 30, 2011 | U-386 | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5196438 | NOV 19, 2010 | | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | AUG 13, 2010 | U-12 | I-279 | DEC 07, 2002 |
| >ADD> | | 4538518 | DEC 30, 2005 | U-152 | M-11 | AUG 06, 2004 |
| >ADD> | | 4962128 | NOV 02, 2009 | U-12 | PED | JUN 07, 2003 |
| >ADD> | | 4962128 | NOV 02, 2009 | U-152 | PED | FEB 06, 2005 |
| >ADD> | | 4536518*PED | JUN 30, 2006 | U-12 | | |
| >ADD> | | 5248699*PED | MAY 02, 2010 | U-152 | | |
| >ADD> | | 4962128*PED | FEB 11, 2012 | U-12 | | |
| >ADD> | | 4962128 | NOV 02, 2009 | U-152 | | |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | AUG 13, 2010 | U-12 | I-279 | DEC 07, 2002 |
| >ADD> | | 4538518 | DEC 30, 2005 | U-152 | M-11 | AUG 07, 2004 |
| >ADD> | | 4962128 | NOV 02, 2009 | U-12 | PED | FEB 06, 2005 |
| >ADD> | | 4962128 | NOV 02, 2009 | U-152 | | |
| >ADD> | | 4536518*PED | JUN 30, 2006 | U-12 | | |
| >ADD> | | 5248699*PED | MAY 02, 2010 | U-152 | | |
| >ADD> | | 4962128*PED | FEB 11, 2012 | U-12 | | |
| >ADD> | | 4962128 | NOV 02, 2009 | U-152 | | |
| >ADD> | | 4962128*PED | MAY 02, 2010 | U-152 | | |

A-25

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 019839 003 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | JUN 07, 2003 |
| | | 4962128 | NOV 02, 2009 | U-12 | PED | FEB 06, 2005 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | M-11 | AUG 06, 2004 |
| | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| | | 5248699*PED | FEB 13, 2012 | U-152 | | |
| | | 4962128 | NOV 02, 2009 | U-12 | | |
| 019839 004 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | JUN 07, 2003 |
| | | 4962128 | NOV 02, 2009 | U-12 | PED | FEB 06, 2005 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | M-11 | AUG 06, 2004 |
| | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| | | 5248699*PED | FEB 13, 2012 | U-152 | | |
| | | 4962128 | NOV 02, 2009 | U-12 | | |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | AUG 06, 2004 |
| | | 4962128 | NOV 02, 2009 | U-12 | PED | JUN 07, 2003 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | | FEB 06, 2005 |
| | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| | | 5248699*PED | FEB 13, 2012 | U-152 | | |
| | | 4962128 | NOV 02, 2009 | U-12 | | |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 4962128*PED | MAY 02, 2010 | U-152 | M-11 | AUG 06, 2004 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | FEB 06, 2005 |
| 020478 001 | SEVOFLURANE;ULTANE | 6288127 | JAN 27, 2017 | U-286 | | |
| | | 6288127*PED | JUL 27, 2017 | U-286 | | |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 019766 001 | SIMVASTATIN;ZOCOR | 4444784 | DEC 23, 2005 | U-59 | I-277 | NOV 22, 2002 |
| | | RE36481 | JUL 10, 2017 | U-278 | I-278 | NOV 22, 2002 |
| | | RE36520 | JAN 26, 2009 | U-300 | I-273 | AUG 05, 2002 |
| | | 4444784*PED | JUN 23, 2006 | U-59 | PED | FEB 22, 2003 |
| | | RE36481*PED | JAN 10, 2018 | U-300 | PED | MAY 22, 2003 |
| 019766 002 | SIMVASTATIN;ZOCOR | 4444784 | DEC 23, 2005 | U-59 | I-277 | NOV 22, 2002 |
| | | RE36481 | JUL 10, 2017 | U-278 | I-278 | NOV 22, 2002 |
| | | RE36520 | JAN 26, 2009 | U-300 | I-273 | AUG 05, 2002 |
| | | 4444784*PED | JUN 23, 2006 | U-59 | PED | FEB 22, 2003 |
| | | RE36481*PED | JAN 10, 2018 | U-300 | PED | MAY 22, 2003 |
| | | RE36520*PED | NOV 26, 2009 | U-300 | PED | MAY 22, 2003 |

Kirkland & Ellis Library

5 0628 01116895 9

# APPROVED DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 22nd EDITION

THE PRODUCTS IN THIS LIST HAVE BEEN APPROVED UNDER
SECTION 505 OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION
CENTER FOR DRUG EVALUATION AND RESEARCH
OFFICE OF INFORMATION TECHNOLOGY
DIVISION OF DATA MANAGEMENT AND SERVICES

2002





08 0395

FILED

MAR - 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# PATENT AND EXCLUSIVITY INFORMATION ADDENDUM

This *Addendum* identifies drugs that qualify under the Drug Price Competition and Patent Term Restoration Act (1984 Amendments)for periods of exclusivity, during which abbreviated new drug applications (ANDAs) and applications described in Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (the Act) for those drug products may, in some instances, not be submitted or made effective as described below, and provides patent information concerning the listed drug products. Those drugs that have qualified for Orphan Drug Exclusivity pursuant to Section 527 of the Act and those drugs that have qualified for Pediatric Exclusivity pursuant to Section 505A are also included in this *Addendum*. This section is arranged in alphabetical order by active ingredient name. For those drug products with multiple active ingredients, only the first active ingredient (in alphabetical order) will appear. For an explanation of the codes used in the *Addendum*, see the *Patent and Exclusivity Terms* page. Exclusivity prevents the submission or effective approval of ANDAs or applications described in Section 505(b)(2) of the Act. It does not prevent the submission or approval of a second full NDA. Applications qualifying for periods of exclusivity are:

(1) A new drug application approved after September 24, 1984, for a drug product all active ingredients (including any ester or salt of the active ingredient) of which had never been approved in any other new drug application under Section 505 (b) (2) of the Act. No subsequent ANDA or application described in Section 505(b)(2) of the Act for the same drug may be *submitted* for a period of *five years* from the date of approval of the original application, except that such an application may be *submitted* after *four years* if it contains a certification that a patent claiming the drug is invalid or will not be infringed by the product for which approval is sought.

(2) A new drug application approved after September 24, 1984, for a drug product containing an active ingredient (including any ester or salt of that active ingredient) that has been approved in an earlier new drug application and that includes reports of new clinical investigations (other than bioavailability studies). Such investigations must have been conducted or sponsored by the applicant and must have been essential to approval of the application. If these requirements are met, the approval of a subsequent ANDA or an application described in Section 505(b)(2) of the Act may not be *made effective* for the same drug or use, if for a new indication, before the expiration of *three years* from the date of approval of the original application. If an applicant has exclusivity for a new use or indication, this does not preclude the approval of an ANDA application or 505(b)(2) application for the drug product with indications not covered by the exclusivity.

(3)A supplement to a new drug application for a drug containing a previously approved active ingredient including any ester or salt of the active ingredient) approved after September 24, 1984, that contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the supplement and conducted or sponsored by the applicant. The approval of a subsequent application for a change approved in the supplement may not be *made effective* for *three years* from the date of approval of the original supplement.

AD-1

The Act requires that patent information must now be filed with all newly submitted Section 505 drug applications, and that no NDA may be approved after September 24, 1984, without the submission of pertinent patent information to the Agency. The patent numbers and the expiration dates of appropriate patents claiming drug products that are the subject of approved applications will be published in this *Addendum* or in the monthly Cumulative Supplement to this publication. Patent information on unapproved applications or on patents beyond the scope of the Act (i.e., process or manufacturing patents) will not be published.

The patents that FDA regards as covered by the statutory provisions for submission of patent information are: patents that claim the active ingredient or ingredients; drug product patents, which include formulation/composition patents; and use patents for a particular approved indication or method of using the product. NDA holders or applicants amending or supplementing applications with formulation/composition patent information are asked to declare that the patent(s) is appropriate for publication and refers to an approved product or one for which approval is being sought. The Agency asks all applicants or application holders with use patents to provide information as to the approved indications or uses covered by such patents. This information will be included in the Cumulative Supplement to the List as it becomes available.

Since all parts of this publication are subject to changes, additions, or deletions, the *Addendum* must be used in conjunction with the most current Cumulative Supplement.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA

ADA64

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | JAN 23, 2016 | U-235 | PED | JUN 09, 2002 |
| | | 5914128 | DEC 22, 2017 | | | |
| | | 6051252 | JAN 23, 2016 | U-375 | | |
| | | 6063772 | SEP 22, 2017 | U-377 | | |
| | | 5767097*PED | JUL 23, 2016 | U-235 | | |
| | | 5914128**PED | JUN 22, 2018 | | | |
| | | 6051252**PED | JUN 22, 2018 | | | |
| | | 6063772*PED | MAR 22, 2018 | | | |
| | | 6172046*PED | JUL 22, 2018 | U-375 | | |
| | | 6335032 | DEC 22, 2017 | U-377 | | |
| | | 6337090 | DEC 22, 2017 | | | |
| 020903 002 | RIBAVIRIN;REBETOL | 6335032*PED | JUN 22, 2018 | U-235 | | |
| | | 6337090*PED | JUN 22, 2018 | U-235 | | |
| | | 5767097 | JAN 23, 2016 | | | |
| | | 5914128 | DEC 22, 2017 | | | |
| | | 5767097*PED | JUL 23, 2016 | U-375 | | |
| | | 5914128**PED | JUN 22, 2018 | | | |
| | | 6051252 | JAN 23, 2016 | | | |
| | | 6051252*PED | JUN 22, 2018 | | | |
| | | 6063772 | SEP 22, 2017 | | | |
| | | 6063772*PED | JAN 22, 2018 | U-377 | | |
| | | 6172046 | MAR 22, 2017 | | | |
| | | 6172046*PED | SEP 22, 2018 | U-377 | | |
| | | 6337090 | DEC 22, 2017 | | | |
| | | 6337090*PED | DEC 22, 2017 | U-400 | | |
| | | 6150337 | NOV 21, 2017 | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | | | | | |
| 021024 001 | RIFAPENTINE;PRIFTIN | | | | | |
| 020599 001 | RILUZOLE;RILUTEK | 4686214 | JUL 22, 2008 | U-100 | NCE | I-292 APR 14, 2003 |
| 020435 001 | RIMEXOLONE;VEXOL | 5583122 | DEC 10, 2013 | U-222 | ODE | I-292 APR 14, 2003 |
| 020835 001 | RISEDRONATE SODIUM;ACTONEL | 6064142 | MAR 10, 2017 | | ODE | I-290 APR 14, 2003 |
| | | 6165513 | JUN 10, 2018 | | | I-293 APR 14, 2003 |
| 020835 002 | RISEDRONATE SODIUM;ACTONEL | 5583122 | DEC 10, 2013 | U-222 | NCE | I-292 MAR 27, 2003 |
| | | 6096142 | MAR 12, 2017 | | N-292 | MAR 14, 2003 |
| | | 6165513 | JUN 10, 2018 | | I-291 | MAR 14, 2003 |
| | | | | | I-293 | APR 14, 2003 |
| | | | | | I-290 | APR 14, 2003 |
| 020272 001 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 002 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 003 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 004 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA

ADA65

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020272 005 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 007 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 008 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020588 001 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| | | 5453425 | JUL 11, 2014 | | | |
| | | 5635523 | JUN 03, 2014 | | | |
| 020659 001 | RITONAVIR;NORVIR | 5484801 | JAN 28, 2014 | U-190 | | |
| | | 5541206 | JUL 15, 2013 | U-140 | | |
| | | 5846987 | DEC 29, 2012 | U-190 | | |
| | | 6037157 | JUN 26, 2016 | | | |
| 020680 001 | RITONAVIR;NORVIR | 5817692 | OCT 07, 2014 | | | |
| | | 5846987 | DEC 29, 2012 | U-190 | | |
| | | 5635523 | JUN 03, 2014 | U-140 | | |
| | | 5541206 | JUL 15, 2013 | | | |
| | | 5846997 | SEP 13, 2012 | U-190 | | |
| | | 5948436 | SEP 29, 2013 | | | |
| 020945 001 | RITONAVIR;NORVIR | 5484497 | JUL 25, 2013 | U-347 | | |
| | | 6232307 | DEC 29, 2014 | U-348 | | |
| | | 5635523 | JUN 03, 2013 | U-347 | | |
| | | 5541206 | JUL 30, 2013 | | | |
| | | 5635523 | JUN 03, 2014 | | | |
| | | 6232307 | NOV 07, 2017 | | | |
| 020823 003 | RIVASTIGMINE TARTRATE;EXELON | 5602176 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| 020823 004 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 020823 005 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| 020823 006 | RIVASTIGMINE TARTRATE;EXELON | 5602176 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 021025 001 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| | | 4948807 | AUG 14, 2007 | U-322 | | |
| | | 5602176 | FEB 11, 2014 | U-322 | | |
| 020864 001 | RIZATRIPTAN BENZOATE;MAXALT | 5298520 | JAN 28, 2012 | U-240 | NCE | JUN 29, 2003 |
| 020864 002 | RIZATRIPTAN BENZOATE;MAXALT | 5298520 | FEB 11, 2014 | U-240 | NCE | JUN 29, 2003 |
| 020865 001 | RIZATRIPTAN BENZOATE;MAXALT-MLT | 5602162 | JAN 28, 2014 | U-240 | NCE | JUN 29, 2003 |
| | | 5298520 | FEB 11, 2014 | U-240 | | |
| | | 5298520 | JAN 28, 2012 | | | |
| | | 4578895 | OCT 01, 2011 | | | |
| 020865 002 | RIZATRIPTAN BENZOATE;MAXALT-MLT | 5298520 | JAN 28, 2012 | U-240 | NCE | JUN 29, 2003 |
| | | 5298520 | OCT 01, 2011 | U-240 | | |
| | | 4894369 | APR 13, 2008 | | | |
| 020214 002 | ROCURONIUM BROMIDE;ZEMURON | 4894369 | APR 13, 2008 | U-266 | NCE | MAY 20, 2004 |
| 020214 002 | ROCURONIUM BROMIDE;ZEMURON (P/F) | 5474994 | NOV 15, 2017 | U-266 | | |
| 021042 001 | ROFECOXIB;VIOXX | 6063811 | MAY 16, 2017 | | | |
| | | 6239173 | JUN 24, 2013 | | | |

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Teva Pharmaceuticals USA, Inc. 55555 | Michael O. Leavitt; Andrew C. Von Eschenbach, M.D.; U.S. Food and Drug Administration |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___88888___ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___11001___ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAN |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATT |
|---|---|
| Kirkland & Ellis LLP 655 Fifteenth Street, N.W. Washington, DC  20005 (202) 879-5000 | Ur Case: 1:08-cv-00395 Assigned To : Lamberth, Royce C. Assign. Date : 3/4/2008 Description: TRO/PI |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**◉ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

This action seeks emergency declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02; 5 U.S.C. §§ 701-06; and 21 U.S.C. §§ 335 et seq.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** N/A <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES ☐    NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 3.4.08    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.