**FILED**

MAR - 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

TEVA PHARMACEUTICALS USA, Inc.

      Plaintiff,

    v.

MICHAEL O. LEAVITT, in his official capacity
as Secretary of Health and Human Services;

ANDREW C. VON ESCHENBACH, M.D., in
his official capacity as Commissioner of Food and Drugs;

UNITED STATES FOOD AND DRUG
ADMINISTRATION,

      Defendants.

———————————————————————

Case: 1:08-cv-00395
Assigned To : Lamberth, Royce C.
Assign. Date : 3/4/2008
Description: TRO/PI

**PLAINTIFF'S MOTION FOR EXPEDITED PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") respectfully submits this emergency

application for expedited preliminary injunctive relief enjoining Defendants, Michael O. Leavitt,

in his official capacity as Secretary of Health and Human Services, Andrew C. von Eschenbach,

in his official capacity as Commissioner of Food and Drugs, and the United States Food and

Drug Administration (collectively, "FDA"), from taking any action to issue an approval of any

Abbreviated New Drug Application for risperidone tablet products other than Teva's pending the

expiration of Teva's 180-day generic exclusivity period for such products.

The grounds for the present application are fully set forth in the accompanying

Memorandum in Support of Teva's Motion for Preliminary Injunction and Declaration of David

Marshall.

*5*

Dated: March 4, 2008

Respectfully submitted,

Jay P. Lefkowitz, P.C. (D.C. Bar No. 449280)
Michael D. Shumsky (D.C. Bar No. 495078)
Gregory L. Skidmore (D.C. Bar No. 974024)
KIRKLAND & ELLIS LLP
655 Fifteenth Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000
(202) 879-5200 fax

*Counsel for Teva Pharmaceuticals USA, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| TEVA PHARMACEUTICALS USA, Inc. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MICHAEL O. LEAVITT, in his official capacity as Secretary of Health and Human Services; | )  Case No. _____ |
|  | ) |
| ANDREW C. VON ESCHENBACH, M.D., in his official capacity as Commissioner of Food and Drugs; | ) |
|  | ) |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, | ) |
|  | ) |
| Defendants. | ) |

_____

### TEVA PHARMACEUTICALS USA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Jay P. Lefkowitz, P.C. (D.C. Bar No. 449280)*
Michael D. Shumsky (D.C. Bar No. 495078)
Gregory L. Skidmore (D.C. Bar No. 974024)
KIRKLAND & ELLIS LLP
655 15th Street N.W., Suite 1200
Washington, D.C.  20005
(202) 879-5000
(202) 879-5200  fax

*Counsel of Record

*Counsel for Teva Pharmaceuticals USA, Inc.*

March 3, 2008

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................6

      A.     Statutory Framework ...........................................................................................6

      B.     Factual Background ..........................................................................................11

LEGAL STANDARD...........................................................................................................14

ARGUMENT .......................................................................................................................15

I.     Teva Is Likely To Succeed On The Merits.......................................................................15

II.    Teva Will Suffer Irreparable Harm Absent Preliminary Relief.........................................27

III.   The Balance Of Hardships And Public Interest Favor Granting Relief.............................29

CONCLUSION....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

aaiPharma v. Thompson,
    296 F.3d 227 (4th Cir. 2002) ......................................................................................... 10

Alphapharm Pty Ltd. v. Thompson,
    330 F. Supp. 2d 1 (D.D.C. 2004) ................................................................................... 10

American Bioscience Inc. v. Thompson,
    269 F.3d 1077 (Fed. Cir. 2001) ..................................................................................... 10

American Bioscience, Inc. v. Thompson,
    243 F.3d 579 (D.C. Cir. 2001) ...................................................................................... 19

Apotex Inc. v. FDA,
    414 F. Supp. 2d 61 (D.D.C. 2006) ................................................................................ 20

Apotex v. Thompson,
    347 F.3d 1335 (Fed. Cir. 2003) ........................................................................ 11, 19, 20

Apotex, Inc. v. FDA,
    No. Civ.A. 06-0627-JDB, 2006 WL 1030151 (D.D.C. Apr. 19, 2006) ........................... 28

Brendsel v. Office of Fed. Hous. Enter. Oversight,
    339 F. Supp. 2d 52 (D.D.C. 2004) ................................................................................ 28

CityFed Fin. Corp. v. OTS,
    58 F.3d 738 (D.C. Cir. 1995) ........................................................................................ 15

CSX Transp. v. Williams,
    406 F.3d 667 (D.C. Cir. 2005) ...................................................................................... 28

Davenport v. Int'l Bd. of Teamsters, AFL-CIO,
    166 F.3d 356 (D.C. Cir. 1999) ...................................................................................... 14

Eli Lilly and Co. v. Medtronic, Inc.,
    496 U.S. 661 (1990) ........................................................................................................ 8

Entergy Ark., Inc. v. Nebraska,
    210 F.3d 887 (8th Cir. 2000) ........................................................................................ 28

In re Barr Labs., Inc.,
    930 F.2d 72 (D.C. Cir. 1991) ........................................................................................ 30

Janssen Pharmaceutica N.V. v. Mylan Pharms Inc.,
    No. 03-6220, 2006 WL 3231459 (D.N.J. Nov. 8, 2006),
    aff'd 223 Fed. App'x 999 (Fed. Cir. 2007) ........................................ 15

Mova Pharm. Corp. v. Shalala,
    140 F.3d 1060 (D.C. Cir. 1998) ........................................ 9, 14, 28

Mova Pharm. Corp. v. Shalala,
    955 F. Supp. 128 (D.D.C. 1997) ........................................ 15

Purepac Pharm. Co. v. Thompson,
    354 F.3d 877 (D.C. Cir. 2004) ........................................ 9, 19

Ranbaxy Labs. Ltd. v. Leavitt,
    469 F.3d 120 (D.C. Cir. 2006) .............................. 2, 3, 5, 12, 14, 15, 17, 20, 29

Riggs v. Palmer,
    115 N.Y. 506 (1889) ........................................ 27

Sandoz, Inc. v. FDA,
    439 F. Supp. 2d 26 (D.D.C. 2006) ........................................ 9, 11, 28

Torpharm, Inc. v. Shalala,
    No. 97-1925, 1997 WL 33472411 (D.D.C. Sept. 15, 1997) ........................ 28

**Statutes and Legislative Materials**

21 U.S.C. § 355 ........................................ 6

21 U.S.C. § 355(b)(1) ........................................ 7, 9, 10, 18, 21

21 U.S.C. § 355(b)(2) ........................................ 7

21 U.S.C. § 355(c)(2) ........................................ 9, 10

21 U.S.C. § 355(j) ........................................ 7

21 U.S.C. § 355(j)(2)(A) ........................................ 7

21 U.S.C. § 355(j)(2)(A)(vii) ........................................ 8, 9, 12, 19, 20

21 U.S.C. § 355(j)(5)(B)(iv) ........................................ 9, 12, 15

21 U.S.C. § 355a ........................................ 11

35 U.S.C. § 271(e) ........................................ 8

35 U.S.C. § 271(e)(2) ........................................ 25

**Regulations**

21 C.F.R. § 314.50 ................................................................................................ 7

21 C.F.R. § 314.53 ........................................................................ 7, 9, 10, 11, 21

21 C.F.R. § 314.95 ............................................................................................. 26

Approved Drug Products with Therapeutic Equivalence Evaluations, ("Orange Book"),
    21st ed. 2001 ............................................................ 1, 9, 11, 12, 18, 22, 25

Orange Book,
    (22nd ed. 2002) ........................................................................................ 13

Orange Book,
    21st ed., Cumulative Supplement 08
    (Aug. 2001) ................................................................................................. 9

Orange Book,
    21st ed., Cumulative Supplement 09
    (Sept. 2001) .............................................................................................. 18

Orange Book,
    21st ed., Cumulative Supplement 10
    (Oct. 2001) ................................................................................................ 13

Orange Book,
    21st ed., Cumulative Supplement 11
    (Nov. 2001) ............................................................................................... 13

Orange Book,
    21st ed., Cumulative Supplement 12
    (Dec. 2001) ............................................................................................... 13

## INTRODUCTION

In August 2001, Teva filed the first Abbreviated New Drug Application ("ANDA") seeking FDA approval to market a generic version of Risperdal® (risperidone) tablets—an antipsychotic medication with more than $2.5 billion in annual sales. As it was required to do by the Hatch-Waxman Act and FDA's own regulations, Teva filed certifications regarding each of the two patents that at that time were listed as claiming Risperdal® in FDA's official patent register, *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book"). Specifically, Teva certified that it would not market its generic risperidone tablets until one of those patents expired (a "Paragraph III certification"), but that the other officially listed patent—U.S. Patent No. 5,158,952 ("the '952 patent")—was invalid and otherwise would not be infringed by Teva's generic risperidone tablets, and thus that Teva intended to bring its product to market and provide price relief to consumers before that patent expired (a "Paragraph IV certification"). As the first generic company that invested the resources necessary to identify a vulnerable patent; engineer a non-infringing pathway around that patent; and then challenge that officially listed patent by filing a Paragraph IV certification, Teva subjected itself to the risk of patent infringement litigation but simultaneously secured eligibility for a 180-day marketing exclusivity period during which no other generic risperidone product could be approved.

FDA's decision in this case now threatens to deprive Teva of its statutory exclusivity period by sanctioning the "delisting" of an officially listed Orange Book patent **after** Teva undertook the very investments and risks that 180-day marketing exclusivity is designed to reward. Two months after Teva submitted its ANDA, FDA asserted that it had "delisted," or removed, the '952 patent from the Orange Book **before** Teva submitted its ANDA. That was a curious assertion: On the date Teva submitted its Paragraph IV ANDA to FDA in August 2001,

the '952 patent not only appeared in the 2001 annual edition of the Orange Book, but FDA's then-current monthly Cumulative Supplement to the Orange Book indicated that there had been no subsequent changes to the patent listing information for Risperdal®, and thus, that the '952 patent continued to be officially listed as claiming Risperdal® tablets. Indeed, FDA's monthly Cumulative Supplements continued to reflect that there had been no changes to the official patent listing information for Risperdal® tablets for some four months *after* Teva submitted its Paragraph IV ANDA. FDA nonetheless informed Teva that it would not accept Teva's ANDA for filing unless and until Teva withdrew its Paragraph IV certification to the '952 patent— effectively divesting Teva of the exclusivity it had earned by identifying weaknesses in the Risperdal® patents, developing a non-infringing, generic form of Risperdal® tablets, and assuming the risk that it would be sued for patent infringement by submitting the first Paragraph IV certification for a Risperdal®-claiming patent.

As it did the last time FDA delisted a patent and thereby deprived Teva of its exclusivity, *see Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120 (D.C. Cir. 2006), Teva petitioned the Agency for relief. *See* Citizen Petition No. 2007P-0316 (filed Aug. 8, 2007) (attached as Ex. 1). And again, as it did the last time FDA delisted a patent and thereby deprived Teva of its exclusivity, the Agency now has refused to relist the '952 patent and restore Teva's exclusivity. *See* FDA Letter Decision (dated Feb. 26, 2008) (attached as Ex. 2). The problem here is that the D.C. Circuit's decision last time around *rejected* FDA's approach to patent delisting, and the Agency's refusal to follow that decision by relisting the '952 patent and restoring Teva's exclusivity is no less inconsistent with the plain language and structure of the Hatch-Waxman Act than its refusal to relist the patents at issue in *Ranbaxy*. As the D.C. Circuit explained in *Ranbaxy*, FDA simply may not effectuate the delisting of a patent where doing so would have the effect of depriving a

generic manufacturer of its marketing exclusivity, because effectuating the delisting of a patent after a manufacturer has made the investments necessary to challenge that patent and assumed the risk of infringement litigation fundamentally undermines the incentive scheme Congress designed to encourage Paragraph IV challenges and speed the advent of generic competition.

Make no mistake: that is exactly what FDA's decision does in this case.  When Teva decided to develop generic risperidone tablets, it reviewed the annual Orange Book and the then-current monthly Cumulative Supplement to the Orange Book; identified weaknesses in an officially listed patent; invested in the development of a non-infringing alternative; and undertook the risk of costly and protracted patent infringement litigation by submitting a Paragraph IV challenge to the '952 patent—only to have the Agency turn around and strip Teva of its statutory reward *after* Teva did precisely what Congress sought to encourage.  As both this Court and the D.C. Circuit recognized in *Ranbaxy*, FDA's actions violate the Hatch-Waxman Act.

It is no answer that FDA purports to have delisted the '952 patent before Teva submitted its Paragraph IV challenge to that patent.  That assertion is belied both by the fact that the '952 patent remained physically "listed" in the 2001 Orange Book at the time Teva submitted its Paragraph IV certification, and by the fact that FDA's then-current monthly Cumulative Supplement indicated that there had been no changes to the Risperdal® patent-listing information at the time Teva submitted its ANDA.  Indeed, FDA's monthly Cumulative Supplements to the Orange Book continued to reflect that there had been no changes to the Risperdal® patent-listing information  for some four months after Teva submitted its Paragraph IV certification.

FDA now tries to get around those key facts—which it does not dispute—by asserting that FDA also maintained an electronic version of the Orange Book on its website, and alleging that Teva would have discovered that the '952 patent had been delisted if Teva had searched that database before submitting its Paragraph IV certification.  That argument fares no better.  Setting aside that FDA has not produced any actual evidence of what appeared on its website in August 2001—but instead must rely on a putative reconstruction of the website and, indeed, cannot even identify the date on which it allegedly updated the Risperdal® patent-listing information on that website—the Agency's claims about the website's alleged content are irrelevant as a matter of law.  FDA's own regulations at that time directed applicants to consult the Agency's printed monthly Cumulative Supplement to the Orange Book—*not* the electronic Orange Book or any other part of the Agency's website—in order to obtain the latest patent listing information for approved drugs like Risperdal®, and so did the 2001 Orange Book itself, as FDA grudgingly concedes in its response to Teva's Petition.

And while FDA makes much of the fact that the 2001 Orange Book and monthly Cumulative Supplements to the 2001 Orange Book referenced the availability of an "Electronic Orange Book Query" feature on FDA's website, neither the annual Orange Book nor the monthly Cumulative Supplements so much as hint that that "Query" feature might have contained any information apart from what appeared in the Agency's monthly Cumulative Supplements.  To the contrary, the key passage on which FDA's pins its response to the Petition stated only that the electronic Orange Book Query data was "updated *concurrently* with the publication of the annual edition or monthly cumulative supplements," FDA Letter Decision at 6 (quotation omitted; emphasis added)—not that the electronic Orange Book Query data was updated *between* printings of the monthly Cumulative Supplement.  As a result, the Cumulative

Supplement's reference to the electronic Orange Book Query feature merely informed readers that that feature would provide *the same* data that was published in the most current monthly Cumulative Supplement to the Orange Book.

Teva, in short, was legally entitled to rely on the 2001 Orange Book listing and monthly Cumulative Supplement to the Orange Book in effect at the time it submitted its Paragraph IV certification to the '952 patent. FDA's attempt to deprive Teva of its statutory reward now thus is inconsistent with the plain text and structure of Hatch-Waxman (as *Ranbaxy* makes clear), and cannot be reconciled with FDA's own regulations or the Orange Book itself. Injunctive relief thus is appropriate to prevent FDA from unlawfully and unfairly depriving Teva of its 180-day exclusivity period.

Indeed, such relief is especially appropriate here because Teva would suffer truly irreparable harms if this Court does not promptly act to protect Teva's rights. On June 29, 2008, Janssen's pediatric exclusivity for Risperdal® tablets will expire and FDA will be free to begin approving ANDAs for generic risperidone tablets. If FDA at that point approves ANDAs other than Teva's—and thereby divests Teva of its generic marketing exclusivity—there would be no way for Teva to recover losses attributable to sales that it could have made during its statutory head-start on the competition. Pharmaceutical companies simply cannot "make up" for sales lost to competitors during a would-be exclusivity period; prescriptions are filled only once and patients take their medicine daily, so Teva could not turn back the clock on July 1 and replace medication provided by another company on June 29 and consumed by patients on June 30. Far more important, marketing exclusivity typically permits the first generic company to enter into long-term sales contracts and secure additional market share over the long-run. But once other companies are allowed to enter the market, that officially sanctioned head-start permanently

disappears because all companies are free to enter into such arrangements. These harms would be especially pronounced in this case, because FDA's immunity from monetary damages precludes Teva from recovering even a penny of the significant sales revenue it stands to lose as a result of the Agency's official actions.

Finally, it bears note that time is of the essence. It takes months to plan and prepare an exclusive generic launch for a product with more than $2.5 billion in current annual sales. Indeed, in this case, planning for such a launch would require immediate worldwide shifts in Teva's production, testing, packaging, and shipping schedules. Every day that goes by thus makes it less likely that Teva will be able to launch generic risperidone tablets on June 29 and reap the full benefits of its exclusivity. As a result, the public interest strongly favors an immediate resolution of this case which faithfully reflects Congress's unmistakable intent to speed the advent of generic competition.

## BACKGROUND

### A. Statutory Framework

The Food, Drug, and Cosmetic Act (the "FDCA" or "statute"), as modified by the Drug Price Competition and Patent Restoration Act of 1984 (the "Hatch-Waxman Act"), establishes the procedure for obtaining approval to market pharmaceutical products in the United States. *See* 21 U.S.C. § 355 (2002).[1] The FDCA requires the manufacturer of a pioneer or brand-name (*i.e.*, non-generic) drug to file a complete New Drug Application ("NDA") that contains, among

---

[1] The FDCA has subsequently been amended by the Medicare Modernization Act of 2003 ("MMA") and the Food and Drug Administration Amendments Act of 2007 ("FDAAA"). Because Teva filed its ANDA prior to the passage of either of these amendments, however, the substantive aspects of this case relating to the listing and delisting of patents in the Orange Book and Teva's eligibility for 180-day marketing exclusivity are governed by the Hatch-Waxman version of the FDCA. All references to the FDCA and relevant FDA regulations in this brief refer to the pre-2003 versions of the laws unless otherwise noted.

6

other things, extensive scientific and clinical data demonstrating the safety and effectiveness of the proposed new drug. *See id.* § 355(b)(1). The NDA must also include information about each patent the applicant asserts as claiming that drug. *See id.* § 355(b)(2); *see also* 21 C.F.R. § 314.50(h); *id.* § 314.53(b).

Prior to the passage of the Hatch-Waxman Act, generic manufacturers generally were required to complete a full NDA in order to obtain approval for a proposed generic drug product—even though generic drugs contain the same active ingredients, and provide the same therapeutic value, as their brand-name counterparts. As a result, generic market entry often was cost-prohibitive, and patients lacked widespread access to generic medicines that typically are sold at lower, more competitive prices to consumers, private insurers, and public insurers. In 1984, Congress enacted Hatch-Waxman to remove those barriers to entry, increase the availability of generic drugs, and thereby reduce the average cost of pharmaceuticals. *See* Drug Price Competition and Patent Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984).

To accomplish those goals, Hatch-Waxman permits generic companies to obtain marketing approval so long as they can show that a proposed generic drug product is bioequivalent to a "listed drug" that FDA has already deemed safe and effective. Generic applicants do so by submitting an Abbreviated New Drug Application ("ANDA") that, among other things, establishes the proposed generic product's bioequivalence to the listed (or previously approved) drug. *See* 21 U.S.C. § 355(j). Provided that bioequivalence is fully established in the ANDA, the generic applicant need not repeat the safety and efficacy studies that were conducted on the listed drug. *See id.* § 355(j)(2)(A).

In an effort to balance the interest in speedy generic market entry against the intellectual property rights of brand-name manufacturers, Congress required each ANDA to include a

7

certification regarding every patent that the brand manufacturer has identified as claiming a previously approved drug. *See id.* § 355(j)(2)(A)(vii). Four types of certifications are available:

> (I) that patent information has not been filed with respect to the previously approved drug [a "Paragraph I certification"],
>
> (II) that the patent identified as claiming the previously approved drug has expired [a "Paragraph II certification"],
>
> (III) that the generic drug will not be marketed until the date on which the patent identified as claiming the previously approved drug will expire [a "Paragraph III certification"], or
>
> (IV) that the patent identified as claiming the previously approved drug is invalid or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted [a "Paragraph IV certification"]

*See id.*

The most important of these is the Paragraph IV certification. Such certifications signal the generic applicant's intent to market its product prior to the expiration of a competition-blocking patent on the brand-name drug, introducing market competition at an earlier date and lowering prices for consumers. But filing a Paragraph IV certification carries significant risks for the applicant. Paragraph IV applicants must invest significant resources in order to identify weaknesses in a competition-blocking patent, develop a non-infringing alternative to the branded product, and/or craft a legal challenge to the validity or applicability of the listed patent. And if those efforts prove successful and the applicant follows through on its efforts to break the patent logjam, the very act of submitting a Paragraph IV challenge to FDA constitutes a "highly artificial" act of patent infringement that can give rise to a lawsuit by the brand manufacturer and require the generic applicant to spend years defending itself in costly patent litigation. *See* 35 U.S.C. § 271(e); *see also Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990).

8

To encourage manufacturers to undertake those investments and accept those risks, Hatch-Waxman offers a significant reward to the first Paragraph IV challenger: a 180-day period during which it is entitled to market its generic product without competition from other generic applicants. *See, e.g.*, *Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 879 (D.C. Cir. 2004); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1064 (D.C. Cir. 1998); *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 29 (D.D.C. 2006); *see also* 21 U.S.C. § 355(j)(5)(B)(iv) ("180-day exclusivity period"). This 180-day exclusivity period runs from either the date on which a court decides that the challenged patent is invalid or not infringed (if litigation results from the Paragraph IV certification), or the date on which the first Paragraph IV applicant commercially markets its generic drug product. *Id.* § 355(j)(5)(B)(iv).

To make this system work, Hatch-Waxman requires FDA to publish an official list containing every patent that a brand manufacturer has identified as claiming any previously approved drug product. *See* 21 U.S.C. § 355(b)(1), (c)(2), (j)(2)(A)(vii); *see also* 21 C.F.R. § 314.53(b). FDA fulfills that mandate by publishing the Orange Book, which (among other things) lists every approved drug product and its indications; every patent identified as claiming each drug product; the expiration date of each such patent; and any additional exclusivity period to which the brand manufacturer is entitled. *See, e.g.*, Orange Book (21st ed. 2001) ("2001 Orange Book") (excerpt attached as Ex. 3). At the time Teva was preparing its risperidone ANDA, FDA printed an annual edition of the Orange Book at the beginning of every calendar year, and then supplemented the annual edition with official, printed monthly Cumulative Supplements that were designed to provide notice of any changes in the official patent information for approved drug products. *See, e.g.*, Orange Book 21st ed. Cumulative Supplement 8 (Aug. 2001), at iii (the "August 2001 Supplement") (attached as Ex. 4).

These Cumulative Supplements were legally binding. FDA's own regulations required the Agency to update the Orange Book's patent-listing information by publishing the monthly Cumulative Supplements, 21 C.F.R. § 314.53(e) ("Patent information submitted by the last working day of a month *will be published in that month's supplement to the list*.") (emphasis added), and the 2001 Orange Book and monthly Cumulative Supplements themselves each directed ANDA applicants to consult "the most current Cumulative Supplement" to ascertain up-to-date patent information before submitting certifications "[b]ecause all parts of the [annual Orange Book] are subject to changes, additions, or deletions." *See, e.g.*, August 2001 Supplement at iii. As a result, each "Cumulative Supplement provides [the] updated patent and exclusivity data ... required by the [Hatch-Waxman Act]." *Id*. at iii.

While FDA printed the annual Orange Book and monthly Cumulative Supplements at the time Teva submitted its risperidone ANDA, the Agency never played more than a "ministerial" role in maintaining the patent listings included in those official publications. Because FDA has no expertise in patent law, it does not evaluate the validity of patents before listing them in the Orange Book. *See, e.g.*, *aaiPharma v. Thompson*, 296 F.3d 227, 238-40 (4th Cir. 2002); *American Bioscience Inc. v. Thompson*, 269 F.3d 1077, 1084-85 (Fed. Cir. 2001); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp. 2d 1, 8-9 (D.D.C. 2004). Rather, once a brand manufacturer submits patent information on a reference listed product, the statute always has provided that FDA "*shall* publish it." 21 U.S.C. § 355(c)(2) (emphasis added); *see also id.* § 355(b)(1). As a result, ANDA applicants routinely relied on the printed Orange Book and printed Cumulative Supplements at the time Teva submitted its risperidone ANDA in order to obtain the most current information about which patents have been identified as claiming a particular listed

10

drug—and, thus, which patents they must certify to in connection with the submission of an ANDA.

Indeed, generic applicants *must* follow the official Orange Book listing, as reflected in the latest Cumulative Supplement, regardless of whether they believe the information in the Orange Book or Cumulative Supplement to be accurate.  FDA's own regulations state that "an abbreviated new drug application under section 505(j) of the act submitted for a drug that is claimed by a patent for which information has been submitted *must*, despite any disagreement as to the correctness of the patent information, contain an appropriate certification *for each listed patent*."   21 CFR § 314.53(f) (emphasis added).   And courts, including this Court, have continually reaffirmed that ANDA applicants thus are required to submit a certification for *each* patent listed in the Orange Book as claiming the branded product, regardless of the applicant's belief that the patent information is not (or may not be) correct.  *See, e.g.*, *Sandoz v. FDA*, 439 F. Supp. 2d 26, 31 (D.D.C. 2006); *Apotex v. Thompson*, 347 F.3d 1335, 1349-50 (Fed. Cir. 2003) (same).

### B.  Factual Background

Janssen Pharmaceutica ("Janssen") holds the approved NDA for risperidone tablets, No. 20-272, an atypical antipsychotic medication that it commercially markets under the brand name Risperdal®.  Janssen submitted two patents to FDA as claiming Risperdal® tablets: U.S. Patent No. 4,804,663 ("the '663 patent") and the '952 patent, and FDA therefore listed both of those patents in the Orange Book.  *See* 2001 Orange Book at ADA 57.  The '663 patent expired on December 29, 2007, but Janssen received an additional six months of exclusivity beyond the patent's expiration as a reward for studying Risperdal®'s effectiveness in children and prevailing in patent litigation regarding the validity of that patent.  *See* 21 U.S.C. § 355a.  That "pediatric exclusivity" period runs to June 29, 2007.  The '952 patent is set to expire on October 27, 2009.

Throughout 2001, Teva invested significant resources to develop both a generic risperidone tablet product that would not infringe the '952 patent and a strong legal challenge to the '952 patent's validity and applicability. On August 28, 2001, after successfully engineering a non-infringing product and developing a legal challenge to the '952 patent, Teva submitted its risperidone ANDA to FDA and sought approval to market generic risperidone tablets in 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg strengths. On the date Teva submitted its ANDA, the 2001 Orange Book continued to list both the '663 and '952 patents as claiming Risperdal®, *see* 2001 Orange Book at ADA 57, and FDA's then-current official Cumulative Supplement reflected no change to the official patent information listing for Risperdal® tablets. *See* August 2001 Supplement at A-14. Thus, in accordance with 21 U.S.C. § 355(j)(2)(A)(vii) and FDA's own regulations, Teva submitted certifications regarding both of those patents with its ANDA—a Paragraph III certification to the '663 patent, and a Paragraph IV certification to the '952 patent. *See* FDA Letter Decision at 5. As the first Paragraph IV challenger to the '952 patent, Teva became eligible for a 180-day marketing exclusivity period for generic risperidone tablets that would vest either if Teva was not sued for patent infringement at all, or if the '952 patent was later held to be invalid or not infringed by Teva's generic risperidone tablets in litigation. *See* 21 U.S.C. § 355(j)(5)(B)(iv); *see also Ranbaxy*, 469 F.3d at 125.

On October 12, 2001, however, FDA asserted that it had removed, or "delisted," the '952 patent from the Orange Book prior to the submission of Teva's ANDA. *See* FDA Letter Decision at 5. FDA made that assertion despite the fact that the 2001 Orange Book continued to list the '952 patent as claiming Risperdal® tablets, *see* 2001 Orange Book at ADA 57, and notwithstanding the fact that the monthly Cumulative Supplement in effect at the time Teva filed its ANDA reflected no change to the official patent listing information for Risperdal® tablets.

12

*See* August 2001 Supplement at A-14.  Indeed, at the time FDA notified Teva of the '952 patent's putative delisting in October, the then-current Cumulative Supplement continued to reflect no change to the official patent listing information for Risperdal® tablets, *see* Orange Book 21st ed. Cumulative Supplement 10 (Oct. 2001), at A-19 (the "October 2001 Supplement") (excerpt attached as Ex. 5), and no change appeared in the November or December Cumulative Supplements.  *See* Orange Book 21st ed. Cumulative Supplement 11 (Nov. 2001), at A-21 (the "November 2001 Supplement") (excerpt attached as Ex. 6); Orange Book 21st ed. Cumulative Supplement 12 (Dec. 2001), at A-24 (the "December 2001 Supplement") (excerpt attached as Ex. 7).  FDA's official Orange Book did not reflect the delisting of the '952 patent until its 2002 annual edition was released in January of that year—more than four months after Teva submitted its ANDA.  *See* Orange Book (22nd ed. 2002), at ADA 65 ("2002 Orange Book") (excerpt attached as Ex. 8).

FDA nonetheless informed Teva that it would not accept Teva's ANDA for filing unless and until Teva withdrew its Paragraph IV certification in order to reflect FDA's assertion that the '952 patent had been delisted.  *See* FDA Letter Decision at 5 (explaining that FDA made its determination that the '952 patent had been delisted "[d]uring a filing review of the ANDA to determine whether it was sufficiently complete to permit a substantive review," and refused to send an "acknowledgement letter to Teva indicating that Teva's ANDA for risperidone tablets had been received for substantive review" until Teva withdrew its Paragraph IV certification).  Thus, despite the fact that the 2001 Orange Book continued to list the '952 patent as claiming Risperdal® tablets; despite the fact that the then-current monthly Cumulative Supplement to the Orange Book reflected no change to the official patent-listing information for Risperdal® tablets; and despite Teva's significant investments in the development of a non-infringing pathway and

legal challenge to the '952 patent, Teva was given no choice but to follow the Agency's directive and amend its ANDA in order to ensure that FDA would commence its regulatory review of Teva's file and put Teva's proposed generic risperidone tablets on the path to approval. *See id.*

After Teva successfully challenged FDA's delisting practices in the *Ranbaxy* case, Teva (like several other manufacturers) undertook a comprehensive review of its portfolio of pending ANDAs to determine whether FDA's unlawful delisting practices had deprived Teva of its entitlement to 180-day generic exclusivity for any other products. On August 3, 2007, Teva petitioned FDA to relist the '952 patent in the Orange Book for Risperdal® tablets; confirm that Teva's right to 180-day exclusivity for risperidone tablets has not been affected by FDA's unlawful delisting of the '952 patent; and refrain from granting final approval to any other ANDAs for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg risperidone tablets until Teva's 180-day exclusivity period expires. *See generally* Teva Citizen Petition.

FDA denied the Citizen Petition on February 26, 2008, and this suit follows.

## LEGAL STANDARD

The legal standard governing motions for temporary injunctive relief is well-settled. To secure relief, the plaintiff must show that (1) there is a substantial likelihood of success on the merits; (2) the plaintiff would suffer irreparable injury if the requested injunction is denied; (3) an injunction will not substantially injure the opposing party or other third parties; and (4) the public interest will be furthered by the issuance of the injunction. *See Mova Pharm.*, 140 F.3d at 1066. "These factors interrelate on a sliding scale and must be balanced against each other," *Davenport v. Int'l Bd. of Teamsters*, *AFL-CIO*, 166 F.3d 356, 360-61 (D.C. Cir. 1999), so that "[a]n injunction may be justified … where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*

14

*v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also Mova Pharm. Corp. v. Shalala*, 955 F. Supp. 128, 131 (D.D.C. 1997).  Teva readily meets all four prongs of this standard.

## ARGUMENT

### I.    Teva Is Likely To Succeed On The Merits.

The plain language of the FDCA entitles Teva to a 180-day period of marketing exclusivity for generic risperidone tablets.  Teva was the first generic manufacturer to file an ANDA for generic risperidone tablets that contained a Paragraph IV certification to the '952 patent.  Under 21 U.S.C. § 355(j)(5)(B)(iv), the earliest any subsequently-filed Paragraph IV ANDA can be approved is "one hundred and eighty days after" Teva first commercially markets its generic risperidone tablets or the date of a court decision holding the '952 patent to be invalid or not infringed.  *Id*.  To date, neither of these events has occurred—there has been no litigation concerning the '952 patent, and Teva will not begin to market its generic risperidone tablets until Janssen's pediatric exclusivity expires on June 29, 2008.  At that time, and upon launching its generic risperidone tablets into the market, Teva will be entitled to 180 days of sole marketing exclusivity under the plain terms of § 355(j)(5)(B)(iv); no other manufacturer that has submitted an ANDA for generic risperidone tablets may be approved until the conclusion of Teva's exclusivity period.[2]

FDA's refusal to relist the '952 patent and honor Teva's right to 180-day exclusivity as the first Paragraph IV filer fundamentally undermines the Hatch-Waxman regime and flatly contradicts the D.C. Circuit's recent decision in *Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120

---

[2]    Because the '663 patent has been held to be valid and enforceable, *see Janssen Pharmaceutica N.V. v. Mylan Pharms Inc.*, No. 03-6220, 2006 WL 3231459 (D.N.J. Nov. 8, 2006), *aff'd* 223 Fed. App'x 999 (Fed. Cir. 2007) (per curiam), no manufacturer is entitled to exclusivity based on its first-to-file status with respect to that patent. Teva alone is eligible for marketing exclusivity.

(D.C. Cir. 2006). In that case, NDA-holder Merck initially listed three patents in the Orange Book as claiming its blockbuster drug Zocor® (simvastatin). *Id*. at 123. Two generic manufacturers, Ranbaxy and IVAX (which since has been acquired by Teva, and for ease of reference will be referred to as Teva), filed ANDAs seeking approval to market generic simvastatin products in different dosages. Both ANDAs contained Paragraph III certifications to one of the simvastatin patents and Paragraph IV certifications to each of the other two simvastatin patents listed in the official Orange Book at the time the applicants submitted their ANDAs to the Agency. *Id*. Because the Teva and Ranbaxy ANDAs concerned different dosages of simvastatin, Teva and Ranbaxy each were entitled to 180-day exclusivity for their respective simvastatin dosages as the first generic companies to file Paragraph IV challenges to patents officially listed as claiming simvastatin.

Before Teva or Ranbaxy could take advantage of their respective exclusivities, however, Merck asked FDA to delist the two Paragraph IV patents from the Orange Book. FDA claimed that it was exercising its ministerial role in maintaining the Orange Book, acceded to Merck's request, and required Teva and Ranbaxy to delete the Paragraph IV certifications from their ANDAs. *Id*. Left undisturbed, that action would have divested Teva and Ranbaxy of their respective exclusivities for generic simvastatin: exclusivity, after all, depends on having a Paragraph IV certification, so once FDA forces an applicant to withdraw its exclusivity-qualifying Paragraph IV certification, the jig is up. *Id*. Both companies challenged FDA's delisting by filing citizen petitions demanding that FDA restore the delisted patents to the Orange Book and enforce the companies' right to exclusivity against subsequent ANDA filers. *Id*. As here, however, FDA denied the companies' petitions, reasoning that delisting was appropriate

because neither company had been sued by Merck for patent infringement and thus allegedly had not incurred the risks Congress sought to encourage when it designed the exclusivity reward.  *Id.*

Teva and Ranbaxy filed suit against FDA in this Court.  This Court soundly rejected FDA's arguments, *Ranbaxy Labs., Ltd. v. Leavitt*, 459 F. Supp. 2d 1 (D.D.C. 2006), and the D.C. Circuit affirmed.  *Ranbaxy*, 469 F.3d at 126.  As that court explained, FDA's delisting practices violated both the plain text and structure of the Hatch-Waxman Act by fundamentally "chang[ing] the incentive structure adopted by the Congress."  *Id*. at 125.  That was so, the D.C. Circuit reasoned, because allowing FDA to delist a challenged patent ***after*** an ANDA applicant has made the investments necessary to prepare its Paragraph IV challenge and incurred the risk of infringement litigation would "reduce the certainty of receiving a period of marketing exclusivity" at the time applicants must choose whether or not to make those investments— "diminish[ing] the incentive for a manufacturer of generic drugs to challenge a patent listed in the Orange Book" and making it less likely that generic companies will challenge competition-blocking patents in the future.  *Id*.  Because FDA's actions thus directly undermined the statute's key incentive, the D.C. Circuit invalidated FDA's delisting practices and required FDA both to relist the improperly removed simvastatin patents and honor the exclusivity periods earned by first-filers Teva and Ranbaxy.  *Id.*

This case falls squarely within *Ranbaxy*'s holding.  Put simply, FDA's attempt to strip Teva's 180-day exclusivity by effectuating the delisting of the '952 patent ***after*** Teva invested in the development of non-infringing generic risperidone tablets and assumed the risk of patent infringement litigation by filing its Paragraph IV challenge to the '952 patent fundamentally altered Hatch-Waxman's incentive scheme in the same way FDA's actions did in *Ranbaxy*: by undermining the statutory incentive to challenge competition-blocking drug patents in the future.

17

Nonetheless, FDA now seeks to distinguish *Ranbaxy* from this case by claiming that the Agency actually delisted the '952 patent from the Orange Book at some point **before** Teva filed its ANDA—though, to be sure, it can't quite say when.  FDA Letter Decision at 8.  The problems with that assertion are obvious.  FDA does not, and cannot possibly, deny that the '952 patent remained listed in FDA's 2001 Orange Book at the time Teva submitted its Paragraph IV certification on August 28, 2001.  *See* 2001 Orange Book at ADA 57.  FDA does not, and cannot possibly, deny that the August 2001 Cumulative Supplement to the Orange Book failed to reflect that there had been any change in the official patent listing information for Risperdal® tablets at any point during the eight months after the 2001 Orange Book first was released.  *See* August 2001 Supplement at A-14.  And FDA does not, and cannot possibly, deny that each of the four Cumulative Supplements that followed Teva's Paragraph IV certification likewise failed to reflect any change to the official patent listing information for Risperdal® tablets.  *See* Orange Book 21st ed. Cumulative Supplement 9 (Sept. 2001), at A-19 (excerpt attached as Ex. 9); October 2001 Supplement at A-19; November 2001 Supplement at A-21; December 2001 Supplement at A-24.

Teva thus was required to include a certification to '952 patent its ANDA.  Indeed, the plain language of the statute, FDA's own regulations, the 2001 Orange Book, and the Cumulative Supplements hardly could be more clear on this point.  By statute, every NDA applicant is required to "file with the [NDA] the patent number and the expiration date of any patent **which claims the drug** for which the applicant submitted the application or which claims a method of using such drug."  21 U.S.C. § 355(b)(1) (emphasis added).  Once the NDA is approved, FDA is obligated to "***publish*** information submitted under [that requirement]."  *Id.* (emphasis added).  And every generic ANDA applicant must thereafter submit "a certification …

18

with respect to each patent **which claims the listed drug**."    21 U.S.C. § 355(j)(2)(A)(vii) (emphasis added).  Together, then, these provisions unambiguously require ANDA applicants to make a certification with respect to any patent that FDA has "publish[ed]" pursuant to its statutory reporting duty.

In the roughly 15 years between Hatch-Waxman's enactment and the submission of Teva's risperidone ANDA, there was never a shred of doubt that FDA formally discharged that duty by printing the annual Orange Book and its issuing its printed Cumulative Supplements to the Orange Book.  *See, e.g.*, *Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 880 (D.C. Cir. 2004) ("In order to determine what patents cover existing brand-name drugs and hence whether any paragraph IV certifications … are needed, applicants look in the 'Orange Book,' an FDA publication that includes all patent information that companies have submitted to the agency."); *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1338 (Fed. Cir. 2003) ("The statute directs the FDA to list the disclosed patents, which the FDA does in a publication entitled 'Approved Drug Products With Therapeutic Equivalence Evaluations,' more commonly known as the 'Orange Book.'"); *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 802 (D.C. Cir. 2001) ("The FDA maintains a record of [patent] information in its publication entitled *Approved Drug Products with Therapeutic Equivalence*, commonly known as the Orange Book."); *American Bioscience, Inc. v. Thompson*, 243 F.3d 579, 580 (D.C. Cir. 2001) ("The FDA keeps all [patent] information in a publication officially titled *Approved Drug Products with Therapeutic Equivalence*, commonly called the Orange Book.").

It thus should come as no surprise that, time and again, the courts made clear that ANDA applicants must submit a certification for every drug-related patent that appeared in the Orange Book (or whose listing was reflected in the Agency's current official Cumulative Supplement to

19

the Orange Book) at the time they filed an ANDA.  *See, e.g.*, *Ranbaxy*, 469 F.3d at 122 ("Each ANDA … must contain: 'a certification ... with respect to each patent which claims [a drug or a method of using a drug listed in the Orange Book].'") (quoting 21 U.S.C. § 355(j)(2)(A)(vii); alteration in original); *Apotex*, 347 F.3d at 1350 ("The statutory language shows a clear congressional intention to require certification whenever an ANDA applicant seeks approval of a drug that is claimed by a patent that is listed in the Orange Book."); *Andrx*, 256 F.3d at 802 ("For each patent … listed in the Orange Book, an ANDA applicant must certify whether the proposed generic drug would infringe that patent and, if not, why not."); *see also Apotex Inc. v. FDA*, 414 F. Supp. 2d 61, 64 (D.D.C. 2006) ("An ANDA-applicant seeking to market its drug before the NDA-drug's patent has expired must make a paragraph IV certification with respect to the 'listed patents' (*i.e.*, the patents that are listed in the Orange Book when the ANDA is filed), as well as those that are placed in the Orange Book subsequently (*i.e.*, 'later-listed patents').").  That, of course, is precisely what Teva did when it submitted its Paragraph IV certification to the '952 patent—and FDA's claim that Teva's certification to that patent was "neither necessary nor permitted," Letter Decision at 7, is both unprecedented and unsupportable.

FDA nonetheless seeks to evade all of this by asserting that, in addition to its annual Orange Book and monthly Cumulative Supplements to the Orange Book, the Agency also maintained an "electronic Orange Book" at the time Teva submitted its risperidone ANDA, Letter Decision at 6, and alleging that "[a]n applicant searching the electronic Orange Book shortly after June 29, 2001, and no later than July 20, 2001, would have found that only the '663 patent was listed for Risperdal tablets."  *Id*. at 7.  Whether or not that is true, FDA's speculative assertions about what may have appeared in the electronic Orange Book in June (or maybe

20

July?) 2001 are legally immaterial to the question of whether Teva was legally required to submit, and thus properly did submit, a Paragraph IV certification to the '952 patent.

As a matter of law—set forth in FDA's own regulations, and unambiguously confirmed by the 2001 Orange Book and FDA's monthly Cumulative Supplements to the 2001 Orange Book—the only relevant sources of patent-listing information at the time Teva submitted its ANDA for generic risperidone tablets were the 2001 Orange Book and FDA's monthly Cumulative Supplements to the 2001 Orange Book. Pursuant to the statutory mandate that FDA "publish" a list of all patents that claim an approved drug product, 21 U.S.C. § 355(b)(1), the Agency always has provided for the "public disclosure of patent information" by obligating itself to "publish … the patent number and expiration date of each patent that is required to be, and is, submitted to FDA by an [NDA] applicant." 21 C.F.R. § 314.53(e). FDA's implementing regulations in effect at the time of Teva's certification to the '952 patent informed applicants that in the event of any change to the official patent information, all new "[p]atent information submitted by the last working day of a month *will be published in that month's supplement to the list*." *Id.* (emphasis added). And at no point in 2001 did those regulations refer to the existence, maintenance, or availability of an electronic Orange Book—much less suggest that it would provide any data other than what was published in the monthly Cumulative Supplements.

To the extent there is any doubt that the 2001 Orange Book and monthly Cumulative Supplements to Orange Book represented the Agency's official efforts to fulfill its statutory and regulatory disclosure obligations at the time Teva submitted its ANDA, those publications themselves conclusively resolve the matter. For its part, the introduction to the 2001 Orange Book's Patent and Exclusivity Information Addendum explained that

> [Hatch-Waxman] requires that patent information must now be filed with all newly submitted section 505 drug applications, and that no NDA may be

21

approved after September 24, 1984, without the submission of pertinent patent information to the Agency.  ***The patent numbers and the expiration dates of appropriate patents claiming drug products that are the subject of approved applications will be published in this* Addendum *or in the monthly Cumulative Supplement to this publication***.

2001 Orange Book at AD-2 (emphasis added).  In turn, each printed Cumulative Supplement that issued during the 2001 calendar year underscored that it was intended to "provide[], among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and ***updated patent and exclusivity data***."  *See, e.g.*, August 2001 Cumulative Supplement at iii (emphasis added).

But these publications do more than simply make clear that the official 2001 Orange Book and FDA's official monthly Cumulative Supplements to the 2001 Orange Book were the legally operative publications for purposes of the statute and regulations at the time Teva submitted its ANDA for generic risperidone tablets.  They expressly directed applicants to rely on the monthly Cumulative Supplements in order to verify that patent listings printed in the annual Orange Book remained correct—and, specifically, to ensure that relevant patent listings (like the '952 patent in this case) had not been ***deleted*** since they first appeared in the annual Orange Book.  As both the 2001 Orange Book and each 2001 Cumulative Supplement put the point, "[s]ince all parts of this publication are subject to changes, additions, ***or deletions***, the Addendum must be used in conjunction with ***the most current Cumulative Supplement***."  *Id.*; *see also* August 2001 Cumulative Supplement at iii ("Because all parts of the [annual Orange Book] are subject to changes, additions, ***or deletions***, the [annual Orange Book] must be used in conjunction with the ***most current Cumulative Supplement***.").  The only possible interpretation of those directives is that applicants were obligated to consult the "most current Cumulative Supplement" in order to determine whether there had been any "deletions" that would have affected the patent-listing information published in the 2001 annual Orange Book.  And given

those express directives, FDA's attempt to divest Teva of its exclusivity for relying on the most current Cumulative Supplement at the time it filed its ANDA epitomizes arbitrary and capricious Agency decisionmaking.

Faced with all of this, FDA claims that its electronic Orange Book nonetheless controlled in the event of a conflict with the annual Orange Book and then-current Cumulative Supplement because the inside cover of the 2001 Orange Book—in the section which listed the Library of Congress classification data for the publication—"prominently" noted that the book is "[u]pdated by monthly cumulative supplements [and] on the Internet," Letter Decision at 7, and because the official Cumulative Supplements themselves "describe[] the availability of the electronic Orange Book." Letter Decision at 6. But those claims are entirely irrelevant. Whether or not an "electronic Orange Book" was available "on the Internet," and regardless of what information it may have contained, there is not a single word in the statute, the regulations, the 2001 Orange Book, or any of the monthly Cumulative Supplements to the 2001 Orange Book that directed applicants to consult the electronic Orange Book—or even offered the slightest hint that the electronic Orange Book's patent-listing information was any different than the information contained in the current monthly Cumulative Supplement.

To the contrary, the key passage on which FDA bases its response to the Petition actually indicates that precisely the opposite was true: "'The data [in the Electronic Orange Book Query feature] is updated *concurrently* with the publication of the annual edition [of the Orange Book] or monthly cumulative supplements.'" FDA Letter at 6 (quoting January 2001 Supplement at v) (emphasis added). The only conceivable interpretation of that statement is that the electronic Orange Book would have contained *the same* information as the current Cumulative Supplement: outside the writings of George Orwell, a government agency's pronouncement that

23

it "concurrently" is updating two parallel databases that contain the same legally required data leaves no room for the possibility that it might be using two different data sources to update those databases—and that in the event of any conflict, the only database that matters is the one the agency *has not* expressly directed citizens to consult and which *is not* referenced in the agency's regulations, rather than the one the agency *has* expressly directed citizens to consult and which *is* referenced in the agency's regulations.

To summarize: the statute requires FDA to maintain a published list of drug-related patents; FDA's regulations and the 2001 Orange Book itself made clear that the Orange Book was designed to discharge that responsibility, and further obligated the Agency to keep the Orange Book current by publishing monthly Cumulative Supplements (but not to maintain an online version of the Orange Book); and both the 2001 Orange Book and 2001 Cumulative Supplements expressly directed applicants to consult the current official Cumulative Supplement (but not the electronic Orange Book) before filing an ANDA in order to obtain the most current patent-listing information. Given the plain language and structure of the statute, FDA's own regulations, and the Orange Book's express directives, then, generic applicants were not only *entitled* to rely on the 2001 Orange Book and 2001 Cumulative Supplements for up-to-date patent information at the time Teva submitted its risperidone ANDA; they *had to* rely on the 2001 Orange Book and then-current Cumulative and *had to* submit a certification with respect to every patent listed in the 2001 Orange Book, as confirmed by the then-current monthly Cumulative Supplement, at the time Teva submitted its risperidone ANDA.

That is exactly what Teva did here, and Teva thus is entitled to 180-day exclusivity for generic risperidone tablets. At all times during the preparation of its ANDA, and on the date Teva submitted that ANDA to FDA, the '663 and '952 patents were listed in the official Orange

24

Book, 2001 Orange Book at ADA 57, and the then-current official monthly Cumulative Supplement to the Orange Book reflected no additions, changes, or deletions to the patent listing information for Risperdal® tablets. August 2001 Supplement at A-14. As a result, Teva made significant investments in (a) identifying vulnerabilities in the patent listings for risperidone, (b) designing a generic risperidone product that would not infringe the '952 patents, and (c) formulating a strong legal challenge to the '952 patent in case Janssen later attempted to assert the '952 patent against Teva. And once Teva developed its non-infringing product and crafted a successful challenge to the '952 patent, it deliberately exposed itself to the risk of patent litigation by submitting a paragraph IV certification to the officially listed '952 patent in its original ANDA. *See* 35 U.S.C. § 271(e)(2).

180-day exclusivity is designed to encourage and reward precisely those actions—and the risks Teva assumed by undertaking them—and FDA's delisting of the '952 patent without legally required notice, and subsequent refusal to relist that patent in the Orange Book, honor Teva's Paragraph IV certification to that patent, and effectuate Teva's exclusivity contradict the plain text, structure, and purposes of the Hatch-Waxman Act. On this point, then, Teva has a strong likelihood of proving is entitlement to judgment as a matter of law—and this Court should require FDA to relist the '952 patent, honor Teva's Paragraph IV certification, and enjoin FDA from approving any subsequently filed ANDAs pending the expiration of Teva's exclusivity, or otherwise preliminarily enjoin FDA from approving any risperidone ANDAs other than Teva's pending the entry of a final judgment on the merits.

One final point is in order here. In a last-ditch effort to justify its denial of Teva's petition, FDA asserts that the '952 patent should not be relisted and that Teva should not be accorded exclusivity for its generic risperidone tablets, because Teva never notified Janssen or

the owner of the '952 patent that it had submitted a Paragraph IV certification with respect to the '952 patent. FDA Letter Decision at 1-2 ("Teva did not provide the required notice of such certification to the holder of the NDA for [Risperdal®] and each owner of the listed patent."); *id.* at 9 ("Teva withdrew its paragraph IV certification and never notified the NDA holder and patent owner that it believed the '952 patent to be invalid, unenforceable, or not infringed.").

That claim is utterly frivolous. As FDA well knows—because FDA acknowledges as much in its Letter Decision—generic applicants are ***not*** required to send the NDA holder or patentee notice of a Paragraph IV certification until "receipt of an acknowledgement letter from the Office of Generic Drugs (OGD) advising that the application is sufficiently complete to permit a substantive review and has been received by OGD." *Id.* at 3 (citing 21 C.F.R. § 314.95(b)). Of course, the basic problem in this case is that FDA ***refused*** to send Teva such an acknowledgement letter after receiving Teva's Paragraph IV certification, because the Agency unlawfully forced Teva to withdraw its Paragraph IV certification before accepting Teva's ANDA for filing. *See id.* at 5-6 & n.11 (explaining that FDA made its determination that the '952 patent had been delisted "[d]uring a filing review of the ANDA to determine whether it was sufficiently complete to permit a substantive review"; that FDA subsequently ordered Teva withdraw its Paragraph IV certification to the '952 patent and refused to send an "acknowledgement letter to Teva indicating that Teva's ANDA for risperidone tablets had been received for substantive review" until Teva withdrew its Paragraph IV certification; and that OGD never issued Teva a "paragraph IV acknowledgement letter which describes … an ANDA applicant's obligations to provide the required notice to the NDA holder and each patent owner … because [Teva's] ANDA did not contain a paragraph IV certification to a listed patent when received for substantive review by OGD").

Needless to say, FDA cannot possibly defend its actions by asserting that Teva somehow should have notified Janssen or anyone else about its Paragraph IV certification when FDA alone is responsible for Teva's failure to do so. Teva, in short, did not choose to leave Janssen in the dark; it was FDA that refused to accept Teva's Paragraph IV certification; FDA that refused to accept Teva's ANDA for filing; FDA that refused to acknowledge its receipt of Teva's ANDA; and FDA that, by its own actions, failed to trigger the statutory notification requirement. The principles that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity" are older than the Republic itself, *see Riggs v. Palmer*, 115 N.Y. 506, 511-15 (1889) (collecting historical sources), and FDA's shameless suggestion that the Agency lawfully may deprive Teva of its exclusivity based on the Agency's own unlawful conduct is wholly bereft of merit. If and when this Court holds that FDA unlawfully effectuated the delisting of the '952 patent after it received Teva's Paragraph IV certification, and orders the FDA to relist that patent in the Orange Book, accept Teva's Paragraph IV certification, and honor Teva's claim to exclusivity as the first Paragraph IV filer, Teva is fully committed to providing Janssen with the requisite patent certification. In the meantime, however, Teva's failure to provide a Paragraph IV notification to Janssen offers no support for FDA's position in this case.

## II.    Teva Will Suffer Irreparable Harm Absent Preliminary Relief.

Teva will be irreparably harmed unless this Court takes prompt action to relist the '952 patent and restore Teva's exclusivity. Janssen's pediatric exclusivity expires on June 29, 2008. Barring injunctive relief, FDA will be free to approve other ANDAs for generic risperidone tablets at that time. Should FDA do so, the principal benefits of exclusivity will be lost to Teva forever. 180-day generic marketing "exclusivity typically gives the first generic entrant a permanent advantage over subsequent entrants, because that officially sanctioned 'head start'

27

permits first entrants to secure distribution channels and access to customers; enter into long-term sales agreements; increase sales across all of its product lines; and retain greater market share in the long-run." Declaration of David Marshall ¶ 11 (attached as Ex. 10). Loss of that "head start," however, would "impair[] [Teva's] access to customers for generic risperidone tablets, decreas[e] its opportunities to strengthen market position on other product lines, and diminish[] Teva's ability to establish and retain long-term market share for generic risperidone products." *Id*. ¶ 13.

Regrettably, there is no way to remedy these losses. "Because a given prescription can be filled only once, it is impossible to 'make up' for a lost sale by filling a subsequent prescription." *Id*. ¶ 15. And since the defendants in this case are immune from money damages, there is no way to recoup the substantial lost revenue opportunities Teva would incur from losing its exclusivity. *See, e.g.*, *Brendsel v. Office of Fed. Hous. Enter. Oversight*, 339 F. Supp. 2d 52, 66 (D.D.C. 2004); *see also Entergy Ark., Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000); *cf. CSX Transp. v. Williams*, 406 F.3d 667, 674 n.7 (D.C. Cir. 2005). It thus should come as no surprise that courts have repeatedly recognized that lost generic marketing exclusivity is a form of irreparable injury sufficient to ground preliminary injunctive relief against FDA. *See, e.g.*, *Mova Pharm. Corp. v. Shalala*, 140 F.3d at 1066 n.6; *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 32 (D.D.C. 2006) (citing *Apotex, Inc. v. FDA*, No. Civ.A. 06-0627-JDB, 2006 WL 1030151, *17 (D.D.C. Apr. 19, 2006)); *Torpharm, Inc. v. Shalala*, No. 97-1925, 1997 WL 33472411 (D.D.C. Sept. 15, 1997).

In this case, the harm to Teva from a loss of exclusivity would be significant. In 2007, Janssen sold 556 million doses of risperidone with a reported market value exceeding $2.5 *billion* dollars. Marshall Decl. ¶ 4. As the Unredacted Marshall Declaration details, Teva stands

to lose a significant portion of both its anticipated first-year market share and anticipated annual risperidone revenues in the event it is deprived of its exclusivity. *Id*. ¶ 14. Only a preliminary injunction can prevent Teva from suffering these massive, irreparable harms.

Finally, it bears emphasis that Teva must make significant production and staffing changes ***now*** if it is to prepare for an exclusive launch. These changes—which include shifting manufacturing priorities, rescheduling the production of other products, transferring additional manpower, and ordering additional ingredients from its suppliers—will take months to complete. *Id*. ¶ 16-17. In short, the question whether Teva will enjoy 180 days of exclusivity beginning in June 2008 will have a substantial, immediate impact on the planning and production process, and must be resolved now in order to ensure that launch-ready quantities of risperidone are available for immediate commercial marketing upon the expiration of Janssen's pediatric exclusivity period. *Id*. ¶ 18.

## III.    The Balance Of Hardships And Public Interest Favor Granting Relief.

The final equitable factors—the balance of hardships and public interest—likewise favor granting immediate injunctive relief. With respect to the former, FDA is a federal agency and cannot seriously claim that it would be harmed by an injunction requiring it to apply Hatch-Waxman Act in a manner consistent with Congress's intent, the D.C. Circuit's decision in *Ranbaxy*, and its own regulations. Nor will any private parties suffer significant harm from the entry of an injunction. Janssen will not be harmed, because it will face generic competition on June 29 regardless of the outcome here. And while injunctive relief will prevent FDA from approving other generic applicants for 180 days, any harm to those companies would be vastly outweighed by the harm that Teva would suffer without injunctive relief. After all, Teva claims the exclusive right to market generic risperidone tablets starting June 29, 2008, while those companies merely could seek the right to be one of many companies to enter the market at that

29

time.  As a result, the costs of denying injunctive relief will be borne singularly by Teva, while any costs to the subsequent applicants from the entry of an injunction would be shared across the industry.  Finally, it bears note that the generic drug industry as a whole ultimately stands to benefit from the entry of an injunction preserving exclusivity here, because each of them is likely to be a first-filer on one or more future products and thus would benefit from a decision that fully preserves the value of exclusivity for those who undertake the significant risks inherent in submitting the first Paragraph IV certification.

But make no mistake: it is the public that stands to lose the most if this Court declines to enter injunctive relief.  If generic companies cannot be sure that FDA and the courts will protect their right to 180-day exclusivity, they will be less likely to challenge patents by filing Paragraph IV certifications in the future—slowing the onset of generic competition, and ultimately increasing prices for patients and insurers.  That result would directly undermine the basic purpose of the Hatch-Waxman Act, which is to "'get generic drugs into the hands of patients at reasonable prices—fast.'"  *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 809 (D.C. Cir. 2001) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)).  Injunctive relief would foster that basic goal by preserving the incentive scheme Congress established in the Hatch-Waxman Act, and this Court should act quickly to restore the integrity of the Hatch-Waxman regime.

## CONCLUSION

For the foregoing reasons, Teva respectfully requests that this Court grant its motion for a preliminary injunction.

Dated: March 4, 2008    Respectfully submitted,

       By: /s Michael D. Shumsky
       Jay P. Lefkowitz, P.C. (D.C. Bar No. 449280)*
       Michael D. Shumsky (D.C. Bar No. 495078)
       Gregory L. Skidmore (D.C. Bar No. 974024)
       KIRKLAND & ELLIS LLP
       655 15th Street N.W., Suite 1200
       Washington, D.C.  20005
       (202) 879-5000
       (202) 879-5200  fax

         *Counsel of Record

       *Counsel for Teva Pharmaceuticals USA, Inc.*

**Exhibit List**

Citizen Petition No. 2007P-0316
(filed Aug. 8, 2007)                                        Ex. 1

FDA Letter Decision
(dated Feb. 26, 2008)                                       Ex. 2

Orange Book
(21st ed. 2001) ("2001 Orange Book")                       Ex. 3

Orange Book
21st ed. Cumulative Supplement 8
(Aug. 2001) (the "August 2001 Supplement")                 Ex. 4

Orange Book 21st ed., Cumulative Supplement 10
(Oct. 2001) (the "October 2001 Supplement")                Ex. 5

Orange Book 21st ed., Cumulative Supplement 11
(Nov. 2001) (the "November 2001 Supplement")               Ex. 6

Orange Book 21st ed., Cumulative Supplement 12
(Dec. 2001) (the "December 2001 Supplement")               Ex. 7

Orange Book
(22nd ed. 2002) ("2002 Orange Book")                       Ex. 8

Orange Book 21st ed., Cumulative Supplement 9
(Sept. 2001)                                               Ex. 9

Declaration of David Marshall                              Ex. 10



**Administrative Offices:**
TEVA PHARMACEUTICALS USA
1090 Horsham Road, PO Box 1090
North Wales, PA 19454-1090

**Deborah A. Jaskot, M.S., RAC**
Vice President, Regulatory Affairs

Direct Dial: (215) 591 3142
Direct FAX: (215) 591 8812
deborah.jaskot@tevausa.com

August 3, 2007

Division of Dockets Management
Food and Drug Management
5630 Fishers Lane
Room 1061 (HFA-305)
Rockville, MD  28057

## CITIZEN PETITION

### ACTION REQUESTED

    Teva Pharmaceuticals USA, Inc. ("Teva") respectfully submits this Citizen Petition pursuant to section 505 of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355, and section 10.30 of the Agency's implementing regulations, 21 C.F.R. § 10.30.   This petition requests that the Agency:

(1)    Relist U.S. Patent No. 5,158,952 ("the '952 patent") in *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg Risperdal® (risperidone) tablets, all approved products of Janssen Pharmaceutica Inc. as the holder of NDA No. 20-272;

(2)    Confirm that Teva's right to 180-day exclusivity with regard to ANDA No. 76-228 has not been affected by FDA's erroneous delisting of the '952 patent from the Orange Book; and

(3)    Refrain from approving any Abbreviated New Drug Application ("ANDA") for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg risperidone tablets until Teva's 180-day exclusivity period expires.

### STATEMENT OF GROUNDS

### INTRODUCTION

    The plain text, structure, and history of 21 U.S.C. § 355(j)(5)(B)(iv) establish that Teva is entitled to 180 days of marketing exclusivity for its generic risperidone tablets as a result of Teva's August 28, 2001 paragraph IV certification to the '952 patent.   That is so because the '952 patent appeared in the official Orange Book on the day Teva submitted its paragraph IV certification; because Teva thus was required to submit a certification to that patent at the time it

submitted its ANDA for generic risperidone drug products; and because Teva then became the first company to submit a paragraph IV certification to any of the listed patents claiming Risperdal®. FDA's purported "delisting" of the '952 patent in no way undermines Teva's entitlement to 180-day exclusivity, because the Agency failed to provide official notice of the "delisting" for several months following the submission of Teva's ANDA. As the D.C. Circuit recently recognized in the *Ranbaxy* (simvastatin) case, the adoption of a rule that would divest the first generic applicant of its exclusivity after that applicant has assumed the very risks 180-day exclusivity is designed to reward—the expense of formulating a non-infringing product and preparing a legal defense to a potential action for patent infringement, and then the submission of an infringing paragraph IV certification to the Agency—would fundamentally "change the incentive structure adopted by Congress," in clear violation of the plain text and structure of the Hatch-Waxman Act. *Ranbaxy Laboratories Ltd. v. Leavitt*, 469 F.3d 120, 125-26 (D.C. Cir. 2006).

At bottom, given that the '952 patent remained listed in the official Orange Book on the date Teva submitted its paragraph IV certification to the Agency, and in view of the plain language of section 355(j)(5)(B)(iv), court precedent compelling FDA to preserve Teva's exclusivity by relisting the '952 patent, and the Agency's own practice regarding patent relisting, Teva thus petitions FDA to relist the '952 patent for Risperdal®, maintain Teva's exclusivity against subsequently filed ANDAs, and confirm Teva's right to its 180-day exclusivity period.

## BACKGROUND

Risperidone is an atypical antipsychotic medication sold by Janssen Pharmaceutica ("Janssen") under the trade-name Risperdal®. Janssen holds NDA No. 20-272, for risperidone tablets. As of August 2001, FDA's official *Approved Drug Products with Therapeutic Equivalence Evaluations* (known as the "Orange Book") listed two patents as claiming Risperdal® tablets: U.S. Patent No. 4,804,663 ("the '663 patent"), which is set to expire on December 29, 2007, and U.S. Patent No. 5,158,952 ("the '952 patent"), which will expire on October 27, 2009. *See* Orange Book (2001 ed.), at ADA 57 (Exhibit 1).

On August 28, 2001, Teva submitted an original Abbreviated New Drug Application ("ANDA"), No. 76-228, seeking approval to market generic risperidone tablets in 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg strengths. *See* Patent Certification for Risperdal® ANDA ("Original Patent Certification") (Exhibit 2). In accordance with 21 U.S.C. § 355(j)(2)(A)(vii), Teva's ANDA contained a certification with respect to each patent listed as claiming Risperdal® tablets. *Id.* Because the official Orange Book listed both the '663 and '952 patents for Risperdal® tablets, Teva was required to certify as to both patents, and it did so. *See* 21 C.F.R. 314.53(f). Teva filed a certification under § 355(j)(2)(A)(vii)(III) ("Paragraph III certification") as to the '663 patent, which is set to expire on December 29, 2007, and a certification under § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") as to the '952 patent, asserting that the patent was invalid or would not be infringed by Teva's generic risperidone tablets. *See* Original Patent Certification.

On October 12, 2001, FDA notified Teva that it had "delisted" the '952 patent from the Orange Book (even though it continued to appear in the official Orange Book at that time). *See* Letter from Deborah Jaskot to Gary Buehler (Oct. 22, 2001) ("Jaskot Letter") (Exhibit 3). It also informed Teva that it would not accept Teva's ANDA for filing unless Teva modified its patent certification to reflect that the '952 patent was no longer listed as claiming the reference drug product. *Id.* Thus, even though FDA had not informed Teva of the putative delisting prior to the submission of Teva's paragraph IV certification; even though the official Orange Book continued to list the '952 patent as claiming Risperdal® tablets; and even though Teva had assumed the very risks 180-day exclusivity is designed to reward, Teva was forced to follow the agency's directive and amend its ANDA.

In January 2002, FDA released a revised Orange Book, which for the first time noted the official delisting of the '952 patent, and listed only the '663 patent as claiming Risperdal® tablets. *See* Orange Book (2002 ed.), at ADA 65 (Exhibit 4).

In November 2006, the D.C. Circuit ruled that the plain text of the FDCA prevented FDA from effectuating the delisting of a patent following the submission of a paragraph IV certification as to that patent. *Ranbaxy Laboratories Ltd. v. Leavitt*, 469 F.3d 120, 125-26 (D.C. Cir. 2006). The court struck down FDA's practice because it "change[d] the incentive structure adopted by Congress," by "depriv[ing] the generic applicant of a period of marketing exclusivity" after the generic manufacturer had expended significant resources in developing a non-infringing generic substitute and undertaken the risk of infringing the patent by filing a paragraph IV certification. *Id.* at 126. The D.C. Circuit thus held that FDA's approach to delisting  contravened the plain meaning of the FDCA, and invalidated FDA's practice under *Chevron* step one. *Id.*

Following the D.C. Circuit's decision, Teva began reviewing its portfolio of pending ANDAs to determine whether FDA's unlawful delisting practices had deprived Teva of its entitlement to 180-day exclusivity for any other generic product. As with respect to Ivax's ANDA for olanzapine drug products, this case presents such a situation.

## ARGUMENT

The plain language of the FDCA entitles Teva to a 180-day period of first-filer exclusivity for generic Risperdal® tablets. Teva was the first generic manufacturer to file an ANDA for generic risperidone tablets containing a paragraph IV certification as to the '952 patent. Under 21 U.S.C. § 355(j)(5)(B)(iv) (2002), the earliest any subsequently-filed paragraph IV ANDA can be approved is "one hundred and eighty days after" Teva first commercially markets its generic risperidone tablets or the date of a court decision holding the '952 patent to be invalid or not infringed. *Id.*[1] To date, neither of these events has occurred—there has been no

---

[1]    Because Teva filed its ANDA in August 2001, its claims are governed by the version of the FDCA that existed prior to the amendments made in the Medicare Modernization Act of 2003 ("MMA"). *See* MMA, Pub. L. No. 108-173, 117 Stat. 2006, § 1102(b)(1) (Dec. 8, 2003). All citations in this petition are to the pre-MMA version of the statute.

litigation concerning the '952 patent, and Teva will not begin commercial marketing of its generic risperidone products until the patent term of (and any subsequent period of pediatric exclusivity with respect to) the '663 patent expires. At that time Teva will be entitled to 180 days of sole marketing exclusivity under the plain terms of § 355(j)(5)(B)(iv).[2]

Teva's entitlement to generic exclusivity may not be denied on the basis of FDA's putative "delisting" of the '952 patent prior to the submission of Teva's paragraph IV certification to the Agency. At the time Teva submitted its original ANDA for generic risperidone products (which contained a paragraph IV certification to the '952 patent), it had no choice but to certify as to the '952 patent. After all, the official Orange Book continued to list the '952 patent as claiming Risperdal® tablets. Both FDA regulations and longstanding case law make clear that the agency does not adjudicate questions of patent law; instead, it plays only a ministerial role in maintaining the Orange Book. *See, e.g., Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1349-50 (Fed. Cir. 2003); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp. 2d 1, 7 (D.D.C. 2004); *see also* 21 C.F.R. § 314.53(f). As a result, where a patent remains listed for a particular drug in the official Orange Book, a generic applicant has no choice but to believe that the NDA holder is continuing to assert that patent as claiming the listed drug. In that situation, both the statute and agency regulations require the generic applicant to submit a certification with respect to the disputed patent. *Apotex*, 347 F.3d at 1350 ("The statutory language shows a clear congressional intention to require certification whenever an ANDA applicant seeks approval of a drug that is claimed by a patent *that is listed in the Orange Book*.") (emphasis added); *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 31 (D.D.C. 2006) (same); 21 C.F.R. § 314.53(f).

Thus, at the time of its ANDA submission in August 2001, Teva was required to submit a certification to the '952 patent. FDA's putative delisting of the '952 patent did not become effective until January 2002, when the official Orange Book reflected the delisting of that patent. Absent any change in the Orange Book listings that reasonably would have put Teva on notice of the '952 delisting, it had no choice but to certify to the '952 patent on the date that it submitted its paragraph IV certification to the Agency. *See Apotex*, 347 F.3d at 1350 (noting that certification is "require[d]" for any patent listed in the Orange Book as claiming a drug). Teva thus did precisely what it was obligated to do under the plain text of the governing statute and Agency regulations, and it therefore earned its exclusivity as the first applicant to file a paragraph IV certification to a patent listed as claiming the reference listed drug.

Divesting Teva of its 180-day exclusivity under these circumstances would fundamentally undermine the incentive scheme established by the Hatch-Waxman Act, and expose the exclusivity reward to manipulation by brand manufacturers. Courts, including the D.C. Circuit in its recent *Ranbaxy* decision, routinely reject such an approach to the statutory

---

[2]   Because the Federal Circuit recently held that the '663 patent is valid and enforceable, *see Janssen Pharmaceutica v. Mylan Pharms.*, No. 07-1021 (Fed. Cir. May 11, 2007), no manufacturer is entitled to exclusivity based on its first-to-file status with respect to that patent. Thus, under FDA's pre-MMA, patent-by-patent approach to exclusivity, Teva's exclusivity based on its first-filer status with respect to the '952 patent will not be shared with the first applicant that filed a paragraph IV certification with respect to the '663 patent. Teva alone is entitled to exclusivity for these drug products.

scheme. Thus, a brand manufacturer may not delist a patent in order to eliminate generic exclusivity after an ANDA applicant wins its paragraph IV litigation on a patent. *See, e.g.*, 21 CFR § 314.94(a)(12)(viii)(B); *Torpharm v. Thompson*, 260 F. Supp. 69, 83 n.15 (D.D.C. 2003). By the same token, as the *Ranbaxy* Court recognized, FDA may not effectuate the delisting of a patent for a referenced drug after a generic manufacturer submits a paragraph IV certification. 469 F.3d at 125-26.

The reasoning behind these decisions is straightforward. The primary purpose of the Hatch-Waxman Act is to promote generic competition in the pharmaceutical market and prevent brand manufacturers from using inapplicable patents to block generic applicants from entering the market. A policy that permits a brand manufacturer to effectuate the delisting of a patent after the submission of a paragraph IV certification and without notice to the pharmaceutical community allows brand manufacturers to manipulate the generic approval process by forcing generic manufacturers to invest significant resources and assume the risk of patent litigation without any guarantee of the 180-day exclusivity reward. By thereby decreasing the incentives for generic manufacturers to develop competing products for listed drugs, such an approach is fundamentally inconsistent with the Hatch-Waxman Act. *Id.*

That is precisely the case here. On the date Teva filed its ANDA for generic risperidone drug products, Teva was obligated to rely on the official Orange Book's indication that its generic risperidone product would have to be designed so as not to infringe the '952 patent, or that Teva otherwise would have to invest significant sums in preparing a legal challenge to the validity or enforceability of the '952 patent. As a result, Teva invested substantial resources to engineer a non-infringing drug product and prepare a legal challenge to the '952 patent. Most important, Teva then assumed the very risk 180-day exclusivity is designed to reward, by deliberately exposing itself to patent litigation with the submission of a paragraph IV certification to the '952 patent in its original ANDA. *See* 35 U.S.C. § 271(e)(2); *see also Purepac Pharmaceutical Co. v. Thompson*, 354 F.3d 877, 889 (D.C. Cir. 2004); Brief of the Federal Defendants, *Purepac Pharmaceutical Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004) ("An original ANDA which includes a paragraph IV certification is considered effectively submitted on the date it is received by FDA, provided that FDA finds, after conducting a threshold review, that the application is substantially complete.").

Thus, even though Teva did precisely what the statute is designed to reward, FDA's putative "delisting" of the patent—despite the fact that the '952 continued to appear in the official Orange Book—has deprived Teva of the reward Congress guaranteed in the Hatch-Waxman Act.

At bottom, FDA's decision to effectuate the delisting of the '952 patent without prior notice rendered Teva's substantial investment in generic risperidone a nullity. Just as in *Ranbaxy*, the adoption of such a policy clearly "diminishes the incentive for a manufacturer of generic drugs to challenge a patent listed in the Orange Book." *Ranbaxy*, 469 F.3d at 126. Ultimately, such a rule will act as an overall disincentive for companies to even attempt to produce generic drug alternatives, lest their significant investment in the design of a non-infringing product and preparation of a legal defense to an infringement action turn out to have been wasted. Such a policy directly contradicts the policies behind the Hatch-Waxman Act, and cannot be sustained. *See Ranbaxy*, 469 F.3d at 125-26.

Indeed, FDA itself has acknowledged as much. On May 15, 2007, the Agency relisted eight patents for Zyprexa® (olanzapine) that had been delisted several years earlier at the request of the brand manufacturer. That decision only underscores FDA's understanding that *Ranbaxy* requires not only a prospective change in agency practice, but also remedial action to restore to generic manufacturers any statutory rights wrongly denied by previous delistings. Patents that have been wrongly removed from the Orange Book must be relisted, and any exclusivity owed generic companies on those patents must be restored--even if several years have passed since the original delisting. As it did with the olanzapine patents, FDA must relist the '952 patent to protect the policies behind the Hatch-Waxman Act.

The fact that FDA never accepted Teva's paragraph IV ANDA for filing thus has no bearing on the fact that FDA must relist the '952 patent. FDA's refusal to file Teva's paragraph IV certification as to the '952 patent was based on its since-overturned delisting policy. At that time, the Agency gave Teva no choice but to amend its patent certification for its risperidone ANDA. And as in the olanzapine case, FDA now has no choice but to relist the '952 patent and restore Teva's exclusivity.

## CONCLUSION

This case rises and falls on one fact: on the date Teva submitted its original ANDA containing a paragraph IV certification in August 2001, the '952 patent continued to appear in the official Orange Book. Teva thus did everything it was required to do under the plain text of the statutes and governing regulations in order to secure the statutory reward of 180-day exclusivity: it had engineered a non-infringing pathway around the '952 patent, it had prepared a legal challenge to that patent, and most critically, it filed the very first paragraph IV certification to the '952 patent. As the first filer, Teva thus earned its 180-day period of exclusivity under the Hatch-Waxman Act, and FDA may not lawfully deprive Teva of this right.

Teva thus respectfully requests that FDA relist the '952 patent, confirm Teva's status as the first generic applicant to file a paragraph IV certification as to that patent, and acknowledge Teva's entitlement to a 180-day period of exclusivity on generic risperidone tablets.

## ENVIRONMENTAL IMPACT

The relief requested by this petition would result in the recognition of a 180-day period of exclusivity for an ANDA applicant. Because the grant of the petition would not have an effect on the environment, no environmental assessment is required. *See* 21 C.F.R. § 25.31(a).

## ECONOMIC IMPACT

Information on the economic impact of the action will be submitted if requested by the Commissioner.

## **CERTIFICATION**

The undersigned certifies that, to the best of his knowledge and belief, this petition includes all information and views on which the petition relies, and includes representative data and information known to him that are unfavorable to the petition.

Sincerely,

*Deborah Jastot*

DAJ

DEPARTMENT OF HEALTH & HUMAN SERVICES                    Public Health Service

Food and Drug Administration
Rockville MD 20857

FEB 2 6 2008

Deborah A. Jaskot, M.S., R.A.C.
Vice President, Regulatory Affairs
Teva Pharmaceuticals USA
1090 Horsham Road, P.O. Box 1090
North Wales, PA 19454-1090

Re:    Docket No. 2007P-0316/CP1 and CR1

Dear Ms. Jaskot:

This responds to your citizen petition dated August 3, 2007 (Petition), and the revised certification to your Petition dated January 4, 2008 (Correction).[1]  Your Petition requests that the Food and Drug Administration (FDA or the Agency) relist U. S. Patent Number 5,158,952 (the '952 patent) for the 0.25-milligram (mg), 0.5-mg, 1-mg, 2-mg, 3-mg, and 4-mg strengths of Risperdal (risperidone) tablets (new drug application (NDA) 20-272) in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the Orange Book).  You also request that FDA confirm that Teva Pharmaceutical USA's (Teva) eligibility for 180-day exclusivity in connection with its abbreviated new drug application (ANDA) 76-228 for risperidone tablets in these strengths has not been affected by FDA's delisting of the '952 patent from the Orange Book.  Your request is based on the contention that the '952 patent appeared in the printed annual edition of the Orange Book on the day that Teva submitted ANDA 76-228, which contained a certification pursuant to section 505(j)(2)(A)(vii)(IV) of the Act (paragraph IV certification) to the '952 patent, and a certification pursuant to section 505(j)(2)(A)(vii)(III) of the Act (paragraph III certification) to U. S. Patent Number 4,804,663 (the '663 patent).

We have carefully reviewed your Petition and have concluded that the '952 patent was delisted before Teva submitted ANDA 76-228 to FDA.  For the reasons described in further detail in this Response, we deny your request that FDA relist the '952 patent.  As Teva's ANDA did not contain a paragraph IV certification for a listed patent, and Teva did not provide the required

---

[1] See Docket No. 2007P-0316/CP1 and CR1.  On January 4, 2008, you submitted a "revised certification pursuant to 21 U.S.C. 355(q)(1)(H)" relating to your pending citizen petition.  Section 505(q) of the Federal Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 355(q)) was added by the Food and Drug Administration Amendments Act of 2007 (Public Law 110-85) (FDAAA) on September 27, 2007.  You have alleged that your Petition, received by FDA on August 6, 2007, is subject to section 505(q)(1)(F) of the Act.  It is FDA's view that the requirements, prohibitions, and benefits described in section 505(q) of the Act do not apply to requests submitted to FDA before September 27, 2007.  Were it otherwise, FDA would be barred from considering your Petition, as it did not contain the required certification described in section 505(q)(1)(H) without which the Secretary "shall not consider a petition for review."  A certification submitted after the petition does not make the original petition "contain" the certification.  Moreover, we note that section 505(q) of the Act does not apply to a petition that relates solely to the timing of the approval of an application pursuant to current section 505(j)(5)(B)(iv) of the Act, which describes the 180-day exclusivity period accorded to certain applications (section 505(q)(4)(A) of the Act).  As described further in this Response, although framed as a patent delisting matter, your Petition relates solely to Teva's eligibility for exclusivity and thus to the timing of the approval of ANDAs for risperidone tablets pursuant to section 505(j)(5)(B)(iv) of the Act.  Because FDAAA does not apply to your Petition, we are responding to your Petition in accordance with our regulations on citizen petitions at 21 CFR 10.30.

1

notice of such certification to the holder of the NDA for the reference listed drug and each owner of the listed patent, Teva would not be eligible for 180-day exclusivity pursuant to section 505(j)(5)(B)(iv) of the Act for its pending ANDA 76-228.

I.    BACKGROUND

A.    ANDAs and Eligibility for 180-day Exclusivity

The Drug Price Competition and Patent Term Restoration Act of 1984 (Public Law 98-417) (the Hatch-Waxman Amendments) created section 505(j) of the Act (21 U.S.C. 355(j)). The Hatch-Waxman Amendments reflect Congress' efforts to balance the need to "make available more low cost generic drugs by establishing a generic drug approval procedure for pioneer drugs first approved after 1962" with new incentives for drug development in the form of marketing exclusivity and patent term extensions.[2] Section 505(j) of the Act established an abbreviated approval pathway for a drug product that is the same as a previously approved drug (the reference listed drug) with respect to active ingredient, dosage form, route of administration, strength, labeling, and conditions of use, among other characteristics. An ANDA applicant also must demonstrate that its proposed product is bioequivalent to the reference listed drug. An applicant that can meet the requirements under section 505(j) for approval may rely upon the Agency's finding of safety and effectiveness for the reference listed drug, and need not repeat the extensive nonclinical and clinical investigations required for approval of a full NDA submitted under section 505(b)(1) of the Act. The timing of approval for an ANDA is subject to the patent and marketing exclusivity protections accorded the reference listed drug.

Section 505(b)(1) of the Act requires the sponsor of an NDA to "file with the application the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture[,] use, or sale of the drug." Upon approval of an application under section 505(c) of the Act, FDA publishes the patent information provided by the drug product's sponsor in the Orange Book, which is made available to the public in several formats. FDA's role in patent listing is ministerial. As discussed in the preamble to the June 2003 final rule, FDA "will not evaluate a patent to assess whether the declaration is accurate or whether the patent has been appropriately submitted for listing. We will, however, review the declaration for completeness and to determine that the information given by the NDA applicant or holder or patent owner indicates that the patent is eligible for listing."[3]

---

[2] See House Report No. 98-857, part 1, at 14 (1984), reprinted in 1984 U.S.C.C.A.N. 2647 at 2647-2648.

[3] "Applications for FDA Approval to Market a New Drug: Patent Submission and Listing Requirements and Application of 30-Month Stays on Approval of Abbreviated New Drug Applications Certifying That a Patent Claiming a Drug Is Invalid or Will Not Be Infringed; Final Rule" (68 FR 36676 at 36687; June 18, 2003). It should be noted that certain sections of this final rule regarding the application of 30-month stays on approval of certain ANDAs and applications submitted under section 505(b)(2) of the Act were superseded by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) (Public Law 108-173) and revoked by technical amendment (69 FR 11309; March 10, 2004).

The Orange Book is published annually and updated monthly in print. During the time period relevant to this petition, the information in the Orange Book was updated approximately on a monthly basis on the Orange Book Web page (the electronic Orange Book), which is linked from the FDA Web site. Beginning in 1998, current patent listings for approved drug products could be obtained from the electronic Orange Book in a search by *active ingredient*, *proprietary name*, *application holder*, or *application number*.

An ANDA applicant must include a patent certification described in section 505(j)(2)(A)(vii) of the Act for each patent that claims the reference listed drug or a method of using the drug for which the applicant is seeking approval and for which information is required to be filed under subsection 505(b) or 505(c) of the Act. For each patent listed in the Orange Book, the ANDA applicant must submit either a paragraph III certification (delaying approval until the date on which such patent will expire), a paragraph IV certification (certifying that such patent is invalid or will not be infringed by the manufacture, use, or sale of the drug product for which the ANDA is submitted), or, with respect to a method of use patent, a statement that the patent does not claim a use for which the ANDA applicant is seeking approval (section 505(j)(2)(A)(viii) of the Act). Submission of an ANDA for a drug product or the use of a drug product claimed in a patent is an act of patent infringement if the ANDA product is intended to be marketed before patent expiration (see 35 U.S.C. 271(e)(2)).

An applicant submitting a paragraph IV certification is required to give notice of the patent challenge to the holder of the NDA for the reference listed drug and each owner of the patent that is the subject of the certification. For an original ANDA, notice must be provided after receipt of an acknowledgment letter from the Office of Generic Drugs (OGD) advising that the application is sufficiently complete to permit a substantive review and has been received by OGD (21 CFR 314.95(b)).[4] Notice of a paragraph IV certification includes, among other things, "a detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid or will not be infringed" (section 505(j)(2)(B)(iii) of the Act) and it subjects the ANDA applicant to the risk that it will be sued for patent infringement. In addition, if the NDA holder or patent owner initiates a patent infringement action within 45 days after receiving notice of the paragraph IV certification, there will be a statutory 30-month stay of approval of the ANDA while the patent infringement litigation is pending (section 505(j)(5)(B)(ii) of the Act).

The 180-day exclusivity period described in section 505(j)(5)(B)(iv) of the Act provides an incentive for ANDA applicants to challenge listed patents that may be invalid, unenforceable, or not infringed by the drug product described in the ANDA. This patent challenge involves the filing of a paragraph IV certification to a listed patent, notification to the NDA holder and patent owner, and the opportunity for the NDA holder and patent owner to sue the ANDA applicant for patent infringement. The first applicant to submit a substantially complete ANDA containing a paragraph IV certification may be eligible for a 180-day period of marketing exclusivity during which approval of subsequent ANDAs for the same drug product that also contain a paragraph IV certification to the patent will not be granted. Any exclusivity period would run for 180 days from either the first commercial marketing of the first applicant's drug product or from a court

---

[4] With respect to ANDAs, FDA uses the terms *received* or *received for substantive review* to refer to the action described in the Act as filing, and these terms are used in this Response (see 21 CFR 314.101(b)).

decision finding that the patent that is the subject of the paragraph IV certification is invalid or not infringed, whichever is earlier (see section 505(j)(5)(B)(iv) of the Act), during the unexpired term of the patent.[5]

B.    Patents Listed in the Orange Book for Risperdal (risperidone) Tablets

The reference listed drug for Teva's ANDA is Janssen Pharmaceutica's (Janssen) Risperdal (risperidone) tablets (NDA 20-272). The 1-mg, 2-mg, 3-mg, 4-mg, and 5-mg Risperdal tablets were approved in 1993.[6] The 0.25-mg and 0.5-mg strengths were approved in 1999. After approval, the sponsor submitted information to FDA on the '663 patent and the '952 patent for listing in the Orange Book entry for Risperdal tablets. The '663 patent expired on December 29, 2007, and pediatric exclusivity attached to that patent will expire on June 29, 2008.[7] The '952 patent will expire on October 27, 2009.

On April 4, 2001, Janssen's parent company, Johnson & Johnson, sent correspondence to the Division of Neuropharmacological Drug Products in FDA's Center for Drug Evaluation and Research (CDER) requesting removal of the '952 patent from the Orange Book listing for 1-mg, 2-mg, 3-mg, and 4-mg Risperdal tablets. On June 11, 2001, Johnson & Johnson sent correspondence via facsimile to the Division of Database Management stating that its April 4, 2001, correspondence also should have requested delisting of the '952 patent for 0.25-mg, 0.5-mg, and 5-mg Risperdal tablets, and requesting removal of the '952 patent from the Orange Book listing for these strengths. In accordance with these instructions, FDA modified its patent listing database on June 11, 2001, to remove the '952 patent from the entries for Risperdal tablets in the above-referenced strengths in response to Johnson & Johnson's requests on April 4, 2001, and June 11, 2001. The delisting of the '952 patent was reflected in the publicly available, electronic Orange Book shortly after June 29, 2001, and no later than July 20, 2001, the date of the next database update.[8] An applicant searching the publicly available, electronic Orange

---

[5] The version of section 505(j)(5)(B)(iv) of the Act in effect at the time of Teva's ANDA submission predates enactment of the MMA, which amended this and other provisions of the Act. Unless otherwise noted (as in footnote 1), all statutory references reflect the pre-MMA version of the Act.

[6] The 5-mg strength of Risperdal (risperidone) tablets (NDA 20-272) has been discontinued from marketing.

[7] The New Jersey federal district court's finding that the '663 patent was valid and enforceable was affirmed by the Federal Circuit on May 11, 2007 (see *Janssen Pharmaceutica N.V. v. Mylan Pharms., Inc.*, 2006 U.S. Dist LEXIS 74582 (D.N.J. 2006), *aff'd*, 2007 U.S. App. LEXIS 11686 (Fed. Cir. 2007)). The Federal Circuit's mandate issued on June 26, 2007, following denial of a petition for panel rehearing and rehearing en banc (see 2007 U.S. App. LEXIS 16041 (Fed. Cir. 2007)). Accordingly, Teva's ANDA for risperidone tablets, which contains a paragraph III certifications to the '663 patent, will not be eligible for approval prior to June 29, 2008.

[8] The Division of Database Management was responsible for updating the Orange Book. In 2001, the Division of Database Management maintained the patent information submitted by NDA holders pursuant to section 505(b) and (c) of the Act in CDER's Oracle database from which it created patent.txt files on a regular basis. Each patent database .txt file contained the public patent information available at the time of creation of the file, and was released through the electronic Orange Book shortly after it was created. The patent database .txt file created June 4, 2001, showed that the '952 patent and the '663 patent were listed for Risperdal tablets. The patent database .txt file created June 29, 2001, showed that only the '663 patent was listed for Risperdal tablets, reflecting the removal of the' 952 patent on June 11, 2001, at Johnson & Johnson's request. Although we are unable to provide the exact date on which the patent information in the June 29, 2001, .txt file became publicly available in the electronic Orange Book, FDA has determined that it was available by the time the next patent .txt file was created on July 20, 2001.

4

Book after July 20, 2001, would have found that only the '663 patent was listed for Risperdal tablets (see section II.A of this Response for further discussion of the availability of patent information in printed and electronic versions of the Orange Book).

    C.      Teva's ANDA 76-228 for Risperidone Tablets

On August 28, 2001, Teva submitted an ANDA for risperidone tablets. The Teva ANDA contained a paragraph III certification to the '663 patent and a paragraph IV certification to the '952 patent. During a filing review of the ANDA to determine whether it was sufficiently complete to permit a substantive review, OGD evaluated the ANDA in accordance with its usual practice to determine whether the ANDA contained an appropriate patent certification for each patent listed for the reference listed drug identified in the ANDA. When reviewing Teva's ANDA, the OGD project manager relied on the publicly available, electronic Orange Book for the most current patent listing information (see September 25, 2001, printout for risperidone from the electronic Orange Book, attached as Exhibit 1). In light of the absence of the '952 patent from the electronic Orange Book, an OGD project manager also contacted the Orange Book staff to clarify the discrepancy between the patent certifications provided in Teva's ANDA and the patent currently listed for Risperdal tablets. The Orange Book staff confirmed that the '952 patent had been delisted for Risperdal tablets.

OGD concluded that Teva had submitted a patent certification for a patent (the '952 patent) that was no longer listed for the reference listed drug, Risperdal tablets. On October 12, 2001, an OGD project manager contacted Philip Erickson, R.Ph., Director of Regulatory Affairs, Solid Oral Dosage Forms, for Teva Pharmaceuticals USA, and requested, among other things, that Teva submit a revised patent certification because the '952 patent had been delisted from the Orange Book. On October 22, 2001, Teva submitted a letter via facsimile withdrawing its patent certification to the '952 patent. Teva's letter stated, with reference to the revised patent certification: "U.S. Patent 5,158,952 with an expiration of October 27, 2009 **has been officially delisted** from the Approved Drug Products with Therapeutic Equivalence Evaluations (Orange Book), therefore only U.S. Patent 4,804,663 with an expiration of December 29, 2007 remains. Please find enclosed a patent certification revised accordingly" (emphasis added).[9] The revised patent certification, signed by D. Jaskot, Executive Director of Regulatory Affairs, Teva Pharmaceuticals USA stated: "Paragraph III Certification: The undersigned hereby certifies that to the best of our knowledge and in TEVA Pharmaceuticals USA's opinion there is one listed patent which claims the reference drug Risperdal® Tablets, 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg and 4 mg. U.S. Patent No. 4804663 Expiration December 29, 2007…"[10]

On October 24, 2001, OGD issued a standard acknowledgement letter[11] to Teva indicating that Teva's ANDA for risperidone tablets had been received for substantive review. The Teva

---

[9] See Exhibit 3 to Petition: Correspondence dated October 22, 2001, from D. Jaskot (Teva) to G. Buehler (OGD) regarding ANDA 76-228 (Teva's October 22, 2001, Correspondence). A paper copy of Teva's October 22, 2001, Correspondence was received by OGD on October 23, 2001.

[10] See Attachment 2 to Teva's October 22, 2001, Correspondence.

[11] When an ANDA containing a paragraph IV certification is received for substantive review by OGD, OGD will issue a paragraph IV acknowledgment letter which describes, among other things, an ANDA applicant's obligations

ANDA, as received by OGD, did not contain a paragraph IV certification to any listed patent for Risperdal tablets, and thus there was no paragraph IV certification for which Teva would have been required to provide notice to the NDA holder for Risperdal and the owner of the '952 patent.

II.   ANALYSIS

You contend that Teva is entitled to 180 days of marketing exclusivity for its pending ANDA for risperidone tablets because the '952 patent appeared in the annual edition of the Orange Book (which you describe as the "official" Orange Book) on the day that Teva submitted its ANDA containing a paragraph IV certification to the '952 patent. You also assert that FDA's delisting of the '952 patent does not affect Teva's "entitlement" to 180-day exclusivity, because FDA "failed to provide official notice of the 'delisting' for several months following the submission of Teva's ANDA" (Petition at 2). We address these arguments below.

   A.     Public Availability of Information Regarding Delisting of '952 Patent

As described in section I.A. of this Response, FDA makes patent information for listed drugs available to the public in several formats. In 2001, we published a printed annual edition of the Orange Book with cumulative monthly supplements, and maintained a public docket (1995S-0117) for patent term extensions and new patents listed for human drugs. We also provided an electronic Orange Book updated approximately on a monthly basis. The '952 patent was listed for Risperdal tablets in the Patent and Exclusivity Information Addendum (the Addendum) to the printed 21st annual edition of the Orange Book, which is described on the title page as current through December 31, 2000. The Addendum states that "[s]ince all parts of this publication are subject to changes, additions, or deletions, the *Addendum* must be used in conjunction with the most current Cumulative Supplement" (Orange Book, 21st ed., at AD-2). In turn, Section 1.3 of each Cumulative Supplement to the 21st annual edition of the Orange Book describes the availability of the electronic Orange Book. The Cumulative Supplements state, among other things, that

> [t]here is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder, or applicant number. Product search categories are: prescription, over-the-counter, discontinued drugs. There are links to patent and exclusivity information that may be applicable to each product. The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.[12]

---

to provide the required notice to the NDA holder and each patent owner of its paragraph IV certification to a patent listed for the reference listed drug. OGD did not issue a paragraph IV acknowledgement letter to Teva because its ANDA did not contain a paragraph IV certification to a listed patent when received for substantive review by OGD,

[12] See, e.g., Orange Book Cumulative Supplement 1, January 2001, at v. Although the printed cumulative supplements to the Orange Book do not include information on patent delistings, the caveat regarding possible "changes, additions, or deletions" encourages the public to seek the most currently available information. The electronic Orange Book contained the most current information regarding patents listed for Risperdal tablets.

Moreover, the publishing history of the Orange Book, prominently displayed on the inside front cover of the printed 21st annual edition of the Orange Book, also indicates, among other things, that the Orange Book is "Updated by monthly cumulative supplements. Updated on the Internet. Address: http://www.fda.gov/cder/drug.htm."

An applicant searching the electronic Orange Book shortly after June 29, 2001, and no later than July 20, 2001, would have found that only the '663 patent was listed for Risperdal tablets. To illustrate this fact, we have loaded the June 29, 2001, patent database .txt file described in footnote 8 and the database *scripts* (the set of computer instructions to ask the database for certain data) for the electronic Orange Book that were in use in 2001.[13] The electronic Orange Book Query by active ingredient for risperidone, and the information available from each link from the search results page are attached to this Response as Exhibit 2. An applicant searching the electronic Orange Book for risperidone would have found that there was only one listed patent for NDA 20-272 for Risperdal tablets: the '663 patent. Indeed, we note that we have a printout supplied by a different ANDA applicant and dated October 30, 2001, of the electronic Orange Book entry for Risperdal tablets (NDA 20-272), which shows that the only patent listed was the '663 patent (Exhibit 3). This is the same patent information that would have been available to an applicant searching the electronic Orange Book any time after July 20, 2001. As with Teva's ANDA, OGD received for substantive review the November 2001 ANDA referencing Risperdal tablets with a patent certification only to the '663 patent.

In summary, at the time Teva submitted its ANDA, the electronic Orange Book contained the most current information regarding patents listed for Risperdal tablets. Your assertion that the delisting of the '952 patent did not become effective until publication of the 2002 annual edition of the Orange Book is without merit.

   B.    Patent Certification Obligations for Receipt of ANDAs

You contend that Teva was required to provide a certification to the '952 patent in its submission of an ANDA for risperidone tablets on August 28, 2001, because "where a patent remains listed for a particular drug in the official Orange Book, a generic applicant has no choice but to believe that the NDA holder is continuing to assert that patent as claiming the listed drug" (Petition at 1 to 2, and 4). However, by July 20, 2001, it was publicly known from the electronic Orange Book that the NDA holder was not continuing to assert the '952 patent as claiming Risperdal tablets. As the '952 patent was no longer listed for the reference listed drug when Teva's ANDA 76-228 was submitted, a certification to the '952 patent was neither necessary nor permitted.

The Agency's regulations at 21 CFR 314.94(a)(12)(i), implementing section 505(j)(2)(A)(vii) of the Act, require that an ANDA contain a certification with respect to each patent that "claims the reference listed drug or that claims a use of such listed drug for which the applicant is seeking approval under section 505(j) of the act and for which information is required to be filed under section 505(b) and (c) of the act and [21 CFR] 314.53." Patent information for approved drug products changes with some frequency as a result of requests by NDA holders to list newly issued patents or delist patents for their products in accordance with their statutory obligations

---

[13] FDA's database protocols and scripts have changed over time.

under section 505(b) and (c) of the Act. As a result, OGD's filing review of ANDAs routinely includes a determination of whether the patent certifications contained in the ANDA correspond to the patents actually listed for the reference listed drug, as assessed by the most current patent information the Agency has received. OGD does not rely solely on the applicant's representation that the ANDA contains the required patent certifications; OGD conducts an independent review of the patent information for the reference listed drug that FDA has received from the NDA holder.[14] The '952 patent was delisted for Risperdal tablets before any applicant, including Teva, submitted an ANDA referencing that drug. Accordingly, Teva was required to remove its certification to the '952 patent before its ANDA would be formally received by the Agency.

> ### C.    Hatch-Waxman Incentives for Developing Generic Drugs

With reference to the decision by the Circuit Court of Appeals for the District of Columbia in *Ranbaxy Laboratories Ltd. v. Leavitt*,[15] you assert that "adoption of a rule that would divest the first generic applicant of its exclusivity after that applicant has assumed the very risks 180-day exclusivity is designed to reward – the expense of formulating a non-infringing product and preparing a legal defense to a potential action for patent infringement, and then the submission of an infringing paragraph IV certification to the Agency – would fundamentally 'change the incentive structure adopted by Congress,' in clear violation of the plain text and structure of the Hatch-Waxman Act" (Petition at 2, citing 469 F.3d at 125-26). We recognize that, based on the *Ranbaxy* decision, once an ANDA applicant has submitted a paragraph IV certification to a listed patent, FDA may not remove the patent from the Orange Book until that applicant's 180-day exclusivity has expired (or the patent has expired). However, the factual predicate upon which the *Ranbaxy* decision was based is absent from Teva's risperidone ANDA. In *Ranbaxy*, the patents had been listed for Zocor (simvastatin) at the time Ranbaxy and Ivax Pharmaceuticals, Inc. (Ivax) (subsequently acquired by Teva) submitted their paragraph IV certifications and, after OGD had received their ANDAs, Ranbaxy and Ivax each provided the required notice of their paragraph IV certifications to Merck & Co., Inc., the NDA holder and patent owner, thereby subjecting themselves to the risk of patent infringement litigation. The NDA holder's request to delist the patents for simvastatin came almost 2 years *after* the Ranbaxy ANDA was submitted and almost 3 years *after* the Ivax ANDA was submitted.[16] In contrast, Johnson & Johnson requested that the '952 patent for Risperdal be delisted 2 to 4 months *before* Teva's ANDA for risperidone was submitted. Moreover, the fact of patent delisting was available in the electronic Orange Book at least 1 month before Teva submitted its application.

---

[14] Section 505(j)(2)(c)(vii) requires that an ANDA contain a certification with respect to each patent claiming the drug or use of the listed drug for which the applicant seeks approval "and for which information is required to be filed under [505(b) or (c)]." Therefore, to determine what certifications an ANDA must contain, FDA will refer to the most recent patent information submitted by the NDA holder. For example, if a new patent has been timely submitted to FDA for the reference listed drug and an ANDA does not contain a certification to the patent, OGD will contact the ANDA applicant and require that the applicant submit an appropriate patent certification. It is FDA's long-standing practice to require a certification to a patent recently submitted to FDA (if submitted within the time frame established by section 505(c) of the Act) even if the patent has not yet appeared in the Orange Book in any format.

[15] 469 F.3d 120 (D.C. Cir. 2006).

[16] See *Ranbaxy Laboratories Ltd. v. Leavitt*, 459 F.Supp.2d 1 (D.D.C. 2006).

Given that an NDA holder's request to delist a patent is implicitly an acknowledgment that the standard for patent listing set forth in section 505(b) and (c) of the Act – that a "claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture[,] use, or sale of the drug" – could no longer be met, Teva's purported paragraph IV certification to a delisted patent assumed none of the risks that 180-day exclusivity is designed to reward. By the time Teva submitted its ANDA, Johnson & Johnson had effectively informed FDA (and, with publication in the electronic Orange Book, the generic drug industry) that a claim of infringement of the '952 patent could not reasonably be brought against an ANDA applicant referencing Risperdal tablets. Because Teva withdrew its paragraph IV certification and never notified the NDA holder and patent owner that it believed the '952 patent to be invalid, unenforceable, or not infringed, Teva has not been subject to any risk of patent infringement litigation.[17]

The "reward Congress guaranteed in the Hatch-Waxman Act" (Petition at 5) is the opportunity for an ANDA applicant to compete with other ANDA applicants for the first substantially complete ANDA containing a paragraph IV certification to a listed patent for the reference listed drug. The uncertainties associated with this "guarantee" are encountered by all ANDA applicants – i.e., another applicant may be the "first applicant," thereby blocking a competitor from marketing for 180 days following its approval; the patent may be held to be valid and enforceable (as was the '663 patent listed for Risperdal); the patent that is the subject of a paragraph IV certification may expire before the applicant can obtain approval of its ANDA; or a patent may be delisted before submission of an ANDA (as was the '952 patent).

III.    CONCLUSION

We have concluded that the '952 patent was delisted before Teva submitted to FDA ANDA 76-228 with a paragraph IV certification to the patent. Accordingly, we deny your request that FDA relist the '952 patent. Because the '952 patent was properly delisted and Teva's ANDA could not contain a paragraph IV certification for that patent, Teva is not eligible for 180-day exclusivity for ANDA 76-228.

Sincerely,

Janet Woodcock, M.D.
Acting Director
Center for Drug Evaluation and Research

---

[17] To the extent that Teva complains that it has gone to the expense of formulating a non-infringing product, this expense is borne by any ANDA applicant that seeks to market its proposed generic product before expiration of a valid and enforceable patent, irrespective of whether the patent is listed in the Orange Book. Indeed, in the preamble to our 1994 final rule on patent and exclusivity provisions, we noted: "FDA, however, believes it would be prudent for [ANDA] applicants to conduct patent searches if possible. A patent search could reveal the existence of an unlisted, but valid, patent and thus prevent an unnecessary expenditure of resources by applicants and FDA on a product that might not be marketable" (see "Abbreviated New Drug Application Regulations; Patent and Exclusivity Provisions, Part II; Final Rule" (59 FR 50338 at 50346; October 3, 1994).

1

**Patent and Exclusivity Search Results from query on 020272 001.**

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 001 | | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

**Thank you for searching the** Electronic Orange Book

**Patent and Exclusivity Terms**

**Return to Electronic Orange Book Home Page**

**2**

# Electronic Orange Book Query

**Query by Active Ingredient:**

| risperidone | (Type in part or all of name)

Select the list you would like to search:

- ⦿ Rx (Prescription Drug Products)
- ○ OTC (Over-the-Counter Drug Products)
- ○ Disc (Discontinued Drug Products)

 

Return to the Electronic Orange Book Home Page

**Active Ingredient Search Results from "Rx" table for query on "risperidone."**

| Appl No | TE Code | RLD | Active Ingredient | Dosage Form; Route | Strength | Proprietary Name | Applicant |
|---|---|---|---|---|---|---|---|
| 020588 | | Yes | RISPERIDONE | Solution; Oral | 1MG/ML | RISPERDAL | JANSSEN |
| 020272 | | No | RISPERIDONE | Tablet; Oral | 0.25MG | RISPERDAL | JANSSEN |
| 020272 | | No | RISPERIDONE | Tablet; Oral | 0.5MG | RISPERDAL | JANSSEN |
| 020272 | | Yes | RISPERIDONE | Tablet; Oral | 1MG | RISPERDAL | JANSSEN |
| 020272 | | No | RISPERIDONE | Tablet; Oral | 2MG | RISPERDAL | JANSSEN |
| 020272 | | No | RISPERIDONE | Tablet; Oral | 3MG | RISPERDAL | JANSSEN |
| 020272 | | No | RISPERIDONE | Tablet; Oral | 4MG | RISPERDAL | JANSSEN |

**Thank you for searching the** Electronic Orange Book

**Return to Electronic Orange Book Home Page**

Active Ingredient:     RISPERIDONE
Dosage Form;Route:     Tablet; Oral
Proprietary Name:     RISPERDAL
Applicant:     JANSSEN
Strength:     1MG
Application Number:     020272
Product Number:     001
Approval Date:     Dec 29, 1993
Reference Listed Drug     Yes
RX/OTC/DISCN:     RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:     RISPERIDONE
Dosage Form;Route:     Tablet; Oral
Proprietary Name:     RISPERDAL
Applicant:     JANSSEN
Strength:     2MG
Application Number:     020272
Product Number:     002
Approval Date:     Dec 29, 1993
Reference Listed Drug     No
RX/OTC/DISCN:     RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:     RISPERIDONE
Dosage Form;Route:     Tablet; Oral
Proprietary Name:     RISPERDAL
Applicant:     JANSSEN
Strength:     3MG
Application Number:     020272
Product Number:     003
Approval Date:     Dec 29, 1993
Reference Listed Drug     No
RX/OTC/DISCN:     RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:     RISPERIDONE
Dosage Form;Route:     Tablet; Oral
Proprietary Name:     RISPERDAL
Applicant:     JANSSEN

Strength:                              4MG
Application Number:                    020272
Product Number:                        004
Approval Date:                         Dec 29, 1993
Reference Listed Drug                  No
RX/OTC/DISCN:                          RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:                     RISPERIDONE
Dosage Form;Route:                     Tablet; Oral
Proprietary Name:                      RISPERDAL
Applicant:                             JANSSEN
Strength:                              0.5MG
Application Number:                    020272
Product Number:                        007
Approval Date:                         Jan 27, 1999
Reference Listed Drug                  No
RX/OTC/DISCN:                          RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

Active Ingredient:                     RISPERIDONE
Dosage Form;Route:                     Tablet; Oral
Proprietary Name:                      RISPERDAL
Applicant:                             JANSSEN
Strength:                              0.25MG
Application Number:                    020272
Product Number:                        008
Approval Date:                         May 10, 1999
Reference Listed Drug                  No
RX/OTC/DISCN:                          RX
TE Code:
Patent and Exclusivity Info for this product: Click Here

---

## Thank you for searching the Electronic Orange Book!

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results from query on 020272 001.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 001     | 4804663   | DEC 29,2007       | U-90     |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

**Patent and Exclusivity Search Results from query on 020272 002.**

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 | 002 | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

Thank you for searching the Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

**Patent and Exclusivity Search Results from query on 020272 003.**

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 003     | 4804663   | DEC 29,2007       | U-90     |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results from query on 020272 004.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---|---|---|---|---|
| 020272 | 004 | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

**Patent and Exclusivity Search Results from query on 020272 007.**

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 007     | 4804663   | DEC 29,2007       | U-90     |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

Patent and Exclusivity Search Results from query on 020272 008.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272 | 008 | 4804663 | DEC 29,2007 | U-90 |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

---

**Thank you for searching the** Electronic Orange Book

Patent and Exclusivity Terms

Return to Electronic Orange Book Home Page

**3**

# Electronic Orange Book

## Approved Drug Products

with
**Therapeutic Equivalence Evaluations**

**Current through July 2001**

**Preface**

**FAQ**

**Search by Active Ingredient**    **Search by Applicant Holder**

**Search by Proprietary Name**    **Search by Application Number**

**The products in this list have been approved under section 505 of the Federal Food, Drug, and Cosmetic Act.**

Drug questions email: DRUGINFO@CDER.FDA.GOV

**U.S Department of Health and Human Services**
**Public Health Service**
**Food and Drug Administration**
**Center for Drug Evaluation and Research**
**Office of Information Technology**
**Division of Data Management and Services**

Updated: October 19, 2001

Active Ingredient Detail Record Search

**Search results from the "Rx" table for query on "020272."**

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 1MG |
| Application Number: | 020272 |
| Product Number: | 001 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | Yes |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 2MG |
| Application Number: | 020272 |
| Product Number: | 002 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 3MG |
| Application Number: | 020272 |
| Product Number: | 003 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |

Patent and Exclusivity Info for this product: Click Here

Active Ingredient Detail Record Search

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 4MG |
| Application Number: | 020272 |
| Product Number: | 004 |
| Approval Date: | DEC 29, 1993 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |
| Patent and Exclusivity Info for this product: | Click Here |

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 0.5MG |
| Application Number: | 020272 |
| Product Number: | 007 |
| Approval Date: | JAN 27, 1999 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |
| Patent and Exclusivity Info for this product: | Click Here |

| | |
|---|---|
| Active Ingredient: | RISPERIDONE |
| Dosage Form;Route: | Tablet; Oral |
| Proprietary Name: | RISPERDAL |
| Applicant: | JANSSEN |
| Strength: | 0.25MG |
| Application Number: | 020272 |
| Product Number: | 008 |
| Approval Date: | MAY 10, 1999 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | |
| Patent and Exclusivity Info for this product: | Click Here |

Patent and Exclusivity Search Results

Patent and Exclusivity Search Results from query on 020272 001.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Use Code |
|---------|---------|-----------|-------------------|----------|
| 020272  | 001     | 4804663   | DEC               | U-90     |

## Exclusivity Data

**There is no unexpired exclusivity for this product.**

Thank you for searching the Electronic Orange Book

**Patent and Exclusivity Terms**

**Return to Electronic Orange Book Home Page**




# APPROVED DRUG PRODUCTS

WITH
THERAPEUTIC EQUIVALENCE EVALUATIONS

21ST EDITION

THE PRODUCTS IN THIS LIST HAVE BEEN APPROVED UNDER
SECTION 505 OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
PUBLIC HEALTH SERVICE
FOOD AND DRUG ADMINISTRATION
CENTER FOR DRUG EVALUATION AND RESEARCH
OFFICE OF INFORMATION TECHNOLOGY
DIVISION OF DATA MANAGEMENT AND SERVICES

2001

Kirkland & Ellis Library
5 0628 0108 4303 2

# PATENT AND EXCLUSIVITY INFORMATION ADDENDUM

This *Addendum* identifies drugs that qualify under the Drug Price Competition and Patent Term Restoration Act (1984 Amendments) for periods of exclusivity, during which abbreviated new drug applications (ANDAs) and applications described in Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (the Act) for those drug products may, in some instances, not be submitted or made effective as described below, and provides patent information concerning the listed drug products. Those drugs that have qualified for Orphan Drug Exclusivity pursuant to Section 527 of the Act and those drugs that have qualified for Pediatric Exclusivity pursuant to Section 505A are also included in this *Addendum*. This section is arranged in alphabetical order by active ingredient name. For those drug products with multiple active ingredients, only the first active ingredient (in alphabetical order) will appear. For an explanation of the codes used in the *Addendum*, see the *Patent and Exclusivity Terms* page. Exclusivity prevents the submission or effective approval of ANDAs or applications described in Section 505(b)(2) of the Act. It does not prevent the submission or approval of a second full NDA. Applications qualifying for periods of exclusivity are:

(1) A new drug application approved after September 24, 1984, for a drug product all active ingredients (including any ester or salt of the active ingredient) of which had never been approved in any other new drug application under Section 505 (b) (2) of the Act. No subsequent ANDA or application described in Section 505(b)(2) of the Act for the same drug may be *submitted* for a period of *five years* from the date of approval of the original application, except that such an application may be *submitted* after *four years* if it contains a certification that a patent claiming the drug is invalid or will not be infringed by the product for which approval is sought.

(2) A new drug application approved after September 24, 1984, for a drug product containing an active ingredient (including any ester or salt of that active ingredient) that has been approved in an earlier new drug application and that includes reports of new clinical investigations (other than bioavailability studies). Such investigations must have been conducted or sponsored by the applicant and must have been essential to approval of the application. If these requirements are met, the approval of a subsequent ANDA or an application described in Section 505(b)(2) of the Act may not be *made effective* for the same drug or use, if for a new indication, before the expiration of *three years* from the date of approval of the original application. If an applicant has exclusivity for a new use or indication, this does not preclude the approval of an ANDA application or 505(b)(2) application for the drug product with indications not covered by the exclusivity.

(3) A supplement to a new drug application for a drug containing a previously approved active ingredient (including any ester or salt of the active ingredient) approved after September 24, 1984, that contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the supplement and conducted or sponsored by the applicant. The approval of a subsequent application for a change approved in the supplement may not be *made effective* for *three years* from the date of approval of the original supplement.

The Act requires that patent information must now be filed with all newly submitted Section 505 drug applications, and that no NDA may be approved after September 24, 1984, without the submission of pertinent patent information to the Agency. The patent numbers and the expiration dates of appropriate patents claiming drug products that are the subject of approved applications will be published in this *Addendum* or in the monthly Cumulative Supplement to this publication. Patent information on unapproved applications or on patents beyond the scope of the Act (i.e., process or manufacturing patents) will not be published.

The patents that FDA regards as covered by the statutory provisions for submission of patent information are: patents that claim the active ingredient or ingredients; drug product patents, which include formulation/composition patents; and use patents for a particular approved indication or method of using the product. NDA holders or applicants amending or supplementing applications with formulation/composition patent information are asked to declare that the patent(s) is appropriate for publication and refers to an approved product or one for which approval is being sought. The Agency asks all applicants or application holders with use patents to provide information as to the approved indications or uses covered by such patents. This information will be included in the Cumulative Supplement to the List as it becomes available.

Since all parts of this publication are subject to changes, additions, or deletions, the *Addendum* must be used in conjunction with the most current Cumulative Supplement.

## PRESCRIPTION AND OTC DRUG PRODUCT PATENT AND EXCLUSIVITY DATA

ADA57

| APPL/PROD NUMBER | INGREDIENT NAME/ TRADE NAME | PATENT NUMBER | PATENT EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020741 003 | REPAGLINIDE/PRANDIN | 5216167 | OCT 10, 2006 | | NCE | DEC 22, 2002 |
| | | 5312924 | OCT 10, 2006 | U-214 | | |
| | | 4873080 | OCT 10, 2006 | | | |
| 020903 001 | RIBAVIRIN/REBETOL | 5767097 | JAN 23, 2016 | U-235 | NP | JUN 03, 2001 |
| | | 5914128 | JAN 23, 2016 | | I-249 | JUN 09, 2001 |
| 021024 001 | RIFAPENTINE/PRIFTIN | 6051252 | DEC 22, 2017 | | | |
| | | 4862214 | JUL 22, 2008 | U-100 | ODE | JUN 22, 2003 |
| 020599 001 | RILUZOLE/RILUTEK | | | | ODE | DEC 12, 2002 |
| 020474 001 | RIMEXOLONE/VEXOL | | | | NCE | JUN 22, 2005 |
| 020835 001 | RISEDRONATE SODIUM/ACTONEL | 5583122 | DEC 10, 2013 | U-222 | I-292 | APR 14, 2003 |
| 020835 002 | RISEDRONATE SODIUM/ACTONEL | 6095342 | MAR 12, 2017 | | I-291 | APR 14, 2003 |
| | | 6165513 | JUN 10, 2018 | | I-290 | APR 14, 2003 |
| | | | | | I-293 | NOV 22, 2003 |
| | | | | | NCE | MAR 27, 2003 |
| | | | | | I-292 | APR 14, 2003 |
| | | | | | I-291 | APR 14, 2003 |
| | | | | | I-290 | APR 14, 2003 |
| 020272 001 | RISPERIDONE/RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 002 | RISPERIDONE/RISPERDAL | 5158952 | OCT 27, 2009 | U-90 | | |
| 020272 003 | RISPERIDONE/RISPERDAL | 5559952 | DEC 29, 2007 | U-90 | | |
| 020272 004 | RISPERIDONE/RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 005 | RISPERIDONE/RISPERDAL | 5158952 | OCT 27, 2009 | U-90 | | |
| 020272 007 | RISPERIDONE/RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 008 | RISPERIDONE/RISPERDAL | 5158952 | OCT 27, 2009 | U-90 | | |
| 020588 001 | RISPERIDONE/RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| | | 5158952 | OCT 27, 2009 | U-90 | | |
| 020659 001 | RITONAVIR/NORVIR | 5541206 | JAN 28, 2014 | U-190 | NCE | MAR 01, 2001 |
| | | 5484801 | JUL 30, 2013 | U-140 | | |
| | | 5846987 | JUN 26, 2016 | U-190 | | |
| | | 6037157 | JUN 26, 2016 | | | |
| | | 5674882 | DEC 29, 2012 | | | |
| | | 5886036 | DEC 07, 2014 | | | |
| | | 5635523 | JUN 07, 2014 | | | |
| | | 5541206 | JAN 28, 2014 | | | |
| 020680 001 | RITONAVIR/NORVIR | 5648497 | JUL 15, 2014 | U-190 | NCE | MAR 01, 2001 |
| | | 5846987 | DEC 29, 2012 | U-140 | | |
| | | 5948436 | SEP 13, 2013 | U-190 | | |

Kirkland & Ellis
5 0628 01112581 9

CUMULATIVE
SUPPLEMENT 8
AUGUST 2001



# APPROVED DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

**Department of Health and Human Services**
Public Health Service
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

2001

RM
301.45
.A66
21ST
Supp. 8
Aug.
2001

**APPROVED DRUG PRODUCTS**
with
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 8**
**AUGUST 2001**

**1.0 INTRODUCTION**

1.1  HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.

## 1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved  when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name.  Therefore, the cumulation of these transfers and name changes will be identified in this section only.  Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]).  When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name.  Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor  will  the cumulation of these name changes appear in this section

<u>APPLICANT NAME CHANGES</u>

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC<br>(BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| CAMALL CO INC<br>(CAMALL) | ABC HOLDING CORPORATION<br>(ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO<br>(CIBA) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| CIBA VISION OPHTHALMICS<br>(CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| KNOLL PHARMACEUTICAL COMPANY<br>(KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS<br>(ABBOTT) |
| MARSAM PHARMACEUTICALS INC<br>(MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC<br>(MARSAM PHARMS) |
| MEDEVA AMERICAS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC<br>(MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC<br>(CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC<br>(MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC<br>(CELLTECH MFG) |
| NOVOPHARM LTD<br>(NOVOPHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM PHARMACEUTICAL CO<br>(NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM NC INC<br>(NOVOPHARM NC) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| OHMEDA PHARMACEUTICAL PRODUCTS DIV<br>(OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |

APPLICANT NAME CHANGES

FORMER APPLICANT NAME
(FORMER ABBREVIATED NAME)

NEW APPLICANT NAME
(NEW ABBREVIATED NAME)

ROBERTS LABORATORIES INC
(ROBERTS LABS)

SHIRE PHARMACEUTICAL DEVELOPMENT INC
(SHIRE PHARM)

ROBERTS PHARMACEUTICAL CORP
(ROBERTS PHARM)

SHIRE PHARMACEUTICAL DEVELOPMENT INC
(SHIRE PHARM)

## 1.3 AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800.  The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number.  Product search categories are: prescription, over-the-counter, discontinued drugs.  There are links to patent and exclusivity information that may be applicable to each product.   The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at
http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm.  Changes to the annual edition are listed separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm.  The drug product text files are zipped into zipobtxt.exe. The files are updated concurrently with the publication of the annual edition or monthly cumulative supplements.  Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.   It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.  To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-13

>ADD>

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 019810 003 | OMEPRAZOLE;PRILOSEC | 6150380 | NOV 10, 2018 | | I-229 | JUN 29, 2001 |
| | | 6147103 | OCT 09, 2018 | | PED | DEC 29, 2001 |
| | | 6162613 | NOV 10, 2018 | | | |
| | | 6191148 | OCT 09, 2018 | | | |
| | | 4255431*PED | JAN 30, 2002 | U-108 | | |
| | | 4636499*PED | OCT 05, 2007 | | | |
| | | 4786505*PED | OCT 20, 2007 | | | |
| | | 4853230*PED | OCT 20, 2007 | | | |
| | | 5093342*PED | AUG 02, 2010 | U-108 | | |
| | | 5599794*PED | AUG 04, 2014 | U-108 | | |
| | | 5629305*PED | AUG 04, 2014 | U-166 | | |
| | | 6147103*PED | APR 09, 2019 | U-166 | | |
| | | 6150380*PED | MAY 10, 2019 | U-166 | | |
| | | 6162613*PED | APR 09, 2019 | U-188 | | |
| | | 6191148*PED | APR 09, 2019 | U-188 | | |
| 021246 001 | OSELTAMIVIR PHOSPHATE;TAMIFLU | 4508905 | APR 02, 2002 | | I-317 | NOV 17, 2003 |
| | | 5763483 | DEC 27, 2016 | I-376 | NCE | DEC 14, 2003 |
| | | 5866601 | FEB 02, 2016 | | | OCT 27, 2004 |
| | | 5952375 | FEB 02, 2016 | | | |
| 020897 001 | OXYBUTYNIN CHLORIDE;DITROPAN XL | 6124355 | MAY 22, 2015 | U-378 | | |
| 020897 002 | OXYBUTYNIN CHLORIDE;DITROPAN XL | 6124355 | MAY 22, 2015 | U-378 | | |
| | | 6262115 | MAY 22, 2015 | U-393 | | |
| 020897 003 | OXYBUTYNIN CHLORIDE;DITROPAN XL | 6124355 | MAY 22, 2015 | U-378 | | |
| | | 6262115 | MAY 22, 2015 | U-393 | | |
| 020553 004 | OXYCODONE HYDROCHLORIDE;OXYCONTIN | 4861598 | AUG 29, 2006 | U-378 | | |
| | | 5266331 | NOV 13, 2007 | U-393 | | |
| | | 5549912 | FEB 05, 2008 | | | |
| 020553 005 | OXYCODONE HYDROCHLORIDE;OXYCONTIN | 4861598 | AUG 29, 2006 | | | |
| | | 4970075 | NOV 13, 2007 | | | |
| | | 5266331 | FEB 05, 2008 | | | |
| 020262 001 | PACLITAXEL;TAXOL | 4758579 | JUL 19, 2005 | U-380 | D-380 | AUG 20, 2004 |
| 020036 001 | PAMIDRONATE DISODIUM;AREDIA | 5262331 | FEB 05, 2008 | | D-68 | AUG 20, 2004 |
| 020036 003 | PAMIDRONATE DISODIUM;AREDIA | 5508042 | FEB 05, 2008 | | D-68 | AUG 20, 2004 |
| 020036 004 | PAMIDRONATE DISODIUM;AREDIA | 5549912 | APR 16, 2008 | | I-330 | JUN 12, 2004 |
| 020987 001 | PANTOPRAZOLE SODIUM;PROTONIX | 5556296 | FEB 05, 2008 | | NDP | MAR 22, 2004 |
| 020988 001 | PANTOPRAZOLE SODIUM;PROTONIX IV | 6096331 | FEB 22, 2011 | | NCE | FEB 02, 2005 |
| | | 6150398 | MAY 08, 2011 | | I-337 | OCT 19, 2004 |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-14

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020031 001 | PAROXETINE HYDROCHLORIDE;PAXIL | 4721723 | DEC 29, 2006 | | I-326 | APR 13, 2004 |
| 020031 002 | PAROXETINE HYDROCHLORIDE;PAXIL | 4839177 | JUN 13, 2006 | | I-326 | APR 13, 2004 |
| 020031 003 | PAROXETINE HYDROCHLORIDE;PAXIL | 5422123 | JAN 06, 2012 | | I-326 | APR 13, 2004 |
| 020031 004 | PAROXETINE HYDROCHLORIDE;PAXIL | 5789449 | MAY 19, 2009 | | I-226 | APR 13, 2004 |
| 020031 005 | PAROXETINE HYDROCHLORIDE;PAXIL | 5872132 | MAY 19, 2015 | | I-226 | APR 13, 2004 |
| 020936 003 | PAROXETINE HYDROCHLORIDE;PAXIL CR | 5900423 | MAY 19, 2015 | | I-326 | APR 13, 2004 |
| | | 6063927 | APR 23, 2019 | U-286 | | |
| | | 6080759 | MAY 19, 2015 | U-286 | | |
| | | 6121291 | APR 05, 2015 | | | |
| | | 6133289 | JAN 15, 2018 | | | |
| | | 6172233 | MAR 17, 2017 | | | |
| 021064 001 | PERFLUTREN;DEFINITY | 5527521 | APR 05, 2011 | U-286 | NCE | JUL 31, 2006 |
| | | 5547656 | APR 05, 2011 | U-286 | | |
| | | 5567414 | JUL 20, 2010 | | | |
| | | 4688812 | MAR 25, 2011 | | | |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 5047552 | SEP 03, 2008 | U-385 | | |
| 019627 002 | PROPOFOL;DIPRIVAN | 5035899 | APR 04, 2009 | U-385 | | |
| 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 4818068 | APR 03, 2002 | | | |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 5416074 | OCT 19, 2008 | | I-322 | FEB 20, 2004 |
| | | 5453443 | OCT 19, 2008 | | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | MAR 29, 2008 | | | |
| 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | U-235 | | |
| 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | U-235 | | |
| 020741 003 | REPAGLINIDE;PRANDIN | 6143769 | JAN 23, 2016 | U-235 | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | MAR 14, 2009 | U-375 | PED | JUN 09, 2002 |
| | | 5914128 | DEC 22, 2017 | U-377 | | |
| | | 6051252 | DEC 22, 2017 | | | |
| | | 6063772 | SEP 21, 2017 | | | |
| | | 6172046 | JAN 23, 2016 | | | |
| | | 5767097*PED | JUL 23, 2016 | | | |
| | | 5914128*PED | JUN 22, 2018 | | | |
| | | 6063772*PED | JUN 22, 2018 | | | |
| | | 6172046*PED | MAR 21, 2018 | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6150337 | NOV 21, 2016 | U-375 | | |
| 020945 001 | RITONAVIR;NORVIR | 6223233 | NOV 21, 2017 | U-377 | PED | DEC 03, 2001 |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | NOV 07, 2017 | U-375 | | |
| | | 5691374 | NOV 25, 2017 | U-400 | | |
| | | 6239173 | JUN 24, 2013 | U-266 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-15

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 021042 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | | | |
| | | 5691374 | NOV 25, 2017 | | | |
| 021042 003 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | U-266 | | |
| 021052 001 | ROFECOXIB;VIOXX | 6239173 | JUN 24, 2013 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-266 | | |
| | | 5691374 | NOV 25, 2017 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| | | 6231173 | JUN 24, 2013 | | | |
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | 5290815 | MAR 01, 2011 | | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5196438 | NOV 19, 2010 | U-386 | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 022990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020478 001 | SEVOFLURANE;ULTANE | | | | | |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| >ADD> 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | 6288127 | JAN 27, 2017 | | D-15 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| >ADD> 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| >ADD> 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5616346 | MAY 18, 2013 | U-359 | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| 020280 006 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 001 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |
| >ADD> 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | | | | I-334 | JUL 25, 2004 |
| | | | | | ODE | JUL 25, 2008 |

Kirkland & Ellis
5 0628 01112928 2

# CUMULATIVE
# SUPPLEMENT 10
### OCTOBER 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

## 21ST EDITION

### Department of Health and Human Services
#### Food and Drug Administration
#### Center for Drug Evaluation and Research
#### Office of Information Technology
#### Division of Data Management and Services

#### 2001

RM
301.45
.A66
21ST
Supp. 10
Oct.
2001

**APPROVED DRUG PRODUCTS**
with
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 10**
**OCTOBER 2001**

**1.0 INTRODUCTION**

1.1   HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.


1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved  when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name.  Therefore, the cumulation of these transfers and name changes will be identified in this section only.  Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards  (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]).  When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name.  Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor  will  the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC<br>(BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| CAMALL CO INC<br>(CAMALL) | ABC HOLDING CORPORATION<br>(ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO<br>(CIBA) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| CIBA VISION OPHTHALMICS<br>(CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| DEY LABORATORIES INC<br>(DEY) | DEY LP<br>(DEY) |
| KNOLL PHARMACEUTICAL COMPANY<br>(KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS<br>(ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION<br>(LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC<br>(NEW RIVER) |
| MARSAM PHARMACEUTICALS INC<br>(MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC<br>(MARSAM PHARMS) |
| MEDEVA AMERICAS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC<br>(MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC<br>(CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC<br>(MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC<br>(CELLTECH MFG) |
| NOVOPHARM LTD<br>(NOVOPHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM PHARMACEUTICAL CO<br>(NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM NC INC<br>(NOVOPHARM NC) | TEVA PHARMACEUTICALS USA<br>(TEVA) |

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| OHMEDA PHARMACEUTICAL PRODUCTS DIV (OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |
| ROBERTS LABORATORIES INC (ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ROBERTS PHARMACEUTICAL CORP (ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ZENITH GOLDLINE (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |
| ZENITH GOLDLINE PHARMACEUTICALS INC (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |

## 1.3  AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800. The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number. Product search categories are: prescription, over-the-counter, discontinued drugs. There are links to patent and exclusivity information that may be applicable to each product. The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at
http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm.  Changes to the annual edition are listed
separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm.  The drug product text files are zipped into zipobtxt.exe.
The files are updated concurrently with the publication of the annual edition or monthly cumulative
supplements.  Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.   It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.  To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-18

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 075290 003 | PAMIDRONATE DISODIUM;PAMIDRONATE DISODIUM | | | | PC | MAY 05, 2002 |
| 020987 001 | PANTOPRAZOLE SODIUM;PROTONIX | 4758579 | JUL 19, 2005 | | I-330 | JUN 12, 2004 |
| | | | | | NDF | MAR 22, 2004 |
| | | | | | NCE | FEB 02, 2005 |
| 020988 001 | PANTOPRAZOLE SODIUM;PROTONIX IV | | | | I-337 | OCT 19, 2004 |
| 020819 001 | PARICALCITOL, ZEMPLAR | 5246925 | APR 17, 2012 | U-314 | I-326 | APR 13, 2004 |
| 020031 001 | PAROXETINE HYDROCHLORIDE;PAXIL | 4721723 | DEC 29, 2006 | | I-326 | APR 13, 2004 |
| 020031 002 | PAROXETINE HYDROCHLORIDE;PAXIL | 4839177 | JUN 13, 2006 | | I-326 | APR 13, 2004 |
| 020031 003 | PAROXETINE HYDROCHLORIDE;PAXIL | 5422123 | JUN 06, 2012 | | I-326 | APR 13, 2004 |
| 020031 004 | PAROXETINE HYDROCHLORIDE;PAXIL | 5789449 | APR 06, 2009 | | I-326 | APR 13, 2004 |
| 020031 005 | PAROXETINE HYDROCHLORIDE;PAXIL | 5872132 | MAY 19, 2015 | | I-326 | APR 13, 2004 |
| | | 5900423 | MAY 19, 2015 | | | |
| | | 6063927 | MAY 19, 2015 | | | |
| 020936 003 | PAROXETINE HYDROCHLORIDE;PAXIL CR | 6080759 | APR 23, 2017 | | | |
| | | 6121291 | MAR 17, 2015 | | | |
| | | 6133289 | JAN 15, 2018 | | | |
| | | 6172233 | MAY 15, 2018 | | | |
| 021064 001 | PERFLUTREN;DEFINITY | 5527521 | APR 05, 2011 | U-286 | NCE | JUL 31, 2006 |
| | | 5547656 | APR 05, 2011 | U-286 | | |
| | | 5769080 | JUL 20, 2010 | | | |
| 021073 001 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6211243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | U-419 | | |
| 021073 002 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6211243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | U-419 | | |
| 021073 003 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6211243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150383 | JUN 19, 2016 | U-418 | | |
| | | 6150384 | JUN 19, 2016 | U-419 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-19

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| >ADD> 074726 001 | POTASSIUM CHLORIDE;KLOR-CON M20 | | | | PC | FEB 28, 2002 |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | | | | I-322 | FEB 20, 2004 |
| 019627 002 | PROPOFOL;DIPRIVAN | 4886812 | MAR 25, 2011 | | PED | AUG 20, 2004 |
| >ADD> 020639 001 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 002 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 003 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 004 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020639 005 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| >ADD> 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 5045552 | SEP 03, 2008 | U-385 | | |
| | | 5035899 | SEP 03, 2008 | U-385 | | |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 4418068 | APR 04, 2009 | U-385 | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 24, 2009 | | | |
| 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 24, 2009 | | | |
| 020741 003 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | |
| | | 6143769 | MAR 14, 2009 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | JAN 23, 2016 | U-235 | PED | JUN 09, 2002 |
| | | 5914128 | DEC 22, 2017 | U-235 | PED | DEC 03, 2001 |
| | | 6063772 | JAN 23, 2016 | U-235 | | |
| | | 6051252 | DEC 22, 2016 | U-235 | | |
| | | 6172046 | SEP 23, 2016 | U-235 | | |
| | | 5767097*PED | JUL 23, 2017 | U-235 | | |
| | | 5914128*PED | JUN 22, 2018 | U-235 | | |
| | | 6063772*PED | JUN 22, 2018 | U-235 | | |
| | | 6051252*PED | MAR 21, 2017 | U-235 | | |
| | | 6172046*PED | NOV 07, 2017 | U-235 | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6310077 | JUN 24, 2013 | | | |
| 020945 001 | RITONAVIR;NORVIR | 6232333 | JUN 25, 2017 | | | |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-375 | | |
| | | 5691374 | JUN 24, 2013 | U-377 | | |
| | | 6291173 | JUN 24, 2013 | U-400 | | |
| 021042 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-375 | | |
| | | 5691374 | NOV 25, 2017 | U-377 | | |
| | | 6291173 | JUN 24, 2013 | U-266 | | |
| 021042 003 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-375 | | |
| | | 5691374 | JUN 24, 2013 | U-377 | | |
| | | 6291173 | JUN 24, 2013 | U-266 | | |
| 021052 001 | ROSIGLITAZONE MALEATE;AVANDIA | 5749995 | NOV 25, 2017 | U-266 | | |
| 021052 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6239173 | JUN 24, 2013 | U-420 | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6280095 | FEB 11, 2017 | U-420 | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-20

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | 5290815 | MAR 01, 2011 | U-386 | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5196438 | NOV 19, 2010 | | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 024478 001 | SEVOFLURANE;ULTANE | | | | | |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | 6288127 | JAN 27, 2017 | | D-65 | FEB 16, 2004 |
| | | 6288127*PED | JUL 27, 2018 | | M-9 | FEB 16, 2004 |
| 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5616346 | MAY 18, 2013 | U-359 | | |
| 020280 006 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 001 | SOMATROPIN RECOMBINANT;GENOTROPIN | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2004 |
| 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2004 |
| 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2004 |
| 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2004 |
| 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2004 |
| 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2004 |
| 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 012 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 013 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 021151 001 | SOTALOL HYDROCHLORIDE;BETAPACE AF | | | | NP | FEB 22, 2003 |
| | | | | | PED | AUG 22, 2003 |

Kirkland & Ellis Library

5 0628 01116527 8



# CUMULATIVE
# SUPPLEMENT 11
## NOVEMBER 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

## 21ST EDITION

**Department of Health and Human Services**
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

2001

RM
301.45
.A66
21ST
Supp. 11
Nov.
2001

**APPROVED DRUG PRODUCTS**
**with**
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 11**
**NOVEMBER 2001**

**1.0  INTRODUCTION**

1.1  HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.

## 1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name.  Therefore, the cumulation of these transfers and name changes will be identified in this section only.  Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards  (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]).  When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name.  Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor  will  the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC (BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |
| CAMALL CO INC (CAMALL) | ABC HOLDING CORPORATION (ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO (CIBA) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| CIBA VISION OPHTHALMICS (CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| DEY LABORATORIES INC (DEY) | DEY LP (DEY) |
| KNOLL PHARMACEUTICAL COMPANY (KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS (ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION (LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC (NEW RIVER) |
| MARSAM PHARMACEUTICALS INC (MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC (MARSAM PHARMS) |
| MEDEVA AMERICAS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC (MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC (CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC (MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC (CELLTECH MFG) |
| NOVOPHARM LTD (NOVOPHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM PHARMACEUTICAL CO (NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM NC INC (NOVOPHARM NC) | TEVA PHARMACEUTICALS USA (TEVA) |

<u>APPLICANT NAME CHANGES</u>

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| OHMEDA PHARMACEUTICAL PRODUCTS DIV<br>(OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| ROBERTS LABORATORIES INC<br>(ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC<br>(SHIRE PHARM) |
| ROBERTS PHARMACEUTICAL CORP<br>(ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC<br>(SHIRE PHARM) |
| ZENITH GOLDLINE<br>(ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC<br>(IVAX PHARMS) |
| ZENITH GOLDLINE PHARMACEUTICALS INC<br>(ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC<br>(IVAX PHARMS) |

## 1.3  AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800.  The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number.  Product search categories are: prescription, over-the-counter, discontinued drugs.  There are links to patent and exclusivity information that may be applicable to each product.  The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at
http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm.  Changes to the annual edition are listed
separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm.  The drug product text files are zipped into zipobtxt.exe.
The files are updated concurrently with the publication of the annual edition or monthly cumulative
supplements.  Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.   It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.  To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-20

| | APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|---|
| >ADD> | 021073 003 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6329404 | JUN 19, 2016 | U-430 | PC | FEB 28, 2002 |
| | | | 6211205 | JUN 19, 2016 | U-410 | | |
| | | | 6712153 | JUN 19, 2016 | U-411 | | |
| | | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | | 6166042 | JUN 19, 2016 | U-425 | | |
| | | | 6166043 | JUN 19, 2016 | U-414 | | |
| | | | 6172090 | JUN 19, 2016 | U-415 | | |
| | | | 5965584 | JUN 19, 2016 | U-416 | | |
| | | | 6150383 | JUN 19, 2016 | U-417 | | |
| | | | 6150384 | JUN 19, 2016 | U-418 | | |
| | 074726 001 | POTASSIUM CHLORIDE;KLOR-CON M20 | 4866812 | MAR 25, 2011 | | PC | |
| >ADD> | 020667 002 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | | | | | |
| | 019998 002 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | | | | | |
| >ADD> | 019898 002 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| >ADD> | 019898 003 | PRAVASTATIN SODIUM;PRAVACHOL | | | | NS | DEC 18, 2004 |
| >ADD> | 019898 004 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| >ADD> | 019898 008 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| | 019627 002 | PROPOFOL;DIPRIVAN | | | | I-322 | FEB 20, 2004 |
| | | | | | | PED | AUG 20, 2004 |
| >ADD> | 020639 001 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | D-70 | DEC 18, 2004 |
| | 020639 002 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| | 020639 003 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| | 020639 004 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| | 020639 005 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| | 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | | | | NCE | SEP 26, 2002 |
| | 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 5035899 | APR 04, 2009 | | | |
| | 019901 001 | RAMIPRIL;ALTACE | 5045552 | SEP 03, 2008 | | | |
| | 019901 001 | RAMIPRIL;ALTACE | 4418068 | APR 03, 2002 | | | |
| | 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | U-385 | | |
| | 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| | 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | U-385 | | |
| >ADD> | 019090 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| >ADD> | 019593 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| >ADD> | 019593 002 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| >ADD> | 019675 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| >ADD> | 018703 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| >ADD> | 020095 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| >ADD> | 020251 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| >ADD> | 020251 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| >ADD> | 020251 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| >ADD> | 018703 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | | | | PED | APR 29, 2003 |
| >ADD> | 020095 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | | | | PED | APR 29, 2003 |
| >ADD> | 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | PED | APR 29, 2003 |
| >ADD> | 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | PED | APR 29, 2003 |
| >ADD> | 020741 003 | REPAGLINIDE;PRANDIN | 6143769 | MAR 24, 2009 | | PED | APR 29, 2003 |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-21

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020903 001 | RIBAVIRIN;REBETOL | 6335032 | DEC 22, 2017 | | PED | JUN 09, 2002 |
| | | 6335032*PED | JUN 22, 2018 | U-235 | PED | DEC 03, 2001 |
| | | 6337090 | JUN 22, 2017 | | | |
| | | 6337090*PED | DEC 22, 2017 | U-235 | | |
| | | 5767097 | JAN 22, 2016 | | | |
| | | 5767097*PED | JUL 23, 2016 | U-375 | | |
| | | 5914128 | DEC 22, 2017 | | | |
| | | 5914128*PED | JUN 22, 2018 | U-377 | | |
| | | 6051252 | DEC 22, 2017 | | | |
| | | 6051252*PED | JUN 22, 2018 | U-235 | | |
| | | 6063772 | JAN 23, 2016 | | | |
| | | 6063772*PED | JUL 23, 2016 | U-375 | | |
| | | 6172046 | SEP 21, 2017 | | | |
| | | 6172046*PED | MAR 21, 2018 | U-377 | | |
| | | 6337090 | DEC 22, 2017 | | | |
| 020903 002 | RIBAVIRIN;REBETOL | 6337090*PED | JUN 22, 2018 | U-235 | | |
| | | 6335032 | DEC 22, 2017 | | | |
| | | 6335032*PED | JUN 22, 2018 | U-235 | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6150337 | NOV 21, 2017 | U-400 | | |
| 020945 001 | RITONAVIR;NORVIR | 6232333 | NOV 07, 2017 | | | |
| 021042 001 | ROFECOXIB;VIOXX | 6232333 | JUN 24, 2013 | | | |
| 021042 002 | ROFECOXIB;VIOXX | 5541174 | NOV 24, 2013 | U-266 | | |
| 021042 003 | ROFECOXIB;VIOXX | 5474995 | NOV 25, 2017 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| | | 6239173 | NOV 24, 2013 | | | |
| 021052 001 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 5691374 | NOV 25, 2017 | U-266 | | |
| | | 6239173 | JUN 24, 2013 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| | | 6239173 | NOV 24, 2013 | | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 5474995 | JUN 24, 2013 | | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| | | 6288095 | FEB 11, 2017 | U-420 | | |

>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>
>ADD>

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-22

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | | | | | |
| 020828 001 | SAQUINAVIR;FORTOVASE | 5296815 | MAR 01, 2011 | U-386 | M-11 | AUG 06, 2004 |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5196438 | NOV 19, 2010 | | M-11 | AUG 06, 2004 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020478 001 | SEVOFLURANE;ULTANE | | | | | |
| >ADD> 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | 6281127*PED | JUL 27, 2017 | | D-65 | FEB 16, 2004 |
| | | 6281127 | JAN 27, 2017 | | M-9 | FEB 16, 2004 |
| 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | M-9 | FEB 16, 2004 |
| 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5616346 | MAY 18, 2013 | U-359 | N-9 | FEB 16, 2004 |
| 021280 006 | SODIUM PHOSPHATE, DIBASIC;VISICOL | 5633352 | MAY 27, 2014 | | | |
| 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 001 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 6152897 | JUN 11, 2018 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 012 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| 020280 013 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | ODE | JUL 25, 2004 |
| >ADD> 019865 002 | SOTALOL HYDROCHLORIDE;BETAPACE | | | | PED | APR 01, 2005 |
| | | | | | M-13 | OCT 01, 2004 |
| >ADD> 019865 001 | SOTALOL HYDROCHLORIDE;BETAPACE | | | | PED | OCT 01, 2005 |
| | | | | | M-13 | OCT 01, 2004 |
| >ADD> 020280 013 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | ODE | JUL 25, 2008 |
| | | | | | I-334 | JUL 25, 2008 |

Kirkland & Ellis Library

5 0628 01116654 0

CUMULATIVE
SUPPLEMENT 12
DECEMBER 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

### 21ST EDITION

**Department of Health and Human Services**
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Information Technology
Division of Data Management and Services

2001

RM
301.45
.A66
21ST
Supp. 12
Dec.
2001

**APPROVED DRUG PRODUCTS**
with
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 12**
**DECEMBER 2001**

**1.0 INTRODUCTION**

1.1   HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >ADD> to the left of the line on which new information exists. The >ADD> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >D> (DELETE) to the left of the line. The information line with the >D> symbol is dropped in subsequent Cumulative Supplements for that item.

## 1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name. Therefore, the cumulation of these transfers and name changes will be identified in this section only. Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]).   When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name. Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor will the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| AMERSHAM HEALTH INC (AMERSHAM HLTH) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| BAXTER PHARMACEUTICAL PRODUCTS INC (BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |
| CAMALL CO INC (CAMALL) | ABC HOLDING CORPORATION (ABC HOLDING) |
| CHELSEA LABORATORIES INC (CHELSEA LABS) | WATSON LABORATORES INC (WATSON LAB) |
| CIBA VISION CORP DIV NOVARTIS CO (CIBA) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| CIBA VISION OPHTHALMICS (CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC (NOVARTIS) |
| DEY LABORATORIES INC (DEY) | DEY LP (DEY) |
| DUPONT MERCK PHARMACEUTICAL CO (DUPONT MERCK) | BRISTOL MYERS SQUIBB PHARMA COMPANY (BRISTOL MYERS SQUIBB) |
| DUPONT PHARMACEUTICALS CO (DUPONT PHARMA) | BRISTOL MYERS SQUIBB PHARMA COMPANY (BRISTOL MYERS SQUIBB) |
| DUPONT PHARMACEUTICALS CO PR (DUPONT PHARMA) | BRISTOL MYERS SQUIBB PHARMA COMPANY (BRISTOL MYERS SQUIBB) |
| GD SEARLE AND CO (SEARLE) | GD SEARLE LLC (GD SEALE LLC) |
| KNOLL PHARMACEUTICAL COMPANY (KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS (ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION (LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC (NEW RIVER) |

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| MARSAM PHARMACEUTICALS INC (MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC (MARSAM PHARMS) |
| MEDEVA AMERICAS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA INC (MEDEVA) | CELLTECH PHARMACEUTICALS INC (CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC (MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC (CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC (MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC (CELLTECH MFG) |
| MEDI PHYSICS AMERSHAM IMAGING (MEDI PHYSICS) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| MEDI PHYSICS INC (MEDI PHYSICS) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| NOVOPHARM LTD (NOVOPHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM PHARMACEUTICAL CO (NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA (TEVA) |
| NOVOPHARM NC INC (NOVOPHARM NC) | TEVA PHARMACEUTICALS USA (TEVA) |
| NYCOMED AMERSHAM (NYCOMED AMERSHAM) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| NYCOMED AMERSHAM PLC (NYCOMED AMERSHAM) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| NYCOMED INC (NYCOMED) | AMERSHAM HEALTH (AMERSHAM HLTH) |
| OHMEDA PHARMACEUTICAL PRODUCTS DIV ANESTHESIA & CRITICAL CARE (OHMEDA) | BAXTER HEATHCARE CORPORATION (BAXTER HLTHCARE CORP) |
| ROBERTS LABORATORIES INC (ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |

APPLICANT NAME CHANGES

FORMER APPLICANT NAME
(FORMER ABBREVIATED NAME)

NEW APPLICANT NAME
(NEW ABBREVIATED NAME)

ROBERTS PHARMACEUTICAL CORP
(ROBERTS PHARM)

SHIRE PHARMACEUTICAL DEVELOPMENT INC
(SHIRE PHARM)

ROSEMONT PHARMACEUTICAL COR
(ROSEMONT)

USL PHARMA INC
(USL PHARMA)

SEARLE PHARMACEUTICALS INC
(SEARLE)

GD SEARLE LLC
(GD SEARLE LLC)

ZENITH GOLDLINE
(ZENITH GOLDLINE)

IVAX PHARMACEUTICALS INC
(IVAX PHARMS)

ZENITH GOLDLINE PHARMACEUTICALS INC
(ZENITH GOLDLINE)

IVAX PHARMACEUTICALS INC
(IVAX PHARMS)

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-23

| APPL/PROD NUMBER | INGREDIENT NAME, TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL. USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 074726 001 | POTASSIUM CHLORIDE;KLOR-CON M20 | | | | PC | FEB 28, 2002 |
| 020667 001 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| 020667 002 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| 020667 003 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| 020667 004 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4843086 | NOV 23, 2007 | U-231 | | |
| >ADD> 020667 006 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | 4886812 | MAR 25, 2011 | U-231 | | |
| >ADD> 019898 002 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| >ADD> 019898 003 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| >ADD> 019898 004 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| >ADD> 019898 008 | PRAVASTATIN SODIUM;PRAVACHOL | | | | D-70 | DEC 18, 2004 |
| >ADD> 019627 002 | PROPOFOL;DIPRIVAN | | | | PED | AUG 20, 2004 |
| 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | | | U-385 | I-346 | FEB 12, 2005 |
| 020639 005 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | NCE | SEP 26, 2002 |
| 020639 004 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 003 | QUETIAPINE FUMARATE;SEROQUEL | 4879288 | SEP 26, 2011 | | | |
| 020639 002 | QUETIAPINE FUMARATE;SEROQUEL | 5045552 | SEP 03, 2008 | | | |
| 020639 001 | QUETIAPINE FUMARATE;SEROQUEL | 5045552 | SEP 03, 2008 | | | |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 4418068 | APR 03, 2008 | U-385 | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 013090 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 015593 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 015593 002 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 013675 001 | RANITIDINE HYDROCHLORIDE;ZANTAC | | | | PED | APR 29, 2003 |
| 018093 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020251 001 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020251 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 018703 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 150 | | | | PED | APR 29, 2003 |
| 020095 002 | RANITIDINE HYDROCHLORIDE;ZANTAC 300 | | | U-235 | PED | APR 29, 2003 |
| 020741 001 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | U-375 | PED | JUN 09, 2002 |
| 020741 002 | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | U-377 | PED | DEC 03, 2001 |
| 020741 003 | REPAGLINIDE;PRANDIN | | | U-235 | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5767097*PED | JUL 23, 2016 | U-375 | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5914128 | DEC 22, 2016 | U-377 | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6051252 | SEP 21, 2016 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6063772 | JAN 23, 2017 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6172046 | JUN 22, 2017 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6051252*PED | JUN 22, 2018 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6063772*PED | JUL 23, 2018 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6337372*PED | MAR 22, 2018 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6335032*PED | JUN 22, 2017 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 6370090 | DEC 22, 2017 | | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and FED represent Pediatric Exclusivity

A-24

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020903 002 | RIBAVIRIN;REBETOL | 6337090*PED | JUN 22, 2018 | | | |
| | | 6362032*PED | JUN 22, 2017 | | | |
| | | 6335032*PED | JUN 23, 2016 | | | |
| | | 5767097*PED | JAN 23, 2016 | U-235 | | |
| | | 5767097*PED | JUL 23, 2016 | U-235 | | |
| | | 5914128*PED | JUN 22, 2018 | | | |
| | | 5914128*PED | DEC 22, 2017 | | | |
| | | 6051252 | JAN 23, 2016 | | | |
| | | 6051252*PED | JUN 22, 2018 | U-375 | | |
| | | 6063772 | JUL 21, 2016 | | | |
| | | 6063772*PED | SEP 21, 2017 | U-377 | | |
| | | 6172046 | MAR 21, 2017 | U-377 | | |
| | | 6172046*PED | DEC 22, 2018 | | | |
| | | 6337090 | JUN 22, 2017 | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | 6150337 | NOV 21, 2017 | U-400 | | |
| 020945 001 | RITONAVIR;NORVIR | 6232333 | NOV 07, 2017 | | | |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-266 | | |
| | | 5691374 | NOV 25, 2017 | | | |
| | | 5691374 | NOV 25, 2013 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| 021042 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-266 | | |
| | | 5691374 | NOV 25, 2013 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| 021042 003 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-266 | | |
| | | 5691374 | NOV 25, 2013 | | | |
| | | 6239173 | JUN 24, 2013 | | | |
| 021052 001 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | | | |
| 021052 002 | ROFECOXIB;VIOXX | 6239173 | FEB 11, 2017 | | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 020692 001 | SALMETEROL XINAFOATE;SEREVENT | 5439173 | MAR 01, 2011 | U-386 | | |
| | | 5594603 | NOV 19, 2010 | | | |
| 020628 001 | SAQUINAVIR;FORTOVASE | 5196438 | AUG 13, 2010 | | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | DEC 30, 2005 | | I-279 | DEC 07, 2002 |
| | | 4536518 | NOV 30, 2006 | | M-11 | AUG 06, 2004 |
| | | 4962128 | NOV 02, 2010 | | PED | JUN 07, 2003 |
| | | 4962128*PED | MAY 02, 2011 | | PED | FEB 06, 2005 |
| 019839 002 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | DEC 30, 2005 | U-152 | | |
| >ADD> | | 4536518 | NOV 30, 2006 | U-152 | | |
| >ADD> | | 4962128 | NOV 02, 2010 | U-152 | | |
| >ADD> | | 5248699*PED | MAY 02, 2010 | U-152 | | |
| >ADD> | | 4536518*PED | JUN 30, 2006 | U-152 | | |
| >ADD> | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| >ADD> | | 5248699 | DEC 30, 2005 | U-12 | | |
| >ADD> | | 4536518 | NOV 30, 2006 | U-12 | | |
| >ADD> | | 4962128 | NOV 02, 2010 | U-12 | | |
| >ADD> | | 5248699*PED | MAY 02, 2010 | U-12 | I-279 | DEC 07, 2002 |
| >ADD> | | 4536518*PED | JUN 30, 2006 | U-12 | M-11 | AUG 06, 2004 |
| >ADD> | | 4962128*PED | MAY 02, 2010 | U-12 | PED | JUN 07, 2003 |
| >ADD> | | 4962128*PED | MAY 02, 2010 | U-152 | PED | FEB 06, 2005 |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-25

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | EXCL USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 019839 003 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | JUN 07, 2003 |
| | | 4962128 | NOV 02, 2009 | U-12 | | FEB 07, 2003 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | M-11 | AUG 06, 2004 |
| | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| 019839 004 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5486899 | FEB 13, 2012 | U-152 | | |
| | | 4962128 | NOV 02, 2009 | U-152 | | |
| | | 4962128*PED | MAY 02, 2010 | U-152 | | |
| | | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | JUN 07, 2003 |
| | | 4962128 | NOV 02, 2009 | U-12 | | FEB 07, 2003 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | M-11 | AUG 06, 2004 |
| | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5486899 | FEB 13, 2012 | U-152 | | |
| | | 4962128 | NOV 02, 2009 | U-152 | | |
| | | 4962128*PED | MAY 02, 2010 | U-152 | | |
| | | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | PED | JUN 07, 2003 |
| | | 4962128 | NOV 02, 2009 | U-12 | | FEB 07, 2003 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | M-11 | AUG 06, 2005 |
| | | 4962128*PED | MAY 02, 2010 | U-12 | | |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5486899 | FEB 13, 2012 | U-152 | | |
| | | 4962128 | NOV 02, 2009 | U-152 | | |
| | | 4962128*PED | MAY 02, 2010 | U-152 | | |
| | | 5248699 | AUG 13, 2012 | U-12 | I-279 | DEC 07, 2002 |
| | | 4536518 | DEC 30, 2005 | U-152 | M-11 | AUG 06, 2004 |
| | | 4536518*PED | JUN 30, 2006 | U-152 | | |
| 020478 001 | SEVOFLURANE;ULTANE | 6281127 | JAN 27, 2017 | U-286 | M-11 | AUG 06, 2005 |
| | | 6281127*PED | JUL 27, 2017 | U-286 | PED | FEB 06, 2005 |
| 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | | |
| 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | | |
| 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | | |
| 019766 001 | SIMVASTATIN;ZOCOR | | | | | |
| 019766 002 | SIMVASTATIN;ZOCOR | 4444784 | DEC 23, 2005 | U-59 | D-65 | FEB 16, 2004 |
| | | RE36481 | JUL 10, 2007 | U-300 | M-9 | FEB 16, 2004 |
| | | RE36520 | MAY 26, 2009 | U-300 | D-65 | FEB 16, 2004 |
| | | 4444784*PED | JUN 23, 2006 | U-59 | M-9 | FEB 16, 2004 |
| | | RE36481*PED | JAN 10, 2008 | U-300 | D-65 | FEB 16, 2004 |
| | | RE36520*PED | NOV 26, 2009 | U-300 | M-9 | FEB 16, 2004 |
| | | 4444784 | DEC 23, 2005 | U-59 | I-277 | NOV 22, 2002 |
| | | RE36481 | JUL 10, 2007 | U-300 | I-278 | NOV 22, 2002 |
| | | RE36520 | MAY 26, 2009 | U-300 | I-273 | AUG 05, 2002 |
| | | 4444784*PED | JUN 23, 2006 | U-59 | I-277 | MAY 22, 2003 |
| | | RE36481*PED | JAN 10, 2008 | U-300 | I-278 | MAY 22, 2003 |
| | | RE36520*PED | NOV 26, 2009 | U-300 | I-273 | AUG 05, 2003 |
| | | 4444784*PED | JUN 23, 2006 | U-59 | PED | MAY 22, 2003 |
| | | RE36481*PED | JAN 10, 2008 | U-300 | PED | MAY 22, 2003 |
| | | RE36520*PED | NOV 26, 2009 | U-300 | PED | MAY 22, 2003 |



# APPROVED DRUG PRODUCTS

WITH

THERAPEUTIC EQUIVALENCE EVALUATIONS

22nd EDITION

THE PRODUCTS IN THIS LIST HAVE BEEN APPROVED UNDER
SECTION 505 OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION
CENTER FOR DRUG EVALUATION AND RESEARCH
OFFICE OF INFORMATION TECHNOLOGY
DIVISION OF DATA MANAGEMENT AND SERVICES

2002

Kirkland & Ellis Library

5 0628 0111689S 9

# PATENT AND EXCLUSIVITY INFORMATION ADDENDUM

This *Addendum* identifies drugs that qualify under the Drug Price Competition and Patent Term Restoration Act (1984 Amendments) for periods of exclusivity, during which abbreviated new drug applications (ANDAs) and applications described in Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (the Act) for those drug products may, in some instances, not be submitted or made effective as described below, and provides patent information concerning the listed drug products. Those drugs that have qualified for Orphan Drug Exclusivity pursuant to Section 527 of the Act and those drugs that have qualified for Pediatric Exclusivity pursuant to Section 505A are also included in this *Addendum*. This section is arranged in alphabetical order by active ingredient name. For those drug products with multiple active ingredients, only the first active ingredient (in alphabetical order) will appear. For an explanation of the codes used in the *Addendum*, see the *Patent and Exclusivity Terms* page. Exclusivity prevents the submission or effective approval of ANDAs or applications described in Section 505(b)(2) of the Act. It does not prevent the submission or approval of a second full NDA. Applications qualifying for periods of exclusivity are:

(1) A new drug application approved after September 24, 1984, for a drug product all active ingredients (including any ester or salt of the active ingredient) of which had never been approved in any other new drug application under Section 505 (b) (2) of the Act. No subsequent ANDA or application described in Section 505(b)(2) of the Act for the same drug may be *submitted* for a period of *five years* from the date of approval of the original application, except that such an application may be *submitted* after *four years* if it contains a certification that a patent claiming the drug is invalid or will not be infringed by the product for which approval is sought.

(2) A new drug application approved after September 24, 1984, for a drug product containing an active ingredient (including any ester or salt of that active ingredient) that has been approved in an earlier new drug application and that includes reports of new clinical investigations (other than bioavailability studies). Such investigations must have been conducted or sponsored by the applicant and must have been essential to approval of the application. If these requirements are met, the approval of a subsequent ANDA or an application described in Section 505(b)(2) of the Act may not be *made effective* for the same drug or use, if for a new indication, before the expiration of *three years* from the date of approval of the original application. If an applicant has exclusivity for a new use or indication, this does not preclude the approval of an ANDA application or 505(b)(2) application for the drug product with indications not covered by the exclusivity.

(3) A supplement to a new drug application for a drug containing a previously approved active ingredient including any ester or salt of the active ingredient) approved after September 24, 1984, that contains reports of new clinical investigations (other than bioavailability studies) essential to the approval of the supplement and conducted or sponsored by the applicant. The approval of a subsequent application for a change approved in the supplement may not be *made effective* for *three years* from the date of approval of the original supplement.

The Act requires that patent information must now be filed with all newly submitted Section 505 drug applications, and that no NDA may be approved after September 24, 1984, without the submission of pertinent patent information to the Agency. The patent numbers and the expiration dates of appropriate patents claiming drug products that are the subject of approved applications will be published in this *Addendum* or in the monthly Cumulative Supplement to this publication. Patent information on unapproved applications or on patents beyond the scope of the Act (i.e., process or manufacturing patents) will not be published.

The patents that FDA regards as covered by the statutory provisions for submission of patent information are: patents that claim the active ingredient or ingredients; drug product patents, which include formulation/composition patents; and use patents for a particular approved indication or method of using the product. NDA holders or applicants amending or supplementing applications with formulation/composition patent information are asked to declare that the patent(s) is appropriate for publication and refers to an approved product or one for which approval is being sought. The Agency asks all applicants or application holders with use patents to provide information as to the approved indications or uses covered by such patents. This information will be included in the Cumulative Supplement to the List as it becomes available.

Since all parts of this publication are subject to changes, additions, or deletions, the *Addendum* must be used in conjunction with the most current Cumulative Supplement.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA

ADA64

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | JAN 23, 2016 | U-235 | PED | JUN 09, 2002 |
| | | 5914128 | DEC 22, 2017 | | | |
| | | 6051252 | DEC 22, 2017 | U-375 | | |
| | | 6063772 | JAN 23, 2016 | U-377 | | |
| | | 6067672 | DEC 21, 2016 | U-235 | | |
| | | 5767097*PED | JUL 23, 2016 | | | |
| | | 5914128*PED | JUN 22, 2018 | | | |
| | | 6051252*PED | JUN 22, 2018 | U-375 | | |
| | | 6063772*PED | JUL 23, 2016 | U-377 | | |
| | | 6067672*PED | JUN 21, 2017 | U-235 | | |
| 020903 002 | RIBAVIRIN;REBETOL | 6335032 | DEC 22, 2017 | U-375 | | |
| | | 6335031 | DEC 22, 2017 | U-235 | | |
| | | 6360310 | JAN 23, 2016 | | | |
| | | 5767097*PED | JUL 23, 2016 | | | |
| | | 5914128*PED | JUN 22, 2018 | | | |
| | | 6051252*PED | JUN 22, 2018 | U-375 | | |
| | | 6063772*PED | JUL 23, 2016 | U-377 | | |
| | | 6067672*PED | JUN 21, 2017 | U-235 | | |
| | | 6335032*PED | JUN 22, 2018 | | | |
| | | 6172046 | MAR 21, 2018 | U-375 | | |
| | | 6172046*PED | SEP 21, 2018 | U-377 | | |
| | | 6337090 | MAR 21, 2018 | | | |
| | | 6337090*PED | DEC 22, 2018 | | | |
| | | 6150337 | NOV 22, 2017 | | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | | | | | |
| 021024 001 | RIFAPENTINE;PRIFTIN | 4965214 | JUL 22, 2008 | U-100 | NCE | JUN 22, 2003 |
| | | | | | ODE | JUN 22, 2005 |
| | | | | | ODE | DEC 12, 2002 |
| 020599 001 | RILUZOLE;RILUTEK | 5583122 | DEC 10, 2013 | | | |
| 020474 001 | RIMEXOLONE;VEXOL | 6096542 | MAR 12, 2017 | U-222 | | |
| 020835 001 | RISEDRONATE SODIUM;ACTONEL | 6165513 | JUN 10, 2018 | | | |
| 020835 002 | RISEDRONATE SODIUM;ACTONEL | 5583122 | DEC 10, 2013 | U-222 | I-292 | APR 14, 2003 |
| | | 6096542 | MAR 12, 2017 | | | |
| | | 6165513 | JUN 10, 2018 | U-222 | | |
| 020272 001 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | NCE | APR 14, 2003 |
| 020272 002 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | I-291 | APR 14, 2003 |
| 020272 003 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | I-293 | APR 14, 2003 |
| 020272 004 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | I-290 | APR 14, 2003 |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA

ADA65

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020272 005 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 007 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020272 008 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020588 001 | RISPERIDONE;RISPERDAL | 4804663 | DEC 29, 2007 | U-90 | | |
| 020659 001 | RITONAVIR;NORVIR | 5354866 | JUN 11, 2014 | | | |
| | | 5484801 | JAN 28, 2014 | U-140 | | |
| | | 5541206 | JUN 03, 2014 | | | |
| | | 5635523 | JUN 03, 2014 | U-190 | | |
| | | 5674882 | DEC 29, 2013 | U-190 | | |
| | | 5846987 | JUL 15, 2014 | | | |
| | | 5886036 | JUL 30, 2014 | | | |
| 020680 001 | RITONAVIR;NORVIR | 5635523 | JUN 26, 2016 | U-190 | | |
| | | 6037157 | OCT 07, 2014 | U-190 | | |
| 020945 001 | RITONAVIR;NORVIR | 5886036 | DEC 29, 2012 | U-347 | | |
| | | 5948436 | DEC 29, 2012 | U-348 | | |
| | | 6037157 | JUL 15, 2014 | U-347 | | |
| 020823 003 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| | | 5602176 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 020823 004 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| | | 5602176 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 020823 005 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| | | 5602176 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 020823 006 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| | | 5602176 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 021025 001 | RIVASTIGMINE TARTRATE;EXELON | 4948807 | AUG 14, 2007 | U-322 | NCE | APR 21, 2005 |
| | | 5602176 | FEB 11, 2014 | U-322 | NCE | APR 21, 2005 |
| 020864 001 | RIZATRIPTAN BENZOATE;MAXALT | 5298520 | FEB 28, 2012 | U-240 | NCE | JUN 29, 2003 |
| | | 5602162 | FEB 11, 2014 | U-240 | NCE | JUN 29, 2003 |
| 020864 002 | RIZATRIPTAN BENZOATE;MAXALT | 5298520 | FEB 28, 2012 | U-240 | NCE | JUN 29, 2003 |
| | | 5602162 | FEB 11, 2014 | U-240 | NCE | JUN 29, 2003 |
| 020865 001 | RIZATRIPTAN BENZOATE;MAXALT-MLT | 5298520 | FEB 28, 2012 | U-240 | NCE | JUN 29, 2003 |
| | | 5602162 | FEB 11, 2014 | U-240 | NCE | JUN 29, 2003 |
| 020865 002 | RIZATRIPTAN BENZOATE;MAXALT-MLT | 5298520 | FEB 28, 2012 | U-240 | NCE | JUN 29, 2003 |
| | | 5602162 | FEB 11, 2014 | U-240 | NCE | JUN 29, 2003 |
| 020214 002 | ROCURONIUM BROMIDE;ZEMURON | 5457895 | JAN 28, 2012 | | | |
| 020214 001 | ROCURONIUM BROMIDE;ZEMURON | 4894369 | APR 13, 2008 | | | |
| 021042 001 | ROFECOXIB;VIOXX (P/F) | 5474995 | NOV 24, 2013 | U-266 | NCE | MAY 20, 2004 |
| | | 5691374 | NOV 25, 2017 | | | |
| | | 6063811 | MAY 16, 2017 | U-266 | | |
| | | 6239173 | JUN 24, 2013 | | | |

Kirkland & Ellis Library

5  0628  01112741  9

# CUMULATIVE
# SUPPLEMENT 9
### SEPTEMBER 2001



# APPROVED
# DRUG PRODUCTS

## WITH
## THERAPEUTIC EQUIVALENCE EVALUATIONS

## 21ST EDITION

### Department of Health and Human Services
#### Food and Drug Administration
#### Center for Drug Evaluation and Research
#### Office of Information Technology
#### Division of Data Management and Services

#### 2001

RM
301.45
.A66
21ST
Supp. 9
Sep.
2001

**APPROVED DRUG PRODUCTS**
**with**
**THERAPEUTIC EQUIVALENCE EVALUATIONS**

**21ST EDITION**

**CUMULATIVE SUPPLEMENT 9**
**SEPTEMBER 2001**

**1.0  INTRODUCTION**

1.1  HOW TO USE THE CUMULATIVE SUPPLEMENT

This Cumulative Supplement is one of a series of monthly updates to the Approved Drug Products with Therapeutic Equivalence Evaluations, 21st Edition (the List). The List is composed of four parts: approved prescription drug products with therapeutic equivalence evaluations, over-the-counter (OTC) drug products that require approved applications as a condition of marketing, drug products with approval under Section 505 of the Act administered by the Center for Biologics Evaluation and Research and products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons.

The Cumulative Supplement provides, among other things, information on newly approved drugs and, if necessary, revised therapeutic equivalence evaluations and updated patent and exclusivity data. The Addendum contains appropriate drug patent and exclusivity information required of the Agency by the "Drug Price Competition and Patent Term Restoration Act of 1984" for the Prescription, OTC, and Drug Products with Approval under Section 505 of the Act Administered by the Center for Biologics Evaluation and Research Lists.

Because all parts of the publication are subject to changes, additions, or deletions, the List must be used in conjunction with the most current Cumulative Supplement. Users may wish to place an asterisk (*) to the left of the ingredient(s) in the List to indicate that changes to that entry appear in the Cumulative Supplement.

Drug product information is provided in each Cumulative Supplement for completeness to assist in locating the proper place in the List for the revision. [Strength(s) which already exist in the List will not be repeated for context.]

The presence of any therapeutic equivalence code indicates that the drug product is multisource; the deletion of a therapeutic equivalence code indicates that the drug product has become single source. (An infrequent exception exists when a therapeutic equivalence code is revised. In that case the deletion of the therapeutic equivalence code is followed immediately by the addition of the revised one.)

Products that have never been marketed, have been discontinued from marketing or that have had their approvals withdrawn for other than safety or efficacy reasons, will be flagged in this Cumulative Supplement with the "@" symbol to designate their non-marketed status. All products having a "@" symbol in the 12th Cumulative Supplement of the 21st Edition List will then be added to the "Discontinued Drug Product List" appearing in the 22nd Edition. The current edition Section 2. How To Use The Drug Product Lists describes the layout and usage of the List.

The Patent and Exclusivity Lists are arranged in alphabetical order by active ingredient name. For those products with multiple active ingredients, only the first active ingredient (in alphabetical sort) will appear. In addition, the trade name will be displayed to the right of the active ingredient name for each product. Also shown is the application number and product number (FDA's internal file number) for reference purposes. All patents with their expiration dates are displayed for each application number. Use patents are indicated with the symbol "U" followed by a number representing a specific use. Exclusivity information for a specific drug is indicated by an abbreviation followed by the date upon which the exclusivity expires. Refer to the Exclusivity Terms section in the Patent and Exclusivity Information Addendum for an explanation of all codes and abbreviations.

New additions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >A>. The Patent and Exclusivity Data are indicated by the symbol >**ADD**> to the left of the line on which new information exists. The >**ADD**> symbol is then dropped in subsequent Cumulative Supplements for that item.

New deletions to the Prescription Drug Product List and OTC Drug Product List are indicated by the symbol >**D**> (DELETE) to the left of the line. The information line with the >**D**> symbol is dropped in subsequent Cumulative Supplements for that item.

## 1.2  APPLICANT NAME CHANGES

It is not practical to identify in the Cumulative Supplement each and every product involved  when an applicant transfers its entire line of approved drug products to another applicant, or when an applicant changes its name. Therefore, the cumulation of these transfers and name changes will be identified in this section only. Where only partial lines of approved products are transferred between applicants, each approved product involved will appear as an applicant name change entry in the Cumulative Supplement.

It is also not practical to identify each and every product involved when an applicant name is changed to meet internal publication standards (e.g., MSD or Zenith [Former Abbreviated Names] are changed, respectively, to Merck Sharp Dohme or Zenith Labs [New Abbreviated

Names]). When this occurs, each product involved (either currently in the Cumulative Supplement or in the following year's edition) will reflect the new abbreviated name. Consequently, it will not appear as an applicant name change entry in the Cumulative Supplement nor will the cumulation of these name changes appear in this section

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME<br>(FORMER ABBREVIATED NAME) | NEW APPLICANT NAME<br>(NEW ABBREVIATED NAME) |
|---|---|
| BAXTER PHARMACEUTICAL PRODUCTS INC<br>(BAXTER PHARM PROD) | BAXTER HEALTHCARE CORPORATION ANESTHESIA &<br>CRITICAL CARE<br>(BAXTER HLTHCARE CORP) |
| CAMALL CO INC<br>(CAMALL) | ABC HOLDING CORPORATION<br>(ABC HOLDING) |
| CIBA VISION CORP DIV NOVARTIS CO<br>(CIBA) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| CIBA VISION OPHTHALMICS<br>(CIBA VISION OPHTHLMC) | NOVARTIS OPHTHALMICS INC<br>(NOVARTIS) |
| DEY LABORATORIES INC<br>(DEY) | DEY LP<br>(DEY) |
| KNOLL PHARMACEUTICAL COMPANY<br>(KNOLL PHARM) | ABBOTT LABORATORIES PHARMACEUTICAL PRODUCTS<br>(ABBOTT) |
| LOTUS BIOCHEMICAL CORPORATION<br>(LOTUS BIOCHEM) | NEW RIVER PHARMACEUTICALS INC<br>(NEW RIVER) |
| MARSAM PHARMACEUTICALS INC<br>(MARSAM PHARMS) | MARSAM PHARMACEUTICALS LLC<br>(MARSAM PHARMS) |
| MEDEVA AMERICAS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA INC<br>(MEDEVA) | CELLTECH PHARMACEUTICALS INC<br>(CELLTECH PHARMS) |
| MEDEVA PHARMACEUTICALS CA INC<br>(MEDEVA PHARMS CA) | CELLTECH MANUFACTURING CA INC<br>(CELLTECH MFG CA INC) |
| MEDEVA PHARMACEUTICALS MA INC<br>(MEDEVA PHARMS MA) | CELLTECH MANUFACTURING INC<br>(CELLTECH MFG) |
| NOVOPHARM LTD<br>(NOVOPHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM PHARMACEUTICAL CO<br>(NOVOPHARM PHARM) | TEVA PHARMACEUTICALS USA<br>(TEVA) |
| NOVOPHARM NC INC<br>(NOVOPHARM NC) | TEVA PHARMACEUTICALS USA<br>(TEVA) |

## APPLICANT NAME CHANGES

| FORMER APPLICANT NAME (FORMER ABBREVIATED NAME) | NEW APPLICANT NAME (NEW ABBREVIATED NAME) |
|---|---|
| OHMEDA PHARMACEUTICAL PRODUCTS DIV (OHMEDA) | BAXTER HEATHCARE CORPORATION ANESTHESIA & CRITICAL CARE (BAXTER HLTHCARE CORP) |
| ROBERTS LABORATORIES INC (ROBERTS LABS) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ROBERTS PHARMACEUTICAL CORP (ROBERTS PHARM) | SHIRE PHARMACEUTICAL DEVELOPMENT INC (SHIRE PHARM) |
| ZENITH GOLDLINE (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |
| ZENITH GOLDLINE PHARMACEUTICALS INC (ZENITH GOLDLINE) | IVAX PHARMACEUTICALS INC (IVAX PHARMS) |

## 1.3  AVAILABILITY OF THE EDITION

The 21st Edition of the Orange Book and its monthly cumulative supplements are available by subscription from the Government Printing Office:

Superintendent of Documents
Government Printing Office
P.O. Box 371954
Pittsburgh, PA 15250-7954

The telephone number to charge your subscription is 202-512-1800.  The cost is $101.00 annually.

The Approved Drug Products with Therapeutic Equivalence Evaluation (Orange Book) and related drug information is also available on the Internet at the Food and Drug Administration, Center for Drug Evaluation and Research, Drug Info page.

There is an Electronic Orange Book Query (EOB) at http://www.fda.gov/cder/ob. The Query provides searching of the approved drug list by active ingredient, proprietary name, applicant holder or applicant number.  Product search categories are: prescription, over-the-counter, discontinued drugs.  There are links to patent and exclusivity information that may be applicable to each product.  The data is updated concurrently with the publication of the annual edition or monthly cumulative supplements.

The Internet version of the hard copy Orange Book annual edition is at http://www.fda.gov/cder/orange/adp.htm.

The Internet version of the hard copy monthly supplement is at
http://www.fda.gov/cder/orange/supplement/cspreface.htm.  Changes to the annual edition are listed
separately by month.

There are ASCII text files of the Orange Book drug product data at
http://www.fda.gov/cder/orange/obreadme.htm.  The drug product text files are zipped into zipobtxt.exe.
The files are updated concurrently with the publication of the annual edition or monthly cumulative
supplements.  Appendix A and Appendix B are updated quarterly.

The 21st annual edition of the 2000 Orange Book Patent and Exclusivity List is at
http://www.fda.gov/cder/orange/21bookpub.pdf.

The current year Patent and Exclusivity cumulative supplement list that denotes the current month
additions is at http://www.fda.gov/cder/orange/supplement/patents.pdf.

The Patent Term Extension and new Patents, Docket Number *95S-0117, is at
http://www.fda.gov/cder/orange/docket.pdf.   It is updated monthly as soon as available and as otherwise
needed.

The Drug Price Competition and Patent Term Restoration Act requires that patent information
be filed with all newly submitted Section 505 drug applications.  To facilitate industry
submission of the information, a patent submission sample format is available in HTML and
PDF format at:
http://www.fda.gov/cder/orange/patdecl.pdf
http://www.fda.gov/cder/orange/patdecl.html

The current listing of the Orphan Product Designations and Approvals is available at
http://www.fda.gov/orphan/designat/list.htm.

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-18

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXCL EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020936 003 | PAROXETINE HYDROCHLORIDE;PAXIL CR | 4721723 | DEC 29, 2006 | | | |
| | | 4839177 | JUN 13, 2006 | | | |
| | | 5422123 | JUN 06, 2012 | | | |
| | | 5789449 | JAN 06, 2009 | | | |
| | | 5872132 | MAY 19, 2015 | | | |
| | | 5900423 | MAY 19, 2015 | | | |
| | | 6063927 | APR 23, 2019 | | | |
| | | 6080759 | MAY 19, 2015 | | | |
| | | 6113291 | MAR 17, 2017 | | | |
| | | 6123239 | MAR 14, 2015 | | | |
| | | 6172233 | MAY 19, 2015 | | | |
| | | | JAN 15, 2018 | | | |
| 021064 001 | PERFLUTREN;DEFINITY | 5527521 | APR 05, 2011 | U-286 | | |
| | | 5547656 | APR 05, 2011 | U-286 | | |
| | | 5769080 | JUL 20, 2010 | | NCE | JUL 31, 2006 |
| 021073 001 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150384 | JUN 19, 2016 | U-418 | | |
| | | 6150383 | JUN 19, 2016 | U-419 | | |
| 021073 002 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150384 | JUN 19, 2016 | U-418 | | |
| | | 6150383 | JUN 19, 2016 | U-419 | | |
| 021073 003 | PIOGLITAZONE HYDROCHLORIDE;ACTOS | 6211205 | JUN 19, 2016 | U-410 | | |
| | | 6271243 | JUN 19, 2016 | U-411 | | |
| | | 6303640 | JUN 19, 2016 | U-425 | | |
| | | 6166042 | JUN 19, 2016 | U-414 | | |
| | | 6166043 | JUN 19, 2016 | U-415 | | |
| | | 6172090 | JUN 19, 2016 | U-416 | | |
| | | 5965584 | JUN 19, 2016 | U-417 | | |
| | | 6150384 | JUN 19, 2016 | U-418 | | |
| | | 6150383 | JUN 19, 2016 | | | |
| 020667 005 | PRAMIPEXOLE DIHYDROCHLORIDE;MIRAPEX | | | | I-322 | FEB 20, 2004 |
| 019627 002 | PROPOFOL;DIPRIVAN | 4886812 | MAR 25, 2011 | | PED | AUG 20, 2004 |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-19

| APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|
| 020973 002 | RABEPRAZOLE SODIUM;ACIPHEX | 5045552 | SEP 03, 2008 | U-385 | | |
| | | 5035899 | APR 04, 2009 | U-385 | | |
| | | 4418068 | APR 03, 2002 | | | |
| 020815 001 | RALOXIFENE HYDROCHLORIDE;EVISTA | 5061722 | OCT 19, 2008 | | | |
| 019901 002 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 001 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 003 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 019901 004 | RAMIPRIL;ALTACE | 5061722 | OCT 19, 2008 | | | |
| 020741 004 | REPAGLINIDE;PRANDIN | 5143769 | MAR 14, 2009 | | | |
| 020741 001 | REPAGLINIDE;PRANDIN | 5143769 | MAR 14, 2009 | | | |
| 020741 002 | REPAGLINIDE;PRANDIN | 5143769 | MAR 14, 2009 | | | |
| 020741 003 | REPAGLINIDE;PRANDIN | 5143769 | MAR 14, 2009 | | | |
| | REPAGLINIDE;PRANDIN | 6143769 | MAR 14, 2009 | | | |
| 020903 001 | RIBAVIRIN;REBETOL | 5767097 | JAN 23, 2016 | | | |
| | | 5767097 | JAN 23, 2016 | | | |
| | | 5941428 | DEC 22, 2017 | | | |
| | | 6051252 | DEC 22, 2017 | U-235 | PED | JUN 09, 2002 |
| | | 6063772 | JAN 23, 2016 | | PED | DEC 03, 2001 |
| | | 6172046 | SEP 21, 2017 | | | |
| | | 5767097*PED | JUL 23, 2017 | U-375 | | |
| | | 6172046*PED | JUN 22, 2016 | U-377 | | |
| | | 5941428*PED | JUN 22, 2018 | U-235 | | |
| | | 6051252*PED | JUL 22, 2018 | U-375 | | |
| | | 6063772*PED | MAR 23, 2018 | U-377 | | |
| 018859 001 | RIBAVIRIN;VIRAZOLE | | NOV 21, 2017 | U-235 | | |
| 020945 001 | RITONAVIR;NORVIR | | NOV 07, 2017 | U-400 | | |
| 021042 001 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | U-266 | | |
| | | 5691374 | NOV 25, 2013 | | | |
| 021042 002 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | | | |
| | | 5691374 | JUN 24, 2013 | U-266 | | |
| 021042 003 | ROFECOXIB;VIOXX | 5474995 | JUN 24, 2013 | | | |
| | | 5691374 | JUN 24, 2013 | | | |
| | | | NOV 25, 2013 | | | |
| | | | NOV 25, 2017 | | | |
| >ADD> 021052 001 | ROFECOXIB;VIOXX | | JUN 24, 2013 | | | |
| >ADD> 021052 002 | ROFECOXIB;VIOXX | | NOV 24, 2013 | U-266 | | |
| 021071 001 | ROSIGLITAZONE MALEATE;AVANDIA | 6239173 | JUN 24, 2013 | | | |
| 021071 002 | ROSIGLITAZONE MALEATE;AVANDIA | 6239173 | FEB 11, 2017 | U-420 | | |
| 021071 003 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 021071 004 | ROSIGLITAZONE MALEATE;AVANDIA | 6288095 | FEB 11, 2017 | U-420 | | |
| 020692 001 | SALMETEROL XINAFOATE;SERETENT | 6288095 | FEB 11, 2017 | | | |
| 020628 001 | SAQUINAVIR;FORTOVASE | 5208815 | MAR 01, 2011 | U-386 | | |
| 019839 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | 5196438 | NOV 19, 2010 | | M-11 | AUG 06, 2004 |
| 019839 003 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 019839 005 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| 020990 001 | SERTRALINE HYDROCHLORIDE;ZOLOFT | | | | M-11 | AUG 06, 2004 |
| >ADD> 020478 001 | SEVOFLURANE;ULTANE | 6288127 | JUL 27, 2018 | | M-11 | |
| | | 6288127*PED | JAN 27, 2017 | | | |

PRESCRIPTION AND OTC DRUG PRODUCT
PATENT AND EXCLUSIVITY DATA
*PED and PED represent Pediatric Exclusivity

A-20

| | APPL/PROD NUMBER | INGREDIENT NAME; TRADE NAME | PATENT NUMBER | PATENT/PED EXPIRES | USE CODE | EXCLUS CODE | EXCLUS EXPIRES |
|---|---|---|---|---|---|---|---|
| | 020632 001 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | | M-9 | FEB 16, 2008 |
| | 020632 002 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | | M-9 | FEB 16, 2008 |
| | 020632 003 | SIBUTRAMINE HYDROCHLORIDE;MERIDIA | | | | D-65 | FEB 16, 2004 |
| | | | | | | M-9 | FEB 16, 2008 |
| | 021097 001 | SODIUM PHOSPHATE, DIBASIC, ANHYDROUS;VISICOL | 5614346 | MAY 18, 2013 | U-359 | M-9 | FEB 16, 2004 |
| | 020280 006 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| >ADD> | 020280 007 | SOMATROPIN RECOMBINANT;GENOTROPIN | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | | ODE | JUL 25, 2004 |
| >ADD> | 020280 002 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 003 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 004 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 005 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 008 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 009 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 010 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | 6152897 | JUN 11, 2018 | | ODE | JUL 25, 2004 |
| >ADD> | 020280 011 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | | ODE | JUL 25, 2004 |
| >ADD> | 020280 012 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | | ODE | JUL 25, 2004 |
| >ADD> | 020280 013 | SOMATROPIN RECOMBINANT;GENOTROPIN PRESERVAT | 5633352 | MAY 27, 2014 | | I-334 | JUL 25, 2008 |
| | | | | | | ODE | JUL 25, 2004 |
| | 021151 001 | SOTALOL HYDROCHLORIDE;BETAPACE AF | | | | I-334 | JUL 25, 2008 |
| | 021151 002 | SOTALOL HYDROCHLORIDE;BETAPACE AF | | | | NP | AUG 22, 2003 |
| | 021151 003 | SOTALOL HYDROCHLORIDE;BETAPACE AF | | | | | |
| | 020412 001 | STAVUDINE;ZERIT | | | | | |
| | 020412 002 | STAVUDINE;ZERIT | | | | | |
| >ADD> | 020412 003 | STAVUDINE;ZERIT | 4978655 | JUN 24, 2008 | U-94 | NP | AUG 22, 2003 |
| | | | 4978655*PED | DEC 24, 2008 | U-94 | PED | FEB 22, 2003 |
| | | | 4978655 | JUN 24, 2008 | U-94 | NP | AUG 22, 2003 |
| | | | 4978655*PED | DEC 24, 2008 | U-94 | PED | FEB 22, 2003 |
| | | | 4978655 | JUN 24, 2008 | U-94 | NP | AUG 22, 2003 |
| | | | 4978655*PED | DEC 24, 2008 | U-94 | PED | FEB 22, 2003 |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, Inc.<br>　　1090 Horsham Road<br>　　North Wales, PA  19454<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL O. LEAVITT, in his official capacity<br>as Secretary of Health and Human Services,<br>　　200 Independence Ave., S.W.<br>　　Washington, DC  20204;<br><br>ANDREW C. VON ESCHENBACH, M.D., in<br>his official capacity as Commissioner of Food and Drugs,<br>　　200 C Street, S.W.<br>　　Washington, DC  20204;<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br>　　5600 Fishers Lane<br>　　Rockville, MD  20857,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Case No. _____ |

## REDACTED DECLARATION OF DAVID MARSHALL

I, David Marshall, hereby declare under penalty of perjury and to the best of my knowledge as follows:

1.　　I am the Vice President of Commercial Operations for Teva Pharmaceuticals USA, Inc. ("Teva").  Teva is a wholly owned, indirect subsidiary of Teva Pharmaceutical Industries Ltd., a global pharmaceutical company headquartered in Israel.  Teva is an industry leader in the development, manufacture, and marketing of generic pharmaceutical products in the United States.

2.    As Vice President of Commercial Operations for Teva, I am involved in the introduction and promotion of new generic drug products for the United States market and have personal knowledge of the matters discussed herein.

3.    Risperidone is the active pharmaceutical ingredient in Risperdal® tablets ("Risperdal®"), an atypical antipsychotic medication indicated for the treatment of schizophrenia, bipolar disorder, and certain behavioral characteristics associated with autism in children.

4.    Risperdal® is one of the most commonly prescribed drugs in the United States. During the 12-month period that ended December 31, 2007, pharmacists filled more than 11 million Risperdal® prescriptions and dispensed some 556 million Risperdal® tablets. These prescriptions accounted for nearly $2.56 billion in sales.

5.    Janssen Pharmaceutica ("Janssen") holds the approved New Drug Application ("NDA") for Risperdal® and is currently the exclusive supplier of risperidone products to the United States market.

6.    In connection with its NDA, Janssen caused the U.S. Food and Drug Administration ("FDA") to list two patents as claiming Risperdal® in FDA's official compendium of drug-related patents, *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book"): U.S. Patent No. 4,804,663 ("the '663 patent") and U.S. Patent No. 5,158,952 ("the '952 patent").

7.    On August 28, 2001, Teva submitted an Abbreviated New Drug Application ("ANDA") to FDA seeking approval to market a generic version of risperidone tablets in several dosages. At all times prior to the submission of Teva's ANDA and on the date Teva submitted its ANDA to FDA, the '663 and '952 patents were listed as claiming Risperdal® in the 2001

annual edition of the Orange Book, and the then-current Cumulative Supplement to the Orange Book reflected no changes to the Risperdal® patent-listing information.

8.      Because the '663 and '952 patents appeared in FDA's official Orange Book, and because and the then-current Cumulative Supplement to the Orange Book reflected no changes to the Risperdal® patent-listing information, the Hatch-Waxman Act required Teva to include a certification regarding each of those patents in its ANDA.  Teva therefore filed a Paragraph III certification to the '663 patent, indicating that Teva did not intend to market its proposed generic risperidone tablets until that patent expired, and a Paragraph IV certification to the '952 patent, indicating Teva's belief that that patent was invalid, would not be infringed by Teva's proposed generic risperidone tablets, or otherwise was unenforceable.

9.      Teva's decision to file a Paragraph IV challenge to the '952 patent required it to balance serious risks against potentially significant benefits.

10.     Teva made a major investment in preparing its Paragraph IV challenge to the '952 patent.  And its formal submission of the resulting Paragraph IV to FDA immediately subjected the company to the possibility of costly and protracted patent infringement litigation by Janssen.

11.     However, by filing the first ANDA containing a Paragraph IV certification to the '952 patent, Teva became eligible for a 180-day period of marketing exclusivity for generic risperidone tablets pursuant to the Hatch-Waxman Act ("180-day exclusivity").  Such exclusivity typically gives the first generic entrant a permanent advantage over subsequent entrants, because that officially sanctioned "head start" permits first entrants to secure distribution channels and access to customers; enter into long-term sales agreements; increase sales across all of its product lines; and retain greater market share in the long-run.

12.    In October 2001, FDA notified Teva that it would not accept Teva's ANDA for filing because the Agency had purportedly "delisted" the '952 patent from the Orange Book prior to the submission of Teva's ANDA—even though the '952 patent was listed as claiming Risperdal® in FDA's 2001 Orange Book, and even though the then-current Cumulative Supplement to the Orange Book reflected no change to the Risperdal® patent-listing information. FDA thus forced Teva to remove its Paragraph IV certification to the '952 patent from the ANDA before accepting that ANDA for filing.

13.    FDA's unlawful refusal to restore the '952 patent to the Orange Book and honor Teva's Paragraph IV challenge threatens to deprive Teva of its 180-day exclusivity for generic risperidone tablets—thereby eliminating Teva's officially sanctioned head start, impairing its access to customers for generic risperidone tablets, decreasing its opportunities to strengthen market position on other product lines, and diminishing Teva's ability to establish and retain long-term market share for generic risperidone products.

14.    Based on my past experience and current familiarity with data reflecting the size of the market for risperidone tablets, I project that without 180-day exclusivity, Teva will sell [REDACTED] percent fewer risperidone tablets during its first year on the market than it would if it had such exclusivity. Teva thus stands to lose [REDACTED] dollars in net revenues during its first-year of generic risperidone sales as a result of FDA's refusal to relist the '952 patent.

15.    Those losses are both irrecoverable and irreparable. Because a given prescription can be filled only once, it is impossible to "make up" for a lost sale by filling a subsequent prescription. And because the defendants in this case are federal officials and a federal agency, I understand that monetary damages are not available to compensate Teva for the losses it will incur as a result of FDA's refusal to restore the '952 patent to the Orange Book.

4

16.    Time is of the essence.  Teva's ANDA will be eligible for final approval on June 29, 2008, when Jannsen's period of pediatric exclusivity for Risperdal® expires.  Before Teva can market its generic risperidone tablets, the company will need to make significant planning decisions and resource commitments.  As noted above, the amount of inventory that Teva will need to produce varies considerably depending on whether the company is awarded its 180-day exclusivity.

17.    In order to launch enough product by June 29, 2008 to fully satisfy market demand in the event of an exclusive launch, Teva will need to place its final production orders and set its manufacturing and packaging schedules no later than March 15, 2008.  Drug tablets have limited shelf lives.  Accordingly, if Teva places its orders on March 15, 2008 on the assumption that it will receive 180-day exclusivity, but does not obtain such exclusivity, then the company will have a substantial volume of product that may need to be discarded at a significant cost to the company.

18.    In the event that continued uncertainty regarding the status of its exclusivity requires Teva to delay placing final production orders beyond March 15, 2008, the release of generic risperidone tablets to the market may be delayed beyond June 29, 2008 while Teva prepares launch-ready quantities of generic risperidone.

Dated: March 3, 2008

David Marshall

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                 )
TEVA PHARMACEUTICALS USA, Inc.                   )
                                                 )
                 Plaintiff,                      )
                                                 )
        v.                                       )
                                                 )
MICHAEL O. LEAVITT, in his official capacity     )
as Secretary of Health and Human Services;       )        Case No. _____
                                                 )
ANDREW C. VON ESCHENBACH, M.D., in               )
his official capacity as Commissioner of Food and Drugs;  )
                                                 )
UNITED STATES FOOD AND DRUG                      )
ADMINISTRATION,                                  )
                                                 )
                 Defendants.                     )
_____)

## [PROPOSED] ORDER

Upon consideration of Teva Pharmaceuticals USA, Inc.'s Motion for a Preliminary Injunction, and the memoranda in support and opposition thereto, it is hereby

**ORDERED** that Teva Pharmaceuticals USA, Inc.'s motion is **GRANTED**;

**DECLARED** that the purported delisting of the '952 patent was unlawful;

**ORDERED** that defendants are required to relist the '952 patent and restore Teva's Paragraph IV certification to the '952 patent *nunc pro tunc*; and

**FURTHER ORDERED** that defendants are hereby enjoined from approving any abbreviated new drug applications for generic risperidone tablets until the expiration of Teva Pharmaceuticals USA, Inc.'s period of 180-day generic marketing exclusivity.


**DATED**:  March __, 2008                    _____
                                              United States District Judge