# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
TEVA PHARMACEUTICALS USA, INC.,   )
                                         )
        Plaintiff,                 )
                                         )
       v.                     )     Case No. 08-cv-395 (RCL)
                                         )
MICHAEL O. LEAVITT, Secretary of    )
Health and Human Services,          )
                                       )
ANDREW C. VON ESCHENBACH,     )
Commissioner of Food and Drugs, and  )
                                       )
U.S. FOOD AND DRUG ADMINISTRATION,  )
                                       )
        Defendants,             )
                                       )
MYLAN PHARMACEUTICALS INC.,     )
                                       )
        Proposed Intervenor-Defendant.  )
_____)

## MYLAN PHARMACEUTICALS INC.'S
## MOTION TO INTERVENE AS A DEFENDANT

      Pursuant to Federal Rule of Civil Procedure 24, Mylan Pharmaceuticals Inc. ("Mylan") hereby respectfully moves to intervene as a defendant in this action as a matter of right under Rule 24(a) or, alternatively, to intervene permissibly under Rule 24(b).

      Mylan has conferred with counsel for Teva and the Federal Defendants regarding the motion and Mylan's intent to seek the Court's leave to intervene in this matter as a defendant. The Federal Defendants do not oppose Mylan's motion. As of the time of filing, Teva takes no position on the motion.

      The grounds for this motion are fully set forth in the accompanying memorandum, filed concurrently herewith and incorporated by reference herein. Pursuant to

Rule 24(c), Fᴇᴅ. R. Cɪᴠ. P., and Local Civil Rule 7(j), a pleading setting forth the claim or

defense for which intervention is sought is attached hereto as Exhibit A.

Dated: March 11, 2008.                    Respectfully submitted,

                                        MYLAN PHARMACEUTICALS INC.

                                By:    */s/ William A. Rakoczy*      
                                   One of its attorneys

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Proposed Intervenor-Defendant,*
*Mylan Pharmaceuticals Inc.*

## CERTIFICATE OF SERVICE

I, William A. Rakoczy, HEREBY CERTIFY that on this 11th day of March 2008, a true and correct copy of **Mylan Pharmaceuticals Inc.'s Motion to Intervene as a Defendant, supporting Memorandum of Law and Proposed Order** were served via overnight delivery upon the following:

> Jay P. Lefkowitz
> Michael D. Shumsky
> Gregory L. Skidmore
> KIRKLAND & ELLIS LLP
> 655 15th Street N.W., Suite 1200
> Washington, D.C.  20005
> *Counsel for the Plaintiff Teva Pharmaceuticals USA, Inc.*
>
> Drake Cutini
> U.S. Department of Justice
> Office of Consumer Litigation
> Room 950 North
> 1331 Pennsylvania Ave., N.W.
> Washington, D.C. 20004
> *Counsel for the Federal Defendants*

    /s/ William A. Rakoczy
William A. Rakoczy
*Counsel for Mylan Pharmaceuticals Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————
)
TEVA PHARMACEUTICALS USA, INC.,    )
    )
    Plaintiff,    )
    )
    v.    )    Case No. 08-cv-395 (RCL)
    )
MICHAEL O. LEAVITT, Secretary of    )
Health and Human Services,    )
    )
ANDREW C. VON ESCHENBACH,    )
Commissioner of Food and Drugs, and    )
    )
U.S. FOOD AND DRUG ADMINISTRATION,    )
    )
    Defendants,    )
    )
MYLAN PHARMACEUTICALS INC.,    )
    )
    Proposed Intervenor-Defendant.    )
———————————————————————

**MEMORANDUM IN SUPPORT OF MYLAN PHARMACEUTICALS INC.'S
MOTION TO INTERVENE AS A DEFENDANT**

       Mylan Pharmaceuticals Inc. ("Mylan") respectfully submits this memorandum in support of its motion to intervene as a defendant in this action as a matter of right, under Rule 24(a) of the Federal Rules of Civil Procedure. Alternatively, Mylan seeks leave for permissive intervention under Rule 24(b). Mylan has conferred with counsel for Teva and the Federal Defendants regarding the motion and Mylan's intent to seek the Court's leave to intervene in this matter as a defendant. The Federal Defendants do not oppose Mylan's motion. As of the time of filing, Teva takes no position on the motion.

**INTRODUCTION**

       This action involves Teva's second attempt to obtain an unlawful and unwarranted period of 180-day generic marketing exclusivity for its generic version of Janssen's

Risperdal® (risperidone) Tablets.  Risperdal® Tablets currently are protected from generic competition by a period of pediatric exclusivity that expires on June 29, 2008.  At that time, all applicants who have submitted an abbreviated new drug application ("ANDA") for generic risperidone tablets, including Mylan, will be eligible for final approval and immediate market entry, so long as all other substantive requirements for FDA approval have been met.  Mylan already has received tentative approval for its risperidone ANDA, indicating that it is positioned for final approval immediately upon expiration of Janssen's pediatric exclusivity.  As a result, Mylan is entitled to, and expects to receive, final approval on June 29, 2008, and is preparing for an immediate commercial launch at that time.

Mylan's final approval and market entry are at risk of being substantially delayed, however, because of Teva's baseless lawsuit.  In its complaint and motion for preliminary injunction, Teva maintains that it is entitled to an exclusive six-month head-start in the generic risperidone market once the pediatric exclusivity for Risperdal® expires.  Teva previously tried to convince the Agency of this legally and factually unsupportable position, but was rightly rejected.  Specifically, Teva submitted a citizen petition to FDA arguing that it was entitled to 180-day exclusivity for risperidone tablets by virtue of having submitted with its ANDA (yet, withdrawn) a so-called "paragraph IV certification" to U.S. Patent No. 5,158,952 ("the '952 patent").  FDA denied Teva's petition for the same reason that Teva was asked to withdraw the paragraph IV certification in the first instance—because the '952 patent had been removed from the Agency's patent database at least one month *prior to* Teva's paragraph IV submission.  As FDA acknowledged, only a patent included in the Agency's patent database at the time of the applicant's paragraph IV ANDA submission gives rise to a period of 180-day generic exclusivity.  Therefore, because the '952 patent had been removed from the database at Janssen's

request well in advance of Teva's paragraph IV submission, FDA concluded that Teva was, and still is, *not* entitled to 180-day exclusivity for this product.

Incredibly, without any new facts or legal support, Teva now seeks the same relief from this Court that was denied by the Agency: namely, injunctive relief requiring FDA to re-list the '952 patent in FDA's Orange Book and an award of 180-day generic exclusivity for Teva's risperidone ANDA. The governing statute, FDA's implementing regulations, and relevant case law all require that the Agency's administrative decision be upheld. Were the Court to award Teva's requested relief, however, approval of Mylan's risperidone ANDA will be withheld, and its market entry delayed, during the entirety of any unlawful period of exclusivity awarded to Teva.

Accordingly, this action, and Teva's associated motion for preliminary injunction, indisputably implicates Mylan's statutory rights, and has the potential to adversely impact Mylan's interest in prompt final approval of its ANDA. Indeed, Teva admittedly filed this suit solely to delay the approvals of Mylan and other prospective competitors. Because FDA can not adequately represent Mylan's interests, and because Mylan's participation as an intervenor will not prejudice or burden the parties or this Court, the Court should permit Mylan to intervene to ensure that its interests are protected.

## ARGUMENT

Mylan meets the requirements for both intervention as a matter of right, under Rule 24(a), and permissive intervention, under Rule 24(b), FED. R. CIV. P. 24.

### I.     The Court Should Permit Mylan To Intervene As Of Right.

Federal Rule of Civil Procedure 24(a) provides that, upon timely motion, the court must permit any party to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  A party thus has the right under Rule 24(a) to intervene in an action if it meets four requirements:  (1) the application to intervene is timely; (2) the applicant has demonstrated a legally protected interest in the action; (3) disposition of the action threatens to impair that interest; and, (4) no party to the action can adequately represent the applicant's interests.  *See Appleton v. FDA*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004) (granting motions to intervene); *see also Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001) (holding that district court erred in denying motion to intervene); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (finding that applicant was entitled to intervene); *Cook v. Boorstin*, 763 F.2d 1462, 1466-67 (D.C. Cir. 1985) (same).  These requirements are construed liberally in favor of intervention.  *See Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000).

Courts in this Circuit routinely allow competing drug manufacturers to intervene in actions involving potential delays in FDA approval and 180-day generic exclusivity rights under the Federal Food, Drug, and Cosmetic Act ("FFDCA").  *See, e.g.*, *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1078-79 (D.C. Cir. 2002); *Purepac Pharm. Co. v. Friedman*, 162 F.3d 1201, 1202 n.2 (D.C. Cir. 1998); *Mova*, 140 F.3d at 1074; *Teva Pharms. Indus., Ltd. v. FDA*, 355 F. Supp. 2d 111 (D.D.C. 2004); *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69 (D.D.C. 2003); *Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191 (D.D.C. 2002); *Merck & Co. v. FDA*, 148 F. Supp. 2d 27 (D.D.C. 2001); *Mylan Pharms., Inc. v. Shalala.*, 81 F. Supp. 2d 30, 34 (D.D.C. 2000).  Because Mylan has met each of the requirements for intervention as of right, this Court should do the same here.

### A.    Mylan's Motion To Intervene Is Timely.

*First*, there can be no question that Mylan's motion to intervene is timely. Intervention is timely where a party seeks to intervene promptly after suit is initiated and/or before the court renders any substantive rulings. *See, e.g.*, *Mova*, 140 F.3d at 1076 (motion was timely when filed a few weeks after complaint was filed and before any substantive rulings); *Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991) (motion was timely when filed before the major substantive issues had been argued or resolved). Teva filed its complaint and motion for preliminary injunction just one week ago, and the Court has not yet scheduled a hearing on Teva's motion or rendered any substantive rulings. If permitted to intervene, Mylan will seek leave of Court to file a response to Teva's motion. Thus, Mylan's motion to intervene is timely and neither the parties nor this Court will be prejudiced by Mylan's intervention. Nor would Mylan's participation cause any delay in the resolution of this case. As Teva concedes, no generic applicant, including Teva, will be eligible for final approval until June 29, 2008, at the earliest. Thus, Mylan's intervention would still allow ample time for briefing, argument, and resolution of this case well in advance of that date.

### B.    Mylan Has A Substantial Legal Interest In This Action.

*Second*, Mylan has a substantial, protectable interest in this action. An intervenor "can be said to have a substantial and direct interest in the subject of [the] litigation" where, if the plaintiff succeeds, a governmental agency's "regulatory decisions, which are obviously in the intervenors' interests, will be set aside." *Natural Res. Def. Council, Inc. v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983). Such is the case here.

As FDA concluded in its denial of Teva's petition, as soon as the pediatric exclusivity for Risperdal® Tablets expires on June 29, 2008, all otherwise-approvable risperidone applicants, including Mylan, lawfully are entitled to immediate final approval of their ANDAs.

As noted above, Mylan already has received tentative approval and is committed to bringing its generic risperidone products to market as soon as Janssen's pediatric exclusivity expires. FDA's challenged administrative decision will allow Mylan to do just that.

Teva's requested injunction, however, would prevent Mylan from receiving final approval and earning any sales revenue for its risperidone products for at least another six months. Courts have recognized that a movant's economic or pecuniary interest in the outcome of the litigation constitutes a direct and significant legally protectable interest pursuant to Rule 24(a). *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132-33 (1967) (recognizing that intervention was proper where protection of interests in a competitive system or economic independence is at issue); *Smuck v. Hobson*, 408 F.2d 175, 178-79 (D.C. Cir. 1969) (recognizing that economic interest more than suffices to satisfy intervention "interest" requirement). Mylan has a direct, substantial, and protectable interest in receiving final approval and bringing its products to market in June 2008—not six months later, and thus should be allowed to intervene to protect that interest.

## C.    Teva's Requested Relief Would Impair Mylan's Ability To Protect Its Interests.

*Third*, Teva's requested injunction undoubtedly would impair Mylan's ability to protect its interest. To determine whether disposition of an action will impair or impede a protected interest, courts consider the "'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remains available." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation omitted). Where, as here, "the task of reestablishing the *status quo* if the [plaintiff] succeeds in [its] case will be difficult and burdensome" and the "loss of revenues during any interim period would be substantial and likely irreparable," this factor is met. *Id.*

If Teva succeeds in this action, FDA approval of Mylan's risperidone ANDA will be withheld for at least another 180 days after Janssen's pediatric exclusivity expires. Teva, meanwhile, will enjoy sole access to the generic risperidone market during this time. As Teva itself recognizes, if Teva is awarded an official six-month "head start" in the market, it will gain a "permanent advantage over subsequent entrants" like Mylan, and likely will enter into long-term contracts that can hurt later entrants well after the exclusivity period expires. (*See* Teva Mem. at 27-28.) As a direct result, Mylan will suffer a substantial loss in sales, revenue, and market share not only during the 180-day period, but also for several months afterward—losses that, as Teva itself has noted, can never be recouped. (*See id*. at 28.) Because this Court will never be able to turn back the clock if Teva is allowed to market its risperidone product without generic competition for 180 days, and because Mylan's resulting losses would be unrecoverable from either FDA or Teva, the Court should allow Mylan to intervene as a Defendant to prevent such losses from occurring in the first instance.

### D.    FDA Can Not Adequately Represent Mylan's Interests.

*Finally*, FDA can not adequately represent Mylan's interests. Rule 24(a)(2) provides for intervention "unless existing parties adequately represent [the movant's] interest." FED. R. CIV. P. 24(a)(2). The burden of making this showing is "minimal" and "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Fund for Animals*, 322 F.3d at 735 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 320 (D.D.C. 2007) (Lamberth, J.) (same). Mylan certainly meets this burden.

As the D.C. Circuit has recognized, "the tactical similarity of the present legal contentions of the parties does not assure adequacy of representation or necessarily preclude the

-7-

intervenor from the opportunity to appear in its own behalf." *Fund for Animals*, 322 F.3d at 737 (internal quotations and citation omitted). Thus, because FDA's interests here are not squarely aligned with Mylan's, representation by FDA "may be" inadequate. While Mylan supports the Agency's challenged administrative decision denying Teva's request for 180-day exclusivity for risperidone, and both Mylan and FDA share the position that Teva's requested relief is inconsistent with the statutory and regulatory scheme governing patent certifications and 180-day exclusivity, FDA has no proprietary interests to protect and no financial stake in the outcome of this litigation. Mylan, on the other hand, most assuredly does.

Moreover, it is not in FDA's interests to advance the interests of one particular ANDA applicant over those of any other applicant or the public. Rather, as a federal agency, FDA's "obligation 'is to represent the interests of the American people.'" *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006) (citation omitted). "For this reason, this Circuit has concluded that 'governmental entities do not adequately represent the interests of aspiring intervenors.'" *Id.* (quoting *Fund for Animals*, 322 F.3d at 736); *accord Dimond v. Dist. of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986). There is no reason this Court should reach any other conclusion here. Mylan, therefore, should be allowed to appear on its own behalf to defend against Teva's attempt to substantially delay Mylan's approval and market entry.

## II.    In The Alternative, The Court, In Its Discretion, Should Permit Mylan To Intervene Under Rule 24(b).

For all the reasons discussed above, intervention as of right is appropriate here. If this Court should find otherwise, however, Mylan respectfully requests that it be permitted to intervene under Rule 24(b).

Under Rule 24(b), the Court may permit intervention upon a timely motion when the movant "has a claim or defense that shares with the main action a common question of law or

fact." FED. R. CIV. P. 24(b)(1)(B). Additionally, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

Here, as explained above, Mylan has filed a timely motion, and has raised a common question of law or fact by claiming an interest in defending FDA's decision denying Teva 180-day exclusivity for risperidone tablets. Mylan's "real economic stake in the outcome of this litigation," moreover, strongly favors intervention. *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 769 (D.C. Cir. 1955) (recognizing that, while "establishing a 'claim or defense' for purposes of permissive intervention is . . . not dependent upon a showing of 'direct pecuniary interest' in the litigation," intervention was justified where appellants had shown an economic interest).

Mylan's intervention also will not prejudice the original parties or unduly delay the proceedings. In fact, permitting Mylan to intervene would "promote judicial and administrative convenience by avoiding multiplicity of proceedings and by bringing to the aid of the tribunal the parties who 'may know the most facts and can best explain their implications.'" *Textile Workers Union*, 226 F.2d at 770 (citation omitted). Mylan, whose own ANDA approval is at risk of being significantly delayed, is in the best position to explain the practical implications of Teva's requested injunction. Moreover, should intervention be denied, Mylan would have to consider separate litigation to protect its interests, resulting in multiple related lawsuits. Accordingly, Mylan satisfies the requirements for permissive intervention under Rule 24(b).

## <u>CONCLUSION</u>

For the foregoing reasons, Mylan respectfully requests that this Court enter an

Order permitting Mylan to intervene in this case as a Defendant.

Dated:  March 11, 2008.                              Respectfully submitted,

                                            MYLAN PHARMACEUTICALS INC.

                                    By:    */s/ William A. Rakoczy*
                                              One of its attorneys

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Proposed Intervenor-Defendant,*
*Mylan Pharmaceuticals Inc.*

# EXHIBIT A

to Mylan Pharmaceuticals Inc.'s
Motion to Intervene as a Defendant

(Proposed Intervenor-Defendant
Mylan Pharmaceuticals Inc.'s Answer)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                                            )
TEVA PHARMACEUTICALS USA, INC.,           )
                                                            )
                    Plaintiff,                              )
                                                            )
          v.                                                )          Case No. 08-cv-395 (RCL)
                                                            )
MICHAEL O. LEAVITT, Secretary of             )
Health and Human Services,                        )
                                                            )
ANDREW C. VON ESCHENBACH,             )
Commissioner of Food and Drugs, and       )
                                                            )
U.S. FOOD AND DRUG ADMINISTRATION,   )
                                                            )
                    Defendants,                          )
                                                            )
MYLAN PHARMACEUTICALS INC.,              )
                                                            )
                    Proposed Intervenor-Defendant.    )
———————————————————————)

**PROPOSED INTERVENOR-DEFENDANT
MYLAN PHARMACEUTICALS INC.'S ANSWER**

Proposed Intervenor-Defendant Mylan Pharmaceuticals Inc. ("Mylan") hereby

answers the complaint of Teva Pharmaceuticals USA, Inc. ("Teva"), for which every allegation

not expressly admitted is denied, as follows:

**NATURE OF THE ACTION**

1.     Teva brings this suit in response to FDA's refusal to relist U.S. Patent No.
       5,158,952 ("the '952 patent") in the Agency's official register of drug-related
       patents, *Approved Drug Products with Therapeutic Equivalence Evaluations*
       (known as the "Orange Book"), and award Teva the 180-day period of marketing
       exclusivity to which it is entitled under the Hatch-Waxman amendments to the
       federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355 *et seq.* ("Hatch-
       Waxman").

**ANSWER:**     Paragraph 1 contains legal conclusions to which no response is required.  To the

extent a response is required, Mylan admits that Teva purports to seek relief against FDA,

including an award of 180-day exclusivity for generic risperidone tablets to which Teva is not

lawfully entitled.  Mylan denies that Teva is entitled to any relief whatsoever in this action, and

further denies all remaining allegations of this Paragraph.

      2.      Teva was the first manufacturer to submit an abbreviated new drug application ("ANDA") containing a "Paragraph IV" certification for a generic version of Janssen Pharmaceutica's brand-name drug Risperdal® in tablet form. Risperidone is the active ingredient in Risperdal® tablets.

**ANSWER:**    Mylan admits that risperidone is the active pharmaceutical ingredient in Janssen

Pharmaceutica's Risperdal® tablets.  Mylan denies all remaining allegations of this Paragraph.

      3.      At the time Teva filed its ANDA, FDA's official Orange Book (and the then-current official monthly supplement to the Orange Book) listed two patents as claiming Risperdal® tablets: the '952 patent and U.S. Patent No. 4,804,663 ("the '663 patent").  As the first ANDA filer to make a Paragraph IV certification to the '952 patent, Teva earned the right to market its generic risperidone tablets for 180 days prior to any other generic competitor.  *See* 21 U.S.C. § 355(j)(5)(B)(iv). Congress instituted this 180-day marketing exclusivity period in order to encourage generic manufacturers to challenge drug patents and thereby increase competition in the pharmaceutical industry.

**ANSWER:**    Denied.

      4.      Despite the fact that Teva invested significant resources to identify a vulnerable patent and develop a non-infringing generic risperidone product, and then subjected itself to a patent infringement claim by filing its Paragraph IV certification to the '952 patent, *see* 35 U.S.C. § 271(e); despite the fact that the '952 patent continued to appear in FDA's 2001 Orange Book; and despite the fact that FDA's then-current Cumulative Supplement to the Orange Book did not reflect any change to the official patent-listing information for Risperdal® at the time Teva submitted its ANDA to FDA, FDA asserted Teva that it had "delisted" the '952 patent prior to the submission of Teva's ANDA and informed Teva that it thus would not accept Teva's ANDA for filing unless Teva removed its Paragraph IV certification to the '952 patent from its ANDA.

**ANSWER:**    Mylan admits that FDA had delisted U.S. Patent No. 5,158,952 prior to the

submission of Teva's ANDA for risperidone tablets.  Mylan denies all remaining allegations of

this Paragraph.

      5.      As it has with several other improperly delisted patents, Teva petitioned FDA to restore the '952 patent to the Orange Book, honor Teva's Paragraph IV

certification to that patent, and award Teva 180-day exclusivity. *See* Citizen Petition No. 2007P-0316 (filed Aug. 8, 2007).(attached as Ex. l). FDA has refused to do so, effectively nullifying Teva's 180-day exclusivity period.

**ANSWER:**    Mylan admits that what purports to be a copy of Teva's Citizen Petition, dated August 3, 2007, is attached to Teva's Complaint as Exhibit 1, and that what purports to be a copy of FDA's proper denial of Teva's petition is attached to Teva's Complaint as Exhibit 5.  Mylan denies that Teva is entitled to 180-day exclusivity based on any certification to U.S. Patent No. 5,158,952.  Mylan denies all remaining allegations of this Paragraph.

6.    FDA's refusal to relist the '952 patent and award Teva its 180-day exclusivity period violates the plain language of the Hatch-Waxman Act and flouts the D.C. Circuit's binding decision in *Ranbaxy Labs. Ltd. v. Leavitt,* 469 F.3d 120 (D.C. Cir. 2006), which held that FDA may not effectuate the delisting of a patent and thereby deny the first generic Paragraph IV applicant 180-day marketing exclusivity after the generic manufacturer relies on the Orange Book's official patent listings to challenge a listed patent.  In addition, FDA's refusal to restore the '952 patent to the Orange Book and award Teva 180-day exclusivity conflicts with the Agency's own regulations and the Orange Book itself.  As such, FDA's actions here contravene the Administrative Procedure Act ("APA"), because they fail to embody principles of reasoned agency decision-making and are contrary to settled agency practice, arbitrary, capricious, and otherwise contrary to law. *See* 5 U.S.C. § 706.

**ANSWER:**    Denied.

7.    As a result, Teva seeks immediate declaratory and injunctive relief from this Court to (1) set aside FDA's decision as contrary to law, an abuse of discretion, and arbitrary and capricious; (2) declare unlawful the delisting of the '952 patent prior to the expiration of Teva's exclusivity; (3) restore Teva's Paragraph IV certification to the '952 patent *nunc pro tunc*; and (4) enjoin FDA from approving any ANDA for generic risperidone tablets filed after Teva's ANDA for generic risperidone tablets pending the conclusion of Teva's exclusivity period for generic risperidone tablets.

**ANSWER:**    Paragraph 7 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan denies that Teva is entitled to any relief whatsoever in this action, and further denies all remaining allegations of this Paragraph.

## PARTIES

8.    Plaintiff Teva is a Delaware corporation with its principal place of business in North Wales, Pennsylvania. Teva is a wholly-owned, indirect subsidiary of Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), a global pharmaceutical company organized under the laws of Israel with its principal place of business in Israel. Teva distributes the finished pharmaceutical products of Teva Ltd. in the United States and is an industry leader in the development, manufacture, and marketing of generic pharmaceutical in the United States.

**ANSWER:**    Mylan is without knowledge and information sufficient to form a belief as to the truth of the allegations of this Paragraph, and therefore denies the same.

9.    Defendant Michael O. Leavitt is the Secretary of Health and Human Services ("HHS") and is the official charged by law with administering the Hatch-Waxman Act. Secretary Leavitt is sued in his official capacity. He maintains offices at 200 Independence Ave., S.W., Washington, DC 20204.

**ANSWER:**    Admitted.

10.    Defendant Andrew C. von Eschenbach, the Commissioner of the FDA, has the delegated authority to administer the drug approval provisions of the Hatch-Waxman Act. Commissioner von Eschenbach is sued in his official capacity. He maintains offices at 200 C St., S.W., Washington, DC 20204, and 5600 Fishers Lane, Rockville, MD 20857.

**ANSWER:**    Admitted.

11.    Defendant FDA is the agency within HHS charged with overseeing, *inter alia*, the human drug approval process, including the portions of that process controlled by the Hatch-Waxman Act.

**ANSWER:**    Admitted.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. This action arises under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), *codified at, inter alia*, 21 U.S.C. § 355; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 702, and 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

**ANSWER:**    Paragraph 12 contains legal conclusions to which no response is required. To the extent a response is required, Mylan admits that Teva purports to invoke the subject matter

jurisdiction of this Court under 28 U.S.C. § 1331.  Mylan denies the remaining allegations of

this Paragraph.

        13.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

**ANSWER:**    Paragraph 13 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan admits that Teva purports to assert venue under 28

U.S.C. § 1391(e).  Mylan denies the remaining allegations of this Paragraph.

## FACTUAL ALLEGATIONS

### The Relevant Statutory Framework

        14.      The approval of generic drugs is governed by the Hatch-Waxman Act.
Although the Act has subsequently been amended by the Medicare
Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173 § 1101(c)(1), and
the Food and Drug Administration Amendments Act of 2007 ("FDAAA"), Pub.
L. 110-85, 121 Stat. 823 (2007), the substantive aspects of this case relating to
the listing and delisting of Orange Book patents and Teva's entitlement to 180-
day exclusivity are governed by the pre-2003 version of the FDCA. *See* 21
U.S.C. §§ 301, *et seq.* (2002).

**ANSWER:**    Paragraph 14 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies that Teva is entitled to 180-day exclusivity

under the Federal Food, Drug, and Cosmetic Act or under the Hatch-Waxman Amendments

thereto.  Mylan denies the remaining allegations of this Paragraph.

        15.      Generic drugs contain the same active ingredients, and provide the same
therapeutic value, as branded drugs. They are, however, generally sold at a
lower price to consumers, private insurers, and public insurers. Congress
enacted the Hatch-Waxman Act to increase the availability of generic drugs by
expediting the process of bringing them to market, and thereby significantly
reduce the cost that the public pays for pharmaceuticals. *See* 21 U.S.C. § 355.

**ANSWER:**    Paragraph 15 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies that Teva has completely or accurately

described the statutory requirements governing the application for, and approval of, generic

drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements. Mylan denies

the remaining allegations of this Paragraph.

16.    In order to expedite the approval process for generic drugs, the Hatch-Waxman Act permits generic companies to obtain approval of their generic products so long as they can show them to be bioequivalent to products that the FDA has already deemed safe and effective. Before marketing a generic drug, the manufacturer must submit an abbreviated new drug application, or ANDA, to the FDA. 21 U.S.C. § 355(j). The ANDA establishes the bioequivalence and therapeutic value of the generic product as compared with the branded product. 21 U.S.C. § 355(j)(2)(A). So long as bioequivalence can be established, a generic drug manufacturer need not repeat the safety and efficacy studies that were conducted on the branded version of the drug and included as part of the brand manufacturer's new drug application ("NDA"). *Id.*

**ANSWER:**    Paragraph 16 contains legal conclusions to which no response is required. To

the extent a response is required, Mylan denies that Teva has completely or accurately

described the statutory requirements governing the application for, and approval of, generic

drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements. Mylan denies

the remaining allegations of this Paragraph.

17.    In the ANDA, the generic manufacturer also must address, and provide a certification concerning, each patent listed in the official Orange Book by the NDA-holder as claiming the drug. The Orange Book, which FDA printed annually during the relevant time period and updated monthly with printed Cumulative Supplements, is intended to reflect the most current information regarding which patents claim a particular branded drug. A generic applicant must certify as to each patent listed in the most recent official Orange Book as claiming the branded drug. *See Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1350 (Fed. Cir. 2003); *Sandoz, Inc. v. FDA*, 439 F. Supp. 2d 26, 31 (D.D.C. 2006).

**ANSWER:**    Paragraph 17 contains legal conclusions to which no response is required. To

the extent a response is required, the allegations of this Paragraph are denied. Mylan further

denies that Teva has completely or accurately described the statutory requirements governing

the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. §

355 for these requirements.

18.     Among other things, generic applicants are allowed certify that a listed patent is invalid and/or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted.  Such a certification is known as a Paragraph IV certification. *See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV). A Paragraph IV certification signals the generic manufacturer's intent to market its product prior to the expiration of one or more patents listed as claiming the branded drug.

**ANSWER:**    Paragraph 18 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan denies that Teva has completely or accurately described the statutory requirements governing the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements.  Mylan denies the remaining allegations of this Paragraph.

19.     By design, the Hatch-Waxman Act encourages generic drug companies to challenge pharmaceutical patents by filing Paragraph IV certifications in order to bring generic products to market faster.  The first generic drug company to file a Paragraph IV certification, and thereby challenge a patent, generally bears costs of research and development, legal costs to identify potentially vulnerable patents, as well as the litigation costs that may come from protracted patent infringement litigation.  If this generic drug company succeeds in being the first to successfully file a Paragraph IV ANDA, however, the benefits of those investments may ultimately be shared with other generic drug companies, who can benefit from the substantial investments that the first filer has made.

**ANSWER:**    Paragraph 19 contains legal conclusions to which no response is required.  To the extent a response is required, the allegations of this Paragraph are denied.  Mylan further denies that Teva has completely or accurately described the statutory requirements governing the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements.  Mylan denies the remaining allegations of this Paragraph.

20.     Therefore, in order to encourage generic drug companies to bear the costs and litigation risks associated with being the first filer of a Paragraph IV ANDA certification, the Hatch-Waxman Act provides that the first filer will receive the exclusive right to market the pertinent generic product for 180 days following the challenge.  21 U.S.C. § 355(j)(5)(B)(iv). The Act prohibits the FDA from approving the ANDAs of the subsequent filers until the first applicant's 180-day exclusivity period has elapsed.

**ANSWER:**    Paragraph 20 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan denies that Teva has completely or accurately described the statutory requirements governing the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements.  Mylan further denies that Teva is entitled to any 180-day exclusivity for generic risperidone tablets.  Mylan denies the remaining allegations of this Paragraph.

      21.      The 180-day exclusivity period runs from the earlier of the date on which the first-filing generic drug company first commercially markets the generic drug or "the date of a decision of a court in an action ... holding the patent which is the subject of the certification to be invalid or not infringed."  21 U.S.C. § 355(j)(5)(B)(iv)(II).

**ANSWER:**    Paragraph 21 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan denies that Teva has completely or accurately described the statutory requirements governing the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements.  Mylan further denies that Teva is entitled to any 180-day exclusivity for generic risperidone tablets.  Mylan denies the remaining allegations of this Paragraph.

      22.      The FDA may not approve the applications of subsequent ANDA filers until the 180-day exclusivity period expires. Once the 180 day exclusivity period ends, however, other generic manufacturers may be approved to enter the product market.

**ANSWER:**    Paragraph 22 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan denies that Teva has completely or accurately described the statutory requirements governing the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements. Mylan further denies that Teva is entitled to any 180-day exclusivity for generic risperidone tablets.  Mylan denies the remaining allegations of this Paragraph.

23.     Depriving the first filer of the benefits of exclusivity therefore undermines the incentive system that Congress carefully constructed in the Hatch-Waxman Act to ensure that generic drugs are brought to market as early as possible for the benefit of consumers.

**ANSWER:**     Paragraph 23 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan denies that Teva has completely or accurately described the statutory requirements governing the application for, and approval of, generic drugs, and refers the Court directly to 21 U.S.C. § 355 for these requirements.  Mylan further denies that Teva is entitled to any 180-day exclusivity for generic risperidone tablets.  Mylan denies the remaining allegations of this Paragraph.

### Risperidone Proceedings

24.     Risperidone is an atypical antipsychotic medication.  Janssen holds the approved NDA for risperidone tablets, No. 20-272, which it commercially markets under the brand name Risperdal®.

**ANSWER:**     Mylan admits that FDA's Electronic Orange Book identifies "Janssen Pharma" as the applicant for NDA No. 20-272 for Risperdal® Tablets.  Mylan further admits that the FDA-approved labeling for Risperdal® describes the indications for which Risperdal® has been approved.  Mylan denies any remaining allegations of this Paragraph.

25.     At the time it filed its NDA for Risperdal® tablets, Janssen caused FDA to list the '663 and '952 patents in the official Orange Book.  *See* Orange Book (21st ed. 2001) ("2001 Orange Book"), at ADA 57 (attached as Ex. 2). The '952 patent is set to expire on October 27, 2009.  The '663 patent expired on December 29, 2007, but Janssen received an additional six months of exclusivity for studying the effectiveness of Risperdal® in pediatric populations. *See* 21 U.S.C. § 355a.  Janssen's period of "pediatric exclusivity" expires June 29, 2008.

**ANSWER:**     Paragraph 25 contains legal conclusions to which no response is required.  To the extent a response is required, Mylan admits that before and as of August 28, 2001, the electronic version of FDA's publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book"), identified and listed only

U.S. Patent No. 4,804,663 ("the '663 patent") in connection with Janssen's approved NDA No.

20-272 for Risperdal® tablets; that, according to the Orange Book, the '663 patent expired on

or about December 29, 2007; and that the Orange Book indicates that Janssen's period of

pediatric exclusivity expires on June 29, 2008.  Mylan is without knowledge and information

sufficient to form a belief as to the truth of the remaining allegations of this Paragraph, and

therefore denies the same.

> 26.    As of August 2001, both the official Orange Book and the then-current
> Cumulative Supplement to the Orange Book listed both the '663 and '952
> patents as claiming Risperdal®, *see* 2001 Orange Book at ADA 57; Orange
> Book 21st ed. Cumulative Supplement 8 (Aug. 2001) at A-14 (attached as Ex.
> 3).

**ANSWER:**    Paragraph 26 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies the allegations of this Paragraph.

> 27.    On August 28, 2001, Teva submitted an original ANDA, No. 76-228, seeking
> approval to market generic risperidone tablets in 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3
> mg, and 4 mg strengths.  In accordance with 21 U.S.C. § 355(j)(2)(A)(vii),
> Teva's ANDA contained a certification as to each patent listed in the official
> Orange Book as claiming Risperdal® tablets. Teva thus filed a certification
> under 21 U.S.C. § 355(j)(2)(A)(vii)(III) ("Paragraph III certification") as to the
> '663 patent, asserting that Teva would not seek to market its generic risperidone
> tablets until that patent expired, and a certification under 21 U.S.C. §
> 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") as to the '952 patent,
> asserting that the patent was invalid or would not be infringed by Teva's generic
> risperidone tablets.

**ANSWER:**    Paragraph 27 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies the allegations of this Paragraph

> 28.    Teva was the first generic manufacturer to file a Paragraph IV certification as to
> the '952 patent.  Under the plain terms of the FDCA, Teva was thus entitled to
> 180 days of market exclusivity to commence upon the first commercial
> marketing of its generic risperidone products, or a court decision declaring that
> the '952 patent was invalid or not infringed by Teva's generic risperidone
> products.

**ANSWER:**     Paragraph 28 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies the allegations of this Paragraph.

> 29.     On October 12, 2001, FDA for the first time notified Teva that it had "delisted"
> the '952 patent from the Orange Book.  FDA made this statement despite the
> fact that the official Orange Book continued to list the '952 patent as claiming
> Risperdal®, *see* 2001 Orange Book at ADA 57, and despite the fact that the
> then-current Cumulative Supplement reflected no changes to the official patent-
> listing information for Risperdal®.  *See* Orange Book 21st ed. Cumulative
> Supplement 10 (Oct. 2001) at A-19 (attached as Ex. 4).

**ANSWER:**     Paragraph 29 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies the allegations of this Paragraph.

> 30.     FDA nevertheless informed Teva that it would not accept Teva's ANDA for
> filing unless Teva modified its patent certification to reflect FDA's assertion
> that the '952 patent was no longer listed as claiming Risperdal®. *See* FDA
> Letter Decision (dated Feb. 26, 2008) at 5 (attached as Ex. 5).  Thus, despite the
> fact that the official Orange Book, and then-current Cumulative Supplements,
> continued to indicate that the '952 patent claimed Risperdal®, Teva was forced
> to follow the agency's directive and amend its ANDA.

**ANSWER:**     Paragraph 30 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies the allegations of this Paragraph.

> 31.     In November 2001 and December 2001, FDA's official monthly supplements to
> the Orange Book continued to reflect that no changes had been made to the
> Risperdal® patent listing information, and thus that the '952 patent continued to
> be listed as claiming Risperdal® tablets.  *See* Orange Book 21st ed. Cumulative
> Supplement 11 (Nov. 2001) at A-21 (attached as Ex. 6).  Orange Book 21st ed.
> Cumulative Supplement 12 (Dec. 2001) at XA-24 (attached as Ex. 7).

**ANSWER:**     Paragraph 31 contains legal conclusions to which no response is required.  To

the extent a response is required, Mylan denies the allegations of this Paragraph.

> 32.     In January 2002, FDA released a revised version of the Orange Book, which for
> the first time indicated the delisting of the '952 patent.  *See* Orange Book (22nd
> ed. 2002), at ADA 64-65 (attached as Ex. 8).

**ANSWER:**     Denied.

> 33.     In November 2006, the D.C. Circuit ruled that the plain text of the FDCA
> prevented FDA from effectuating the delisting of a patent following the

submission of a paragraph IV certification as to that patent. *Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120 (D.C. Cir. 2006). The court struck down FDA's practice because it "change[d] the incentive structure adopted by Congress," by "depriv[ing] the generic applicant of a period of marketing exclusivity" after the generic manufacturer had expended significant resources in developing a non-infringing generic substitute and undertaken the risk of infringing the patent by filing a Paragraph IV certification. *Id.* at 126. The D.C. Circuit thus held that FDA's approach to delisting contravened the plain meaning of the FDCA, and invalidated FDA's practice under *Chevron* step one. *Id.*

**ANSWER:**     Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is required, Mylan denies that Teva has accurately described the court's decision in *Ranbaxy Laboratories Ltd. v. Leavitt*, 469 F.3d 120 (D.C. Cir. 2006). Mylan denies the remaining allegations of this Paragraph.

34.     Following the D.C. Circuit's decision, Teva undertook a comprehensive review of its portfolio of pending ANDAs to determine whether FDA's unlawful delisting practices had deprived Teva of its entitlement to 180-day generic exclusivity for any other product. Teva then sought to regain its exclusivity on each of the drug products affected by FDA's unlawful delisting.

**ANSWER:**     Mylan is without knowledge and information sufficient to form a belief as to the truth of the allegations of this Paragraph, and therefore denies the same.

35.     On August 3, 2007, Teva submitted Citizen Petition No. 2007P-0316 (the "Petition") requesting that FDA relist the '952 patent in the Orange Book for Risperdal® tablets; confirm that Teva's right to 180-day exclusivity with regard to its ANDA had not been affected by FDA's erroneous delisting of the '952 patent; and refrain from granting final approval to any other ANDAs for 0.25 mg, 0.5 mg, 1 mg, 2 mg, 3 mg, and 4 mg risperidone tablets until Teva's 180-day exclusivity period expires. *See* Citizen Petition.

**ANSWER:**     Mylan admits that Teva submitted a citizen petition to FDA, dated August 3, 2007; that such petition was assigned Docket No. 2007P-0316; and that Teva has attached what purports to be a copy of its petition to its Complaint as Exhibit 1. Mylan denies that Teva is entitled to 180-day exclusivity for its risperidone ANDA and further denies that FDA's delisting of the '952 patent was "erroneous." Mylan denies the remaining allegations of this Paragraph.

36.     FDA denied the Citizen Petition on February 26, 2008.

**ANSWER:**     Admitted.

37.     Janssen's pediatric exclusivity for Risperdal® is set to expire on June 29, 2008. Unless this Court grants the relief sought by Teva, FDA will on that date be free to grant final approval to any ANDA for generic risperidone tablets, thus permitting other generic manufacturers to market their generic risperidone products and depriving Teva of the 180-day exclusivity period to which it is entitled under the Hatch-Waxman Act.

**ANSWER:**     Mylan admits the allegations of the first sentence of Paragraph 37.  Mylan further admits that FDA will be free to grant final approval to any otherwise approvable ANDA for generic risperidone tablets once the pediatric exclusivity for Risperdal® has expired. Mylan denies that Teva is entitled to 180-day exclusivity for its risperidone tablet ANDA. Mylan denies the remaining allegations of this Paragraph.

### FIRST CAUSE OF ACTION
### (Violation of the FDCA and the APA)

38.     FDA's refusal to relist the '952 patent and grant Teva 180-day exclusivity for its generic risperidone tablets violates the plain language of the Hatch-Waxman Act, the D.C. Circuit's decision in *Ranbaxy,* FDA's own regulations, and the Orange Book itself.  FDA's decision is thus in excess of its statutory authority, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, in violation of 5 U.S.C. § 706.

**ANSWER:**     Denied.

39.     FDA's refusal to relist the '952 patent and grant Teva 180-day exclusivity for generic risperidone tablets constitutes final agency action that is subject to judicial review. Teva has exhausted every available administrative avenue and has no adequate remedy at law.

**ANSWER:**     Denied.

40.     Neither Defendants nor any other entity will suffer cognizable harm if the relief requested herein is granted, and the public interest will be served by such relief.

**ANSWER:**     Denied.

41.     Teva will suffer substantial and irreparable harm absent the granting of the requested relief, in the form of lost sales and decreased market share that can never be recovered.

**ANSWER:**     Denied.

    42.       FDA's unlawful conduct has caused, is causing, and will continue to cause substantial harm to Teva unless and until the FDA's actions are declared unlawful pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Hatch-Waxman Act; this Court requires FDA to relist the '952 patent in the Orange Book; and this Court orders FDA to award Teva its 180-day exclusivity period for generic risperidone tablets.

**ANSWER:**     Denied.

*     *     *

Mylan denies that Teva is entitled to any of the relief prayed for in its Complaint, or to any relief whatsoever, and further requests that judgment be entered in favor of Mylan, dismissing Teva's Complaint with prejudice, awarding Mylan its attorneys' fees and costs incurred in defending this action, and granting such further relief as this Court may deem just and proper.

Mylan further denies each allegation not specifically admitted or otherwise responded to herein.

<u>**SEPARATE DEFENSES**</u>

Without prejudice to the denials set forth in its Answer, without admitting any allegations of the Complaint not otherwise admitted, and without undertaking any of the burdens imposed by law on Teva, Mylan asserts the following defenses to the Complaint:

**First Defense**

The Complaint fails to state a claim upon which relief can be granted.

**Second Defense**

Teva is barred from seeking injunctive relief by virtue of its unclean hands.

-14-

**Third Defense**

Any additional defenses that discovery and/or the administrative record may reveal.

Dated:  March 11, 2008.                    Respectfully submitted,

                                           MYLAN PHARMACEUTICALS INC.

                                           By:    /s/ William A. Rakoczy
                                                  One of its attorneys

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Proposed Intervenor-Defendant,*
*Mylan Pharmaceuticals Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| TEVA PHARMACEUTICALS USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-395 (RCL) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | |
| Health and Human Services, | ) | |
| | ) | |
| ANDREW C. VON ESCHENBACH, | ) | |
| Commissioner of Food and Drugs, and | ) | |
| | ) | |
| U.S. FOOD AND DRUG ADMINISTRATION, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| MYLAN PHARMACEUTICALS INC., | ) | |
| | ) | |
| Proposed Intervenor-Defendant. | ) | |

_____)

**MYLAN PHARMACEUTICALS INC.'S
CERTIFICATE REQUIRED BY LOCAL CIVIL RULE 7.1**

I, the undersigned, counsel of record for Mylan Pharmaceuticals Inc. ("Mylan"), certify to the best of my knowledge and belief, that the following are parent companies, subsidiaries or affiliates of Mylan which have any outstanding securities in the hands of the public:

Mylan Inc.

These representations are made in order that judges of this court may determine the need for recusal.

Dated:  March 11, 2008.                    Respectfully submitted,

                                           MYLAN PHARMACEUTICALS INC.

                                           By:    */s/ William A. Rakoczy*
                                                  One of its attorneys

William A. Rakoczy, D.C. Bar No. 489082
Christine J. Siwik
Lara E. FitzSimmons
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
(312) 222-6301
(312) 222-6321 (facsimile)

*Counsel for Proposed Intervenor-Defendant,*
*Mylan Pharmaceuticals Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
TEVA PHARMACEUTICALS USA, INC.,   )
)
       Plaintiff,   )
)
     v.   )   Case No. 08-cv-395 (RCL)
)
MICHAEL O. LEAVITT, Secretary of   )
Health and Human Services,   )
)
ANDREW C. VON ESCHENBACH,   )
Commissioner of Food and Drugs, and   )
)
U.S. FOOD AND DRUG ADMINISTRATION,   )
)
       Defendants,   )
)
MYLAN PHARMACEUTICALS INC.,   )
)
       Proposed Intervenor-Defendant.   )
_____)

## [PROPOSED] ORDER

The Court having considered Mylan Pharmaceuticals Inc.'s ("Mylan") Motion to Intervene as a Defendant, the papers and submissions of the parties, and the arguments and authorities of counsel, hereby finds that Mylan is entitled to intervene in this matter, pursuant to Federal Rule of Civil Procedure 24, in order to protect its legal and economic interests that are not otherwise adequately protected by the parties.  It is therefore:

**ORDERED AND ADJUDGED** that Mylan's motion be, and hereby is, **GRANTED**.

Mylan is granted leave to participate in this action as a party-defendant.

**SO ORDERED.**

SIGNED this _____ day of _____ 2008.

_____
U.S. District Judge Royce C. Lamberth